RANDALL S. NEWMAN (SBN 190547)
Attorney at Law
99 Wall St., Suite 3727
New York, NY 10005
212.797.3735
rsn@randallnewman.net

*Attorney for Plaintiff,
 Executive Lens LLC*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| EXECUTIVE LENS LLC,<br><br>    Plaintiff,<br><br>  vs.<br><br>LEE RAPKIN and JOHN DOE dba "the Exposer" www.youtube.com@1aAudits Exposé,<br><br>    Defendant. | Case No.<br><br>**COMPLAINT FOR:**<br><br>1. **Misrepresentation, 17 U.S.C. § 512(f);**<br><br>2. **Declaration of Copyright Infringement**<br><br>**JURY TRIAL DEMANDED** |

1

**COMPLAINT**

Plaintiff, Executive Lens LLC ("Plaintiff"), files this action against Lee Rapkin ("Attorney Rapkin") and John Doe d/b/a "the Exposer" (the "Exposer") who operates the 1a Audits Exposé YouTube channel located www.youtube.com@1aAuditsExposé (The "Exposé Channel") and alleges as follows:

## INTRODUCTION

1. This case is about the widespread abuse of the Digital Millennium Copyright Act's counter-notice process by individuals—and, disturbingly, even licensed attorneys—seeking to keep infringing "reaction channel" videos monetized on the YouTube platform.

2. Over the past several years, a growing number of YouTube channel creators have built their channels on the unauthorized use of copyrighted footage from creators who actually produce original content. These channels repost others' work without permission, add little or no transformation, and monetize the stolen material through YouTube's Partner Program under the guise of "fair use."

3. While some "reaction" videos have been upheld as fair use, courts have emphasized that such videos must include structured critique, frequent interjections, and a transformative purpose. This case involves an emerging model of "mockumentary-style" infringement in which the so-called "creator" splices Plaintiff's original footage with TV and movie clips purely to mock and ridicule, believing that stacking multiple layers of infringement somehow adds up to fair use.

4. When copyright owners like Plaintiff submit takedown notices under 17 U.S.C. § 512(c), these infringing channels often retaliate by filing false counter-notices under § 512(g), swearing under penalty of perjury that their use is protected by fair use.

5. Many of these counter-notices are false. They are submitted by individuals who have not reviewed the videos, do not understand the law, or are gambling that the copyright owner will not bother to sue.

6. The abuse has become so rampant that anonymous creators now enlist attorneys to file false counter-notices on their behalf.

COMPLAINT

7. In this case, Attorney Rapkin, a lawyer admitted to the Quebec bar in 2024 and practicing at BLP Avocats in Montréal, submitted a blanket counter-notice on behalf of The Exposer. The counter-notice purportedly covered 17 videos: 16 YouTube shorts and one long-form video (the "17-Videos").[1]

8. In that counter-notice, Attorney Rapkin swore under penalty of perjury that each of the 17-Videos were "significantly transformed by detailed editing and elaborate commentary throughout the videos".

9. That statement was materially false. At least eight of the videos contain no commentary at all—not a single word. The remaining videos include publicly available footage and token additions such as unrelated clips from movies and television shows, which serve only to mock the subject and do not transform the underlying work. Not a single one of the 17-Videos includes anything close to "elaborate commentary," as Attorney Rapkin falsely claimed under penalty of perjury.

10. Plaintiff brings this action under 17 U.S.C. § 512(f) to hold both Attorney Rapkin and The Exposer accountable for knowingly and materially misrepresenting the legal basis of their counter-notice—and to prevent the reinstatement of the 17-Videos on YouTube.

11. Attorney Rapkin used the same boilerplate justification across all 17 takedown disputes, submitting a blanket counter-notice despite the factual differences among the videos. This demonstrates a deliberate scheme to preserve monetized content while shielding the true identity of the infringer.

12. In fact, on a recent livestream, The Exposer openly bragged about hiding behind his lawyer and a corporation to avoid accountability for the blatant misuse of Plaintiff's footage.

---

[1] The counter-notice lists 16 URLs, not 17.

COMPLAINT

13. This action seeks to expose The Exposer, hold both him and Attorney Rapkin responsible for their misconduct, and prevent the reinstatement of the 17-Videos on YouTube.

## JURISDICTION AND VENUE

14. This action arises under the Copyright Act, 17 U.S.C. § 101 *et seq.*, and includes a claim for Declaratory Relief under 28 U.S.C. § 2201.

15. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

16. Attorney Rapkin consented to jurisdiction in the Northern District of California pursuant to 17 U.S.C. § 512(g)(3)(D) by submitting a DMCA counter-notification to YouTube. She did so knowingly, using her law firm email and digital signature. Her consent binds her to this forum regardless of her location or bar admission status. Plaintiff notes that such consent is a statutory prerequisite for a valid counter-notification under § 512(g).

17. The Exposer likewise consented to jurisdiction in this District under 17 U.S.C. § 512(g)(3)(D) by submitting the counter-notice to YouTube.

18. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1400(a) because both Attorney Rapkin and The Exposer consented to jurisdiction in this District under 17 U.S.C. § 512(g)(3)(D).

## PARTIES

19. Plaintiff is a Colorado limited liability company and the sole owner of the copyrights in the videos published on the YouTube channels "Denver Metro Audits" and "Denver Metro Audits 2.0" (@DenverMetroAudits; @Denvermetroaudits2.0).

20. Attorney Rapkin is an attorney admitted to the Quebec bar in 2024, with no known experience in United States copyright law. Attorney Rapkin submitted a DMCA counter-notice in the course and scope of her employment with the Canadian law firm BLP Avocats, using her firm email and contact information. Plaintiff reserves the right to name BLP Avocats as a defendant after further discovery.

**COMPLAINT**

21. Defendant John Doe, operating under the alias "The Exposer," runs a YouTube channel located at @1aAuditsExposé.

22. The Exposer's YouTube channel is a textbook example of an anonymous "reaction" channel—that is, a channel that creates no original content of its own, but instead lifts copyrighted footage from others, overlays superficial or token commentary (if any), and attempts to pass it off as transformative. The Exposer never appears on camera, and until recently, his location was completely unknown.

23. The Exposer claims that his channel exists to "expose the grift" of First Amendment auditors ("Auditor(s)"). In reality, the channel monetizes stolen footage from those very same Auditors, ironically engaging in the exact behavior it purports to criticize. It is not journalism. It is not commentary. It is copyright infringement disguised as fair use, wrapped in a mask of moral outrage.

## FACTUAL ALLEGATIONS

24. YouTube is the largest video-sharing platform in the world and operates under the framework established by the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512.

25. The DMCA provides a process by which copyright owners may request the removal of infringing content through a notice-and-takedown mechanism. If the platform receives a valid takedown notice, it typically disables access to the allegedly infringing material.

26. The DMCA also allows the alleged infringer to submit a counter-notification claiming that the use is authorized, lawful, or otherwise non-infringing. If the copyright owner does not initiate a federal lawsuit within 10 business days of receiving a counter-notice, YouTube is required by law to restore access to the disputed content pursuant to 17 U.S.C. § 512(g).

27. This statutory framework places the burden on copyright owners, particularly small independent creators and small publishers, to enforce their rights through litigation.

COMPLAINT

28.     Infringers like The Exposer exploit this imbalance by targeting small creators who lack the resources to initiate a lawsuit after receiving a counter-notice.

29.     In practice, this loophole allows anonymous, foreign-run, monetized YouTube channels to exploit copyrighted material created in the United States by invoking "fair use" without consequence or oversight.

30.     In recent years, "fair use" has become a catchall defense on YouTube—used not to support legitimate critique, but to excuse the wholesale misappropriation of others' creative work.

31.     The Auditor community on YouTube consists of small independent content creators who film interactions with government officials in public spaces to promote transparency and assert constitutional rights, primarily the First Amendment. These creators act as citizen journalists, watchdogs, and public advocates, documenting real-time government conduct and holding public officials accountable through video.

32.     The Auditor movement has grown into a powerful and controversial force on social media. Auditors regularly publish their videos to YouTube channels, where they have collectively attracted millions of subscribers and billions of views. These creators often operate under channel names or aliases and have become recognizable figures in the digital civil rights ecosystem.

33.     Plaintiff owns all copyrights to the videos uploaded to the YouTube channels "Denver Metro Audits" (@DenverMetroAudits) and related channels, which collectively have over 250,000 subscribers and more than 600 videos. The works have generated over 115 million views and sustained public engagement on issues of constitutional importance.

34.     A genre of YouTube creators known as "auditor trolls" has emerged in response. These creators produce reaction-style videos targeting Auditors. While they purport to offer criticism or commentary, their actual content typically consists of mockery, personal insults, and superficial narration that does not engage with the substance of the original videos. Their focus is ridicule, not critique.

35. The Exposer's YouTube channel is a textbook example of such misuse. It provides no new message, no added insight, and no transformation of purpose. It simply repackages Plaintiff's footage with ridicule and pop culture references to attract viewers and generate revenue from Plaintiff's content. The Exposer creates no original content. He steals it and splices it together for ad revenue.

36. These additions rarely engage with the subject matter or journalistic value of Plaintiff's works. Instead, The Exposer mocks Auditors personally—their voices, mannerisms, appearances, emotional reactions, and private lives.

37. The Exposer has created at least 31 videos using Plaintiff's copyrighted footage: 19 YouTube shorts and 12 long-form videos.

38. On July 4, 2025, Plaintiff's assignor filed DMCA takedown notices with YouTube requesting removal of 27 of the 31 videos (16 shorts and 11 long-form videos).

39. YouTube complied and removed all 16 shorts and one long-form video. The Exposer made the other 10 long videos and 3 shorts private after receiving the strikes. A list of URLs for the 17-Videos that were removed by YouTube is attached as **Exhibit A**.

40. Despite repeated communications, YouTube refused to remove the 10 long-form videos that had been made private. YouTube appears to have determined—possibly via an automated process—that these videos were protected under fair use. This determination was made outside the DMCA safe-harbor and without judicial input. It is not the role of anonymous YouTube staff to resolve the legal question of fair use under U.S. copyright law.

41. On July 14, 2025, Attorney Rapkin submitted a blanket DMCA counter-notice on behalf of The Exposer purportedly covering all 17-Videos (16 shorts and 1 long-form). (the "Counter-Notice"). A copy of the Counter-Notice is attached hereto as **Exhibit B.**[2]

---

[2] Although the Counter-Notice purports to cover URLs for 17 videos, only 16 URLs were listed on the Counter-Notice.

42. In the Counter-Notice, Rapkin swore under penalty of perjury that the videos were removed "by mistake or misidentification" and that each was "significantly transformed by detailed editing and elaborate commentary throughout." These assertions were materially false.

43. In reality, the 16 counter-noticed shorts fall into three categories, none of which support a fair use defense:

44. Category 1: Short Videos with No Commentary Whatsoever (8 videos): These shorts consist entirely of Plaintiff's copyrighted footage, often paired with other copyrighted material (e.g., movie or television clips) for mockery. There is not a single word of narration, commentary, or critique in these videos, directly contradicting Rapkin's blanket claim under penalties of perjury of "elaborate commentary throughout."

45. Category 2: short Videos Featuring Publicly Available Government Footage (3 videos)[3]: These shorts depict public meetings or hearings that were already published by government entities on their official YouTube channels such as the City of Englewood, Colorado. Rather than using those public sources, the Exposer copied Plaintiff's original curated footage for convenience, better audio/video quality, or camera angles, none of which justify appropriation under fair use.

46. Category 3: Short Videos with Trivial or Token Commentary (6 videos): These shorts include brief and meaningless phrases or sarcastic clips from copyrighted movies and TV shows. None of these qualify as "elaborate commentary throughout" — the phrase Rapkin certified under penalty of perjury in the blanket Counter-Notice.

47. The sole long-form video in question rips off Plaintiff's footage and mashes it together with at least 14 clips from *Ren & Stimpy*, *Futurama*, *The Simpsons*, *The Office*, and *Extra*. That is not fair use—it is a highlight reel of copyright infringement. Stitching together other people's IP like a digital ransom note does not magically make it transformative.

---

[3] One Short Video falls into Categories 1 and 2 as it has no commentary and public domain footage was available

COMPLAINT

48. Despite these clear deficiencies, Attorney Rapkin submitted the blanket Counter-Notice declaring that all 17-Videos were "significantly transformed by detailed editing and elaborate commentary throughout."

49. As discussed above, that statement was knowingly false.

50. The Counter-Notice was part of a coordinated scheme to preserve monetized infringing content while concealing the identity of the true channel operator. Attorney Rapkin submitted the false Counter-Notice under penalty of perjury as required by 17 U.S.C. § 512(g).

51. Plaintiff now seeks damages, attorneys' fees, declaratory and injunctive relief for Attorney Rapkin and The Exposer's material misrepresentations in the Counter-Notice submitted to YouTube.

## FIRST CAUSE OF ACTION

### Misrepresentation in Counter-Notifications under the DMCA

### (17 U.S.C. § 512(f))

52. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 51.

53. Section 512(f)(2) of the Copyright Act provides, in relevant part, that "**_any person_** who knowingly materially misrepresents under this section . . . that material was removed or disabled by mistake or misidentification, shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer, by any copyright owner…who is injured by such misrepresentation..." (emphasis added).

54. The Counter-Notice submitted by Attorney Rapkin and The Exposer was false, and knowingly so at the time it was filed. Attorney Rapkin falsely represented, under penalty of perjury: (1) that each of the 17-Videos "was significantly transformed by detailed editing and elaborate commentary throughout"; and (2) that each video was protected by fair use and removed "due to a mistake or misidentification." These statements were materially false. At least eight of the Videos

contain no commentary whatsoever, and none was transformed by detailed editing or any meaningful commentary.

55. Attorney Rapkin made these knowingly false statements in an effort to preserve or re-monetize the 17-Videos on the Exposé Channel.

56. As a direct result of the Defendants' material misrepresentations, Plaintiff was forced to initiate this action to prevent YouTube from restoring the 17-Videos. Plaintiff is entitled to recover damages, costs, and attorneys' fees under 17 U.S.C. § 512(f).

57. Plaintiff is further entitled to injunctive relief barring YouTube or its agents from restoring the 17-Videos to public view.

## SECOND CAUSE OF ACTION

## Declaration of Copyright Infringement, 28 U.S.C. § 2201

### (Against the Exposer)

58. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 57.

59. An actual and justiciable controversy exists between Plaintiff and The Exposer concerning The Exposer's use of the 17-Videos.

60. Plaintiff contends that The Exposer's use of the 17-Videos is not protected under 17 U.S.C. § 107.

61. The Exposer believes that his use of the 17-Videos is protected by 17 U.S.C. § 107 as he stated in the Counter-Notification.

62. The Exposer had said on multiple occasions that he wants to re-post the 17-Videos on his YouTube channel if permitted by YouTube. Therefore, there is a case or controversy between the parties.

63. Plaintiff seeks a judicial declaration under 28 U.S.C. § 2201 that the Exposer's use of the 17-Videos is not protected by 17 U.S.C. § 107.

64. Plaintiff also seeks an injunction restraining YouTube and the Exposer from restoring the 17-Videos listed on **Exhibit A** to the Exposer's YouTube channel.

**COMPLAINT**

# PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Executive Lens LLC, prays for judgment against Defendant as follows:

A. That judgment be entered in favor of Plaintiff and against Attorney Rapkin and The Exposer for monetary damages caused by their knowing material misrepresentations in the Counter-Notice pursuant to 17 U.S.C. § 512(f);

B. That the Court enter a declaratory judgment that The Exposer's use of the 17-Videos is not protected by 17 U.S.C. § 107;

C. A permanent injunction enjoining the Exposer from further use of the 17-Videos and requiring YouTube to remove the 17-Videos and prevent further dissemination;

D. An award of attorneys' fees and costs pursuant to 17 U.S.C. § 512(f)(2);

E. Any other relief the Court deems just and proper.

# JURY TRIAL DEMANDED

Dated: July 17, 2025

/s/ Randall S. Newman
Randall S. Newman, Esq. (SBN 190547)
99 Wall Street, Suite 3727
New York, NY 10005
(212) 797-3735
rsn@randallnewman.net

*Attorney for Plaintiff,
Executive Lens LLC*

# EXHIBIT A

# LIST OF URLs PURPORTEDLY SUBJECT TO COUNTER-NOTICE

## Short Form Videos

1. https://youtube.com/shorts/aIa1JUqSUd4?si=S6uQNRkxSSsyk_0j
2. https://youtube.com/shorts/6iZ83Pe4NoQ?si=c3fL1Z3np-0meofK
3. https://youtube.com/shorts/g1x8N1QdWN0?si=9E8btOBA3jkC5Ksx
4. https://youtube.com/shorts/FEDB48NK3pg?si=z3H9Vrc4c02134lz
5. https://youtube.com/shorts/19QF4uG_2gg?si=s8T-NdSY6nOmNd_Y
6. https://youtube.com/shorts/1qZ8ujLW9i0?si=YuGlA-hMULmpm13O
7. https://youtube.com/shorts/Hj-0PFw-l-g?si=unQyL7iIWj_OVQhs[1]
8. https://youtube.com/shorts/VMB9VUnc_jk?si=qaisFQfknhODb1hA
9. https://youtube.com/shorts/REcICenk5Io?si=cNgJgN_lWk0EckGa
10. https://youtube.com/shorts/_QdhTfh-r8M?si=QpssuQ7TKiHk-PBb
11. https://youtube.com/shorts/Gs96tu40z8M?si=ERXTFgEMNLqgTP2M
12. https://youtube.com/shorts/yjClhLsOQpk?si=PiyYFQKcjXX8N4jA
13. https://youtube.com/shorts/4iVWR3Gsdyk?si=uHJVS-4HjQ-CA2p5
14. https://youtube.com/shorts/nEd1KW-A3kU?si=Qt64MtFls2Ja-zSP
15. https://youtube.com/shorts/9FK-VCcV6xE?si=S0Rmd1RffKNB2l01
16. https://youtube.com/shorts/yQMwzdlodCo?si=tNzM3mLttAYZj4gM

## Long Form Video

17. https://youtu.be/dDKRME4f7Dw?si=-s4VzpDgtXrt8HWV

---

[1] This URL was not included in the July 14, 2025 Counter-Notice.

  DMCA Lawyer <thedmcalawyer@gmail.com>

### Fwd: [53K3YSEI324SZPPLIO7B2CRNQY] New Copyright Counter Notification
1 message

**Denver Metro Audits** <denvermetroaudits@gmail.com>  Tue, Jul 15, 2025 at 9:28 AM
To: DMCA Lawyer <thedmcalawyer@gmail.com>

---------- Forwarded message ---------
From: **YouTube Copyright** <youtube-disputes+0uk5svpi4y2vs0h@google.com>
Date: Mon, Jul 14, 2025 at 11:44 AM
Subject: Re: [53K3YSEI324SZPPLIO7B2CRNQY] New Copyright Counter Notification
To: <denvermetroaudits@gmail.com>



We received a counter notification (below) in response to a copyright removal request that you submitted. A counter notification is a legal request for YouTube to reinstate a video that was removed due to a copyright removal request.

You have **10 US business days** to reply to this counter notification. Your response **must include evidence that you've taken legal action against the uploader** to keep the content from being reinstated to YouTube. Usually, evidence would include a lawsuit against the uploader, which names the YouTube URL(s) at issue and seeks a court order to restrain the alleged infringement.

**Evidence should be submitted by replying directly to this email**. Do not send your reply to copyright@youtube.com.

After 10 US business days, if we don't get a response from you, the content at issue may be reinstated to YouTube. You can find more information about the legal action you must take and what evidence is acceptable in our Help Center.

- The YouTube Team

Counter Notification as follows:

Videos included in counter notification:

- http://www.youtube.com/watch?v=19QF4uG_2gg
- http://www.youtube.com/watch?v=1qZ8ujLW9i0
- http://www.youtube.com/watch?v=4iVWR3Gsdyk
- http://www.youtube.com/watch?v=6iZ83Pe4NoQ
- http://www.youtube.com/watch?v=9FK-VCcV6xE
- http://www.youtube.com/watch?v=FEDB48NK3pg
- http://www.youtube.com/watch?v=Gs96tu40z8M
- http://www.youtube.com/watch?v=REcICenk5Io
- http://www.youtube.com/watch?v=VMB9VUnc_jk
- http://www.youtube.com/watch?v=_QdhTfh-r8M
- http://www.youtube.com/watch?v=aIa1JUqSUd4
- http://www.youtube.com/watch?v=dDKRME4f7Dw
- http://www.youtube.com/watch?v=g1x8N1QdWN0
- http://www.youtube.com/watch?v=nEd1KW-A3kU
- http://www.youtube.com/watch?v=yQMwzdIodCo
- http://www.youtube.com/watch?v=yjCIhLsOQpk

Display name of uploader:

To whom it may concern,


We are the legal counsel representing the rights and interests of the owner of the channel 1A Audits Exposé (https://www.youtube.com/channel/UCX9F1a1qde5JspqdeCQIpoA), who received 17 copyright strikes since July 7th from the same claimants. Our client respectfully maintains that each of the videos in question fully complies with YouTube's guidelines and is protected under fair use.


Our client believes the content was removed by mistake or misidentification, as there is no valid basis for a copyright infringement claim. Furthermore, it is our client's good faith belief that the claimant filed the takedown not due to any actual copyright violation, but rather for retaliatory or personal reasons, effectively using the copyright system as a tool of censorship. Our client believes that his videos were protected by fair use for the following reasons.


**The copyright-claims videos:**

- Were used to analyze, demonstrate, and criticize their questionable and debatable content (educational purpose).
- Were significantly transformed by detailed editing and elaborate commentary throughout the videos (commentary and criticism).

- Were used for parody, creating humorous or satirical works that comment on the original (parody and pastiche).

**Legal statements:**

- "I consent to the jurisdiction of the Federal District Court for the district in which my address is located, or if my address is outside of the United States, the judicial district in which YouTube is located, and will accept service of process from the claimant."
- "I swear, under penalty of perjury, that I have a good faith belief that the material was removed or disabled as a result of a mistake or misidentification of the material to be removed or disabled."

**Statement to the claimant:**

The videos targeted by the strikes are in compliance with YouTube's guidelines and fair use rules; the videos are completely transformed by an elaborate editing and commentary throughout. They were also used for educational purposes and for parody by creating humorous and satirical works that comment on the original. Furthermore, our client truly believes that those claims were sent as a retaliatory gesture for personal reasons, effectively using the copyright system as a tool of censorship. For these reasons, we kindly request that you remove the claims, allowing the Channel 1A Audits Exposé to continue its work and exercise its freedom of speech.

Our client once again provides the following videos and links that have been taken down due to this copyright strike:

**Video title:** When DMA promises to not bother you while bothering you

**Video url:** https://www.youtube.com/watch?v=6iZ83Pe4NoQ

**Video title:** When Regan Benson opened a speech with her own personal style

**Video url:** https://www.youtube.com/watch?v=_QdhTfh-r8M

**Video title:** When a frauditor goes with the same old script

**Video url:** https://www.youtube.com/watch?v=g1x8N1QdWN0

**Video title:** When DMA knows more than a law firm (part 1)

**Video url:** https://www.youtube.com/watch?v=19QF4uG_2gg

**Video title:** When DMA knows more than a law firm (part 2)

**Video url:** https://www.youtube.com/watch?v=1qZ8ujLW9i0

**Video title:** When Denver Metro Audit & Regan are asked to leave (part 2)

**Video url:** https://www.youtube.com/watch?v=9FK-VCcV6xE

**Video title:** When DMA shows his journalist skills

**Video url:** https://www.youtube.com/watch?v=FEDB48NK3pg

**Video title:** When DMA gets mad at you, it's time for name and badge number

**Video url:** https://www.youtube.com/watch?v=nEd1KW-A3kU

**Video title:** This frauditor tries to visit a mental institute

**Video url:** https://www.youtube.com/watch?v=dDKRME4f7Dw

**Video title:** When Denver Metro Audits needs more YouTube content

**Video url:** https://www.youtube.com/watch?v=yQMwzdlodCo

**Video title:** When Denver Metro Audit and Direct D wont be accountable (PART 2)

**Video url:** https://www.youtube.com/watch?v=4iVWR3Gsdyk

EXHIBIT B - Page 2 of 3

**Video title:** When Regan Benson finished a speech with her own personal style

**Video url:** https://www.youtube.com/watch?v=REcICenk5Io

**Video title:** When Regan Benson loves to play the victim card

**Video url:** https://www.youtube.com/watch?v=VMB9VUnc_jk

**Video title:** When DMA shows the council how delusional he is (PART 1)

**Video url:** https://www.youtube.com/watch?v=aIa1JUqSUd4

**Video title:** When Denver Metro Audit & Regan are asked to leave (part 1)

**Video url:** https://www.youtube.com/watch?v=yjClhLsOQpk

**Video title:** When DMA takes "control" of a situation
**Video url**: https://youtube.com/shorts/Gs96tu40z8M

**Video title**: When Denver Metro Audit and Direct D won't be accountable (PART 2)
**Video url**: https://youtube.com/shorts/4iVWR3Gsdyk

As such, we believe the resubmission of the counter-notification was filed correctly, and we request that the content be reinstated. Please let us know if any further information is required.

Best regards,

Me Lee Rapkin

*Avocate / Lawyer*

**Courriel:** lee@blpavocats.com

**Bureau:** (514) 396-5005

439, rue Saint-Pierre, Montréal, Québec, H2Y 2M8

1aauditsexpose@gmail.com

Help Center • Email Options

You received this email to provide information and updates around your YouTube channel or account.

▶ YouTube

© 2021 Google LLC d/b/a YouTube, 901 Cherry Ave, San Bruno, CA 94066

EXHIBIT B - Page 3 of 3