Kevin R. Sutherland (State Bar No. 163746)
Brandon K. Franklin (State Bar No. 303373)
Jessica R. Stone (State Bar No. 313426)
CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800
Facsimile: (415) 365-9801
Email: kevin.sutherland@clydeco.us
        brandon.franklin@clydeco.us
        jessica.stone@clydeco.us

Attorneys for Defendant
LEE RAPKIN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EXECUTIVE LENS LLC,<br><br>             Plaintiff,<br><br>     v.<br><br>LEE RAPKIN and JOHN DOE dba "the Exposer" www.youtube.com/@1aAudits Exposé,<br><br>             Defendants. | Case No. 5:25-cv-06048-NC<br><br>DEFENDANT LEE RAPKIN'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>[(Proposed) Order Lodged Concurrently Herewith]<br><br>Date: January 14, 2026<br>Time: 11 a.m. PT<br>Place: Courtroom 5 – 4th Floor<br>Judge: Nathanael M. Cousins<br><br>Complaint Filed: July 17, 2025 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 14, 2026, at 11:00 a.m., in Courtroom 5 of the above captioned Court, located at 280 South First Street, San Jose, California 95113, the Honorable Nathanael M. Cousins presiding, defendant Lee Rapkin ("Defendant Rapkin" or "Ms. Rapkin") will and hereby does move the Court for an order dismissing plaintiff's complaint (Dkt. 1) against Defendant Rapkin, in its entirety and without leave to amend, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This motion is made on grounds that plaintiff's sole claim against Ms. Rapkin – plaintiff's First Cause of Action for "Misrepresentation in Counter-Notifications under the Digital Millennium Copyright Act ("DMCA") (17 U.S.C. § 512(f))" – fails to state a claim upon which relief may be granted because (1) YouTube never replaced the videos that are the subject of plaintiff's complaint; and (2) there are no alleged facts that, if true, would establish that Ms. Rapkin "knowingly materially misrepresented" any facts for purpose of the subject counter notice submitted to YouTube under the DMCA.

This motion will be based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof filed concurrently herewith, the pleadings and records on file herein, and any further evidence and argument that the Court may receive at or before the hearing of this motion.

### ISSUES TO BE DECIDED

1.    Whether plaintiff can maintain a claim for violations of the DMCA (17 U.S.C. § 512(f)), despite the undisputed fact that YouTube never replaced the videos that are the subject of plaintiff's complaint.

2.    Whether plaintiff alleged facts that, if true, could establish that Ms. Rapkin "knowingly materially misrepresented" that YouTube "removed or disabled by mistake or misidentification" the videos that are the subject of plaintiff's complaint and establish a violation under the DMCA.

Dated: December 9, 2025          CLYDE & CO US LLP

By: _____
KEVIN R. SUTHERLAND
BRANDON K. FRANKLIN
JESSICA R. STONE
Attorneys for Defendant
LEE RAPKIN

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

# TABLE OF CONTENTS

*Page*

INTRODUCTION ..................................................................................6

STATEMENT OF FACTS ....................................................................8

    A.    *The Parties* ..............................................................................8

    B.    *The Subject Videos and DMCA Takedown Notice* ..................9

    C.    *The Counter Notice Did Not Contain Any Knowing Misrepresentations* ..................................................................10

    D.    *YouTube Has Not Restored Access to the Subject Videos* .................12

LEGAL STANDARDS ........................................................................12

    A.    *Standard for Granting a Motion to Dismiss Under Rule 12(b)(6)* .................................................................................12

    B.    *Standard for Establishing a Violation of the DMCA* ..........13

ARGUMENT ........................................................................................15

I.    PLAINTIFF HAS NOT ALLEGED FACTS THAT COULD ESTABLISH A DMCA VIOLATION ..........................................15

    A.    *Plaintiff's DMCA Claim Fails Because YouTube Did Not Replace or Enable Access to the Subject Videos In Response to the Counter Notice* ................................................................15

    B.    *Plaintiff's DMCA Claim Fails for a Second Independent Reason: Ms. Rapkin Did Not Make a "Knowing" Misrepresentation* ...................................................................17

CONCLUSION......................................................................................20

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

1

## TABLE OF AUTHORITIES

2

*Page(s)*

3

*Federal Cases*

4

5

*Am. Family Ass'n v. City & County of San Francisco*,
277 F.3d 1114 (9th Cir. 2002) .................................................................... 12

6

7

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*,
790 F. Supp. 2d 1024 (N.D. Cal. 2011) ................................................. 15, 16, 17

8

9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................... 12, 13

10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................. 12

11

12

13

*Bus. Casual Holdings, LLC v. TV-Novosti*,
No. 21-CV-2007 (JGK), 2022 WL 784049, at *5 (S.D.N.Y. Mar.
14, 2022) .............................................................................. 15, 16, 17

14

15

16

*Bus. Casual Holdings, LLC v. TV-Novosti*,
No. 21-CV-2007 (JGK) (RWL), 2023 WL 1809707 (S.D.N.Y.
Feb. 8, 2023) ....................................................................... 13, 15

17

*Hosseinzadeh v. Klein*,
276 F. Supp. 3d 34 (S.D.N.Y. 2017) ................................................... 18

18

19

*Lenz v. Universal Music Corp.*,
815 F.3d 1145 (9th Cir. 2016) ........................................... 6, 13, 14, 15

20

21

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) .............................................................. 13

22

23

24

*Moonbug Ent. Ltd. v. Babybus (Fujian) Network Tech. Co.*,
No. 21-cv-06536-EMC, 2022 WL 580788 (N.D. Cal. Feb. 25,
2022) ............................................................................. 15, 18

25

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) .............................................................. 12

26

27

*Rossi v. Motion Picture Ass'n of Am. Inc.*,
391 F.3d 1000 (9th Cir. 2004) .................................................. *passim*

28

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

LEE RAPKIN'S NOTICE OF MOTION AND MOTION TO DISMISS

*Page(s)*

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ............................................................................ 12

***Federal Statutes***

17 U.S. Code
  § 512, *et seq.* ("Digital Millenium Copyright Act") ................................... *passim*

***Other Authorities***

Federal Rule of Civil Procedure, Rule 12(b)(6) ...................................................... 12

Rule 12(b)(6) ............................................................................................................. 12

United States Constitution, First Amendment .......................................................... 9

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The claim against defendant Lee Rapkin ("Defendant Rapkin" or "Ms. Rapkin") is straightforward.  Plaintiff contends that Ms. Rapkin, a Canadian attorney, violated the Digital Millennium Copyright Act ("DMCA") by representing to YouTube that certain videos that her client[1] allegedly posted to YouTube ("Subject Videos") fell within the fair use doctrine.  Plaintiff's claim against Ms. Rapkin fails for two reasons.

**First,** liability for a misrepresentation in a counter notice under Section 512(f) of the DMCA exists *only* where damages occurred because the online service provider (here, YouTube) relied on the misrepresentation "in *replacing* the removed material or ceasing to disable access to it."   17 U.S.C. 512(f)(2) (emphasis added).  Thus, to establish a violation under Section 512(f), the plaintiff must prove that the online service provider actually replaced or enabled access to the allegedly infringing content.  Plaintiff has not alleged that YouTube replaced or reenabled access to the Subject Videos.  Indeed, plaintiff concedes that YouTube *has not* reinstated access to the Subject Videos.  For this reason alone, the Court should dismiss plaintiff's complaint against Ms. Rapkin as a matter of law without leave to amend.

**Second,** there is liability under Section 512(f) only where the defendant "*knowingly* materially misrepresents" under the DMCA.   17 U.S.C. 512(f) (emphasis added).  In other words, a mere mistake is not enough.  *Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1005 (9th Cir. 2004).  The Ninth Circuit has held that to establish a "knowing" misrepresentation under the DMCA, the plaintiff must show that the defendant acted with subjective bad faith *and* with actual knowledge that it was making a material misrepresentation.  *Lenz v.*

---

[1]   Ms. Rapkin's client is also named as a defendant in this action.  In addition to Ms. Rapkin, plaintiff has sued JOHN DOE dba "the Exposer" www.youtube.com@1aAudits Exposé (the "Exposer").

1    *Universal Music Corp.*, 815 F.3d 1145, 1154–56 (9th Cir. 2016); *see also Rossi*,

2    391 F.3d at 1005.  Plaintiff has failed to clear this high bar.

3    Plaintiff theorizes that Ms. Rapkin "falsely represented": "(1) that each of

4    the 17-Videos [Subject Videos] 'was significantly transformed by detailed editing

5    and elaborate commentary throughout'; and (2) that each video was protected by

6    fair use and removed 'due to a mistake or misidentification.'"  Compl. ¶ 54.  Both

7    theories fail.  There are no factual allegations suggesting that Ms. Rapkin acted

8    with subjective bad faith or with actual knowledge of material falsity with respect

9    to either theory.  In fact, the opposite is true.

10    To start, plaintiff's own description of the Subject Videos shows that Ms.

11    Rapkin did not misrepresent anything, much less act with subjective bad faith and

12    actual knowledge of material falsity.  Plaintiff first contends that Ms. Rapkin

13    violated the DMCA by representing that the Subject Videos were "significantly

14    transformed" and contained "elaborate commentary throughout" when they

15    allegedly did not in fact contain "elaborate commentary." *Id.* ¶¶ 9, 42-47.  But that

16    allegation is insufficient to establish a DMCA violation because plaintiff admits

17    that the Subject Videos were edited to include various film and television clips

18    purportedly selected by the Exposer, and that such film and television content was

19    paired with Plaintiffs' original videos "for mockery." *Id.* ¶¶ 44-47.

20    Based on plaintiff's own description of the material at issue, the Subject

21    Videos were transformed and do, in fact, contain commentary.  Thus, there is no

22    plausible basis to conclude that Ms. Rapkin made an actionable misrepresentation

23    under the DMCA. Plaintiff's allegations, if true, could establish—at most—that the

24    extent of the transformation and commentary in the Subject Videos is debatable

25    and that Ms. Rapkin may have been mistaken about whether the commentary was

26    "transformative" for purposes of US copyright law.  That is not sufficient to

27    establish a DMCA violation because it would amount to a mistake, not a deliberate

28    knowing misrepresentation.

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

Plaintiff's second misrepresentation theory is that Ms. Rapkin falsely asserted that the Subject Videos fell within the fair use doctrine. *Id.* That theory also fails. Plaintiff alleges that Ms. Rapkin has "no known experience in United States copyright law." *Id.* ¶ 20. Accordingly, there are no alleged facts that could, if true, establish that Ms. Rapkin had actual knowledge that her statements about "significant[] transform[ation]" or "fair use" were materially false because plaintiff alleged that Ms. Rapkin did not have US copyright experience, which is the kind of experience that would allow a person to know whether fair use protected the Subject Videos or not.

Moreover, plaintiff repeatedly accuses Ms. Rapkin of submitting a "blanket" counter notice under the DMCA (*id.* ¶¶ 7, 41, 44, 48) and suggests that the counter notice was submitted without reviewing the Subject Videos (*id.* ¶ 5). In other words, plaintiff contends that Ms. Rapkin does not have US copyright experience and did not adequately review the Subject Videos. Far from establishing subjective bad faith and actual knowledge of material falsity, the allegations suggest nothing more than an innocent mistake, which again is not sufficient to support a DMCA claim.

For these reasons, which are further established below, the Court should grant Ms. Rapkin's motion and dismiss plaintiff's claim against her without leave to amend.

## STATEMENT OF FACTS

### A.    *The Parties*

Plaintiff alleges that it is "the sole owner of copyright in the videos published on the YouTube channels 'Denver Metro Audits' and 'Denver Metro Audits 2.0'" (collectively, "Denver Metro Audits*").* *Id.* ¶¶ 19, 33. Denver Metro Audits is purportedly a member of the "auditor community," which view themselves as "citizen journalists," and films and posts videos of "interactions with government officials in public spaces to promote transparency and assert

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

1    constitutional rights," primarily related to the First Amendment.  *Id*. ¶¶ 31-32.

2        Plaintiff asserts that the Doe defendant, the Exposer, on the other hand, is a

3    member of the online community of "auditor trolls," who create and post reaction-

4    style videos, allegedly utilizing content posted by "auditors" in order to mock and

5    ridicule the "auditor community."  *Id*. ¶¶ 34-36.

6        Ms. Rapkin allegedly acted as the Exposer's attorney in representing the

7    Exposer's interests in the DMCA takedown procedures at issue here.  *Id*. ¶¶ 7-11.

8    Regarding Ms. Rapkin's legal background and expertise, plaintiff emphasizes that

9    Ms. Rapkin "is an attorney admitted to the Quebec bar in 2024, with no known

10   experience in United States copyright law."  *Id*. ¶ 20.  Accordingly, plaintiff asserts

11   that Ms. Rapkin has no expertise in analyzing issues of copyright infringement or

12   fair use, or prior experience engaging in the DMCA takedown process.  *Id*.

13   **B.    The Subject Videos and DMCA Takedown Notice**

14       Plaintiff alleges that the defendant, the Exposer, created reaction-style

15   videos mocking the plaintiff's Denver Metro Audits YouTube channel, using

16   content from videos that were originally posted to the Denver Metro Audits

17   channels.  *Id*. ¶¶ 21-23, 34-36.

18       On July 4, 2025, plaintiff's assignor allegedly sent DMCA takedown notices

19   to YouTube ("Takedown Notices") requesting that YouTube remove 27 videos the

20   Exposer posted on the basis that they infringed plaintiff's copyright in videos

21   plaintiff originally posted to the plaintiff's Denver Metro Audits channels.  *Id*. at

22   ¶ 38.  Only 17 of these videos are the subject of plaintiff's DMCA claim (i.e., the

23   Subject Videos).[2]  *Id*. at ¶¶ 37-41.  Plaintiff alleges that the Exposer voluntarily

24   made the remaining videos "private," meaning they could not be viewed by the

25   public.  *Id*. at ¶ 39.  Following receipt of the Takedown Notices, YouTube

26

27   _____
     [2] Plaintiff alleges that Takedown Notices were issued as to only 27 videos (*Id*. at
28   ¶ 38), but that the counter notice allegedly issued by the Exposer and Ms. Rapkin
     addresses only 17 videos, which were removed by YouTube following plaintiff's
     takedown notice (*Id*. at ¶¶ 39, 41).

removed the 17 Subject Videos. *Id.* at ¶ 39.

According to plaintiff, the Subject Videos (which plaintiff organizes into three "categories" in its complaint) were edited to include various film and television clips purportedly selected by the Exposer, and that such film and television content was paired with Plaintiffs' Videos "for mockery":

> *Category 1: Short Videos with No Commentary Whatsoever (8 videos):* **These shorts consist entirely of Plaintiff's copyrighted footage, often paired with other copyrighted material (e.g., movie or television clips) for mockery.** *There is not a single word of narration, commentary, or critique in these videos, directly contradicting Rapkin's blanket claim under penalties of perjury of "elaborate commentary throughout."*

> *Category 2: short Videos Featuring Publicly Available Government Footage (3 videos)3 : These shorts depict public meetings or hearings that were already published by government entities on their official YouTube channels such as the City of Englewood, Colorado. Rather than using those public sources, the Exposer copied Plaintiff's original curated footage for convenience, better audio/video quality, or camera angles, none of which justify appropriation under fair use.*

> *Category 3: Short Videos with Trivial or Token Commentary (6 videos):* **These shorts include brief and meaningless phrases or sarcastic clips from copyrighted movies and TV shows.** *None of these qualify as "elaborate commentary throughout" — the phrase Rapkin certified under penalty of perjury in the blanket Counter-Notice.*

> **The sole long-form video in question rips off Plaintiff's footage and mashes it together with at least 14 clips from Ren & Stimpy, Futurama, The Simpsons, The Office, and Extra.** *That is not fair use—it is a highlight reel of copyright infringement. Stitching together other people's IP like a digital ransom note does not magically make it transformative.*

*Id.* at ¶¶ 44-47 (footnote 3 omitted).

In sum, plaintiff's own description of the Subject Videos makes it clear that the videos contain commentary in the form of clips and mashups.

### C.    The Counter Notice Did Not Contain Any Knowing Misrepresentations

Plaintiff alleges that, on July 14, 2025, Ms. Rapkin sent a counter notice ("Counter Notice") to YouTube requesting reinstatement of the Subject Videos on grounds that the Subject Videos do not infringe plaintiff's alleged copyright in the Denver Metro Audits Videos ("Plaintiff's Videos") because they are subject to the

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

1  fair use exception to copyright infringement.[3] *Id.* at ¶¶ 41-42. Plaintiff alleges that,

2  in the Counter Notice, Ms. Rapkin "knowingly" and "falsely represented": "(1)

3  that each of the 17-Videos 'was significantly transformed by detailed editing and

4  elaborate commentary throughout'; and (2) that each video was protected by fair

5  use and removed 'due to a mistake or misidentification.'" *Id.* at ¶ 54.

6      Plaintiff's first theory purportedly supporting the contention that she made a

7  "knowing" misrepresentation is that Ms. Rapkin allegedly said that the Subject

8  Videos were "significantly transformed" and contained "elaborate commentary

9  throughout" when they do not in fact contain "elaborate commentary." *Id.* at ¶¶ 9,

10 42-47. That claim cannot be true based on plaintiff's own description of the

11 Subject Videos. Far from establishing a "knowing" misrepresentation, plaintiff's

12 allegations leave no doubt that the Subject Videos do, in fact, contain commentary

13 in the form of clips and mashups. *Id.* at ¶¶ 44-47. Therefore, there is no plausible

14 basis to conclude that Ms. Rapkin misrepresented – much less "knowingly"

15 misrepresented – the nature of the Subject Videos in the Counter Notice.

16     Plaintiff's second misrepresentation theory is that Ms. Rapkin "knowingly"

17 misrepresented that the Subject Videos were protected by the fair use doctrine. *Id.*

18 at ¶ 54. This theory too falls flat. Plaintiff does not allege anything suggesting that

19 Ms. Rapkin *knew* that the Subject Videos were not protected by the fair use

20 doctrine when she submitted the Counter Notice. Indeed, plaintiffs' allegations

21 suggest the opposite. Plaintiff alleges that Ms. Rapkin had no known experience

22 with US copyright law, which would mean that Ms. Rapkin, at most, made a

23 mistake about fair use and did not deliberately misrepresent the applicability of the

24 fair use doctrine in the Counter Notice. *Id.* at ¶¶ 44-47, 54.

25     In sum, Ms. Rapkin did not violate the DMCA because she did not

26 "knowingly materially misrepresent[]" anything about the Subject Videos in the

27

28

---

[3] Plaintiff alleges that a copy of the Counter Notice is annexed as Exhibit B to the complaint. *Id.* at ¶ 41.

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

1  Counter Notice.

2  **D.    *YouTube Has Not Restored Access to the Subject Videos***

3       Plaintiff alleges that YouTube removed the Subject Videos and there is no

4  allegation that it ever restored access to the Subject Videos. *Id.* at ¶ 39.  Moreover,

5  plaintiff seeks an injunction *restraining* YouTube and the Exposer from restoring

6  the Subject Videos.  *Id.* at ¶¶ 57, 64.   Accordingly, there is no dispute that

7  YouTube removed the Subject Videos and has not since replaced or reinstated

8  access to the Subject Videos.

9                          **LEGAL STANDARDS**

10 **A.    *Standard for Granting a Motion to Dismiss Under Rule 12(b)(6)***

11      A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of the

12 claims asserted in a complaint."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

13 2001).  In ruling on a Rule 12(b)(6) motion, "[a]ll allegations of material fact are

14 taken as true and construed in the light most favorable to the nonmoving party."

15 *Am. Family Ass'n v. City & County of San Francisco*, 277 F.3d 1114, 1120 (9th

16 Cir. 2002).  Although a complaint attacked by a Rule 12(b)(6) motion "does not

17 need detailed factual allegations," a plaintiff must provide "more than labels and

18 conclusions."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

19      To state a plausible claim for relief, the complaint "must contain sufficient

20 allegations of underlying facts" to support its legal conclusions.  *Starr v. Baca*, 652

21 F.3d 1202, 1216 (9th Cir. 2011).  "Factual allegations must be enough to raise a

22 right to relief above the speculative level on the assumption that all the allegations

23 in the complaint are true (even if doubtful in fact)...."  *Twombly*, 550 U.S. at 555

24 (citations and footnote omitted).  A complaint "must contain sufficient factual

25 matter, accepted as true, to state a claim to relief that is plausible on its face,"

26 meaning that a plaintiff must plead sufficient factual content to "allow[ ] the Court

27 to draw the reasonable inference that the defendant is liable for the misconduct

28 alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks

1    omitted); *see also id.* at 679 (a complaint must contain "well-pleaded facts" from

2    which the Court can "infer more than the mere possibility of misconduct").

3    Furthermore, if the court finds that dismissal of a claim is appropriate, it

4    must also decide whether to grant leave to amend. In ruling on a motion to dismiss,

5    the court has discretion to deny leave to amend if it determines "that the pleading

6    could not possibly be cured by the allegation of other facts[.]" *Lopez v. Smith*, 203

7    F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 8 F.3d 494, 497

8    (9th Cir. 1995)).

9    ### B.    Standard for Establishing a Violation of the DMCA

10   The DMCA allows copyright holders to seek the removal of allegedly

11   infringing material from the internet by notifying online service providers, such as

12   YouTube, that they are hosting or providing access to allegedly infringing material.

13   17 U.S.C. § 512(c); *Bus. Casual Holdings, LLC v. TV-Novosti*, No. 21-CV-2007

14   (JGK) (RWL), 2023 WL 1809707, at *7 (S.D.N.Y. Feb. 8, 2023). These processes

15   are available under Section 512(c) and are known "as the DMCA's 'takedown

16   procedures.'" *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1151 (9th Cir.

17   2016). Under the takedown procedures, online service providers may avoid

18   liability for copyright infringement "if – among other requirements – the service

19   provider 'expeditiously' removes or disables access to the content after receiving

20   notification from a copyright holder that the content is infringing." *Id.* (citing 17

21   U.S.C. § 512(c)).

22   The takedown procedure begins when the copyright holder sends a

23   "takedown" notice to the service provider. *See* 17 U.S.C. § 512(c)(3)(A); *Lenz,*

24   at 815 F.3d at 1151; *Bus. Casual*, No. 21-CV-2007 (JGK) (RWL), 2023 WL

25   1809707, at *7. To avoid liability for disabling or removing content following a

26   takedown notice, the service provider must then notify the creator of the alleged

27   infringing work of the takedown. *Lenz*, 815 F.3d 1151 (citing 17 U.S.C.

28   § 512(g)(1)–(2).) The creator of the allegedly infringing work, in turn, has the

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

option of sending a "counter notification," or "counter notice," effectively appealing the service provider's decision to remove or otherwise disable access to the work.  17 U.S.C. § 512(g)(3)(C); *Lenz*, 815 F.3d at 1151.

If an individual or entity abuses the DMCA by knowingly submitting a false takedown notice or counter notice, it may be subject to liability under Section 512(f) of the DMCA. 17 U.S.C. § 512(f). Section 512(f)(1) concerns false takedown notices alleging infringement, while Section 512(f)(2) concerns false counter notices contesting the alleged infringement.  Specifically, Section 512(f) provides:

> *Any person who knowingly materially misrepresents under this section –*
>
> *(1) that material or activity is infringing, or*
> *(2) **that material or activity was removed or disabled by mistake or misidentification,***
>
> *shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer, by any copyright owner or copyright owner's authorized licensee, or by a service provider, who is injured by such misrepresentation, as the result of the service provider **relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it.***

17 U.S.C. § 512(f)(1)-(2) (emphasis added).  Plaintiff alleges that Ms. Rapkin is liable under Section (f)(2).

To state a claim for violating Section 512(f)(2) of the DMCA, the plaintiff must allege facts establishing that (1) the defendant "knowingly" and "materially" misrepresented to the service provider (*i.e.*, YouTube) that the material identified in the plaintiff's takedown notices was removed or disabled by mistake or misidentification; (2) the service provider replaced or ceased disabling the allegedly infringing material in reliance on the defendant's knowing

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

misrepresentation, and (3) the plaintiff incurred damages as result of the service provider's reliance on the defendant's misrepresentations in replacing or ceasing to disable the removed materials. 17 U.S.C. § 512(f)(2); *see also Bus. Casual Holdings, LLC v. TV-Novosti*, 2023 WL 1809707, at *8 (citing *White v. UMG Recordings, Inc.*, 20-CV-9971, 2021 WL 6052106, at *2 (S.D.N.Y. Dec. 21, 2021) (stating necessary elements to survive motion to dismiss claim for violation of § 512(f)(2))); *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.,* 790 F. Supp. 2d 1024, 1029 (N.D. Cal. 2011).

In short, Section 512(f)(2) *only* applies when the defendant "knowingly materially misrepresents" in the counter notification *and* the service provider relies on that misrepresentation to replace or cease disabling access to the allegedly infringing material.  17 U.S.C. § 512(f)(2), *Bus. Casual,* No. 21-CV-2007 (JGK), 2022 WL 784049, at *5 (S.D.N.Y. Mar. 14, 2022); *Amaretto,* 790 F. Supp. 2d at 1029; *Moonbug Ent. Ltd. v. Babybus (Fujian) Network Tech. Co.*, No. 21-cv-06536-EMC, 2022 WL 580788, at *10 (N.D. Cal. Feb. 25, 2022).

## ARGUMENT

## I

## PLAINTIFF HAS NOT ALLEGED FACTS THAT COULD ESTABLISH A DMCA VIOLATION

### A.    *Plaintiff's DMCA Claim Fails Because YouTube Did Not Replace or Enable Access to the Subject Videos In Response to the Counter Notice*

As noted above, there is no liability under the DMCA for allegedly making knowing misrepresentations in a counter notice unless the service provider replaces or ceases disabling access to the infringing material by relying on the defendant's alleged misrepresentation.  17 U.S.C. § 512(f)(2)*; Bus. Casual*, 2023 WL 1809707, at *8; *Lenz,* 2010 WL 702466, at *10 ("[a] fair reading of the statute, the legislative history, and similar statutory language indicates that a § 512(f) plaintiff's damages must be proximately caused by the *misrepresentation to the*

1    *service provider and the service provider's reliance on the misrepresentation*")
2    (emphasis added)*; Amaretto,* 790 F. Supp. 2d at (dismissing DMCA claim under
3    Section 512(f)(1) because damages are limited to those caused by a service
4    provider in "removing or disabling access to the material or activity claimed to be
5    infringing, or in replacing the removed material or ceasing to disable access to it").

6          For example, in *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, the
7    defendant, Ozimals, Inc. ("Ozimals"), alleged that a competitor, Amaretto Ranch
8    Breedables, LLC ("Amaretto"), infringed on its copyrights in certain virtual
9    animals that exist in the virtual world, known as Second Life.  790 F. Supp. 2d at
10   1027.  Ozimals also sent a takedown notice under the DMCA to the company that
11   operates Second Life, Linden.  *Id.*  In response, Amaretto sought and obtained an
12   injunction preventing Linden from removing its virtual animals from Second Life
13   and sued Ozimals for violating Section 512(f) by making misrepresentations under
14   the DMCA.  *Id.* at 1027-1028.  The court granted Ozimals' motion to dismiss the
15   Section 512(f) claim because Linden never removed Amaretto's virtual horses in
16   response to the takedown notice and held that "the statute is unambiguous in
17   entitling an alleged infringer to damages caused 'as the result of the service
18   provider . . . removing or disabling access to the material[.]'"  *Id.* at 1029.

19         Furthermore, in *Bus. Casual Holdings, LLC v. TV-Novosti,* the plaintiff,
20   Business Casual Holdings, LLC ("Business Casual") sued TV-Novosti for
21   copyright infringement and alleged violations of the DMCA.  2022 WL 784049, at
22   *1.  The plaintiff, Business Casual, made YouTube documentaries and claimed
23   that TV-Novosti, a Russian non-profit that operates its own YouTube channel,
24   violated Business Casual's copyright by copying portions of documentaries it
25   produced.  *Id.* at *2.  Business Casual filed DMCA takedown notices with
26   YouTube and YouTube removed certain of the allegedly infringing videos.  *Id.*  In
27   response, TV-Novosti filed counter notifications contending that the videos were
28   not infringing and YouTube advised Business Casual that it would reinstate the

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

1  subject videos unless it obtained a court order preventing the reinstatement.  *Id.* at

2  *2-3.  Business Casual sued, alleging copyright infringement and violations of the

3  DMCA.  *Id.*at *1.

4      While the court held that Business Casual's copyright infringement claim

5  could proceed, it dismissed the claim that TV-Novosti violated the DMCA by

6  allegedly making misrepresentations in its counter notification.  *Id.* at *5.  The

7  court went on to hold that, "[b]y its terms, § 512(f) (2) only applies when there has

8  been a misrepresentation in the counter notification and the service provider relies

9  on that misrepresentation and ceases to disable access to the allegedly infringing

10  material."  *Id.*

11      Here, plaintiff's DMCA claim against Ms. Rapkin fails for the same reason

12  the DMCA claims in *Amaretto Ranch Breedables* and *Bus. Casual Holdings, LLC*

13  failed: the service provider (*i.e.*, YouTube) never replaced or enabled access to the

14  Subject Videos. Compl. at ¶¶ 39, 57, 64. Because YouTube never reinstated access

15  to the Subject Videos, there can be no violation of Section 512(f)(2).

16      For these reasons, plaintiff has not and cannot state a claim under Section

17  512(f) as a matter of law and, on this basis alone, the Court should dismiss

18  plaintiff's complaint against Ms. Rapkin with prejudice.

19  **B.    Plaintiff's DMCA Claim Fails for a Second Independent Reason: Ms.**

20  **Rapkin Did Not Make a "Knowing" Misrepresentation**

21      Section 512(f) provides an "expressly limited" cause of action for improper

22  counter notifications, imposing liability *only* if the counter notice contains a

23  "knowing" material misrepresentation.  17 U.S.C. § 512(f), *see Rossi v. Motion*

24  *Picture Ass'n of Am. Inc.,* 391 F.3d 1000, 1004–05 (9th Cir. 2004) ("[i]n § 512(f),

25  Congress included an expressly limited cause of action for improper infringement

26  notifications, imposing liability only if the copyright owner's notification is a

27  knowing misrepresentation") (internal citation omitted).  Therefore, "to state a

28  § 512(f) claim, Defendant must allege (1) a material misrepresentation in a

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

LEE RAPKIN'S NOTICE OF MOTION AND MOTION TO DISMISS

1    takedown notice that led to a takedown, and (2) that the takedown notice was

2    submitted in subjective bad faith." *Moonbug Ent. Ltd. v. Babybus (Fujian)*

3    *Network Tech. Co.*, No. 21-CV-06536-EMC, 2022 WL 580788, at *7 (N.D. Cal.

4    Feb. 25, 2022).

5        Applying this rule, the Ninth Circuit has held that "[a] copyright owner

6    *cannot be liable simply because an unknowing mistake is made*, even if the

7    copyright owner acted unreasonably in making the mistake." *Rossi*, 391 F.3d at

8    1005 (emphasis added). In other words, a mistake – even an unreasonable mistake

9    – is not enough. Instead, "there must be a demonstration of some actual

10    knowledge of misrepresentation on the part of the copyright owner." *Id*. And of

11    course, the same rules apply to the "knowingly material" misrepresentation

12    standard as applied to DMCA counter notices under Section 512(f)(2). *See*

13    *Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 44 (S.D.N.Y. 2017) ("[i]t is clear to

14    this Court that the same subjective standard should apply to the "good faith belief"

15    requirement for counter notifications"). (citing *Rossi*, 391 F.3d at 1005).

16        Plaintiff's allegations do not come close to meeting the "knowing"

17    misrepresentation standard. To start, plaintiff contends that Ms. Rapkin made a

18    "knowingly false" statement when she allegedly stated that plaintiff's original

19    videos were "significantly transformed by detailed editing and elaborate

20    commentary throughout[]" in the Subject Videos. Compl. ¶¶ 42, 48-49. But

21    plaintiff's own allegations show that Ms. Rapkin's purported statement was not

22    "knowingly false." Instead, it appears to have been accurate. Indeed, plaintiff

23    admits that the Subject Videos in fact had edits suggesting mocking commentary

24    and mashups. *Id*. at ¶¶ 44-47.

25        Plaintiff's next contention that Ms. Rapkin "knowingly" misrepresented the

26    applicability of the fair use doctrine to the Subject Videos fares no better. Plaintiff

27    alleges that Ms. Rapkin has "no known experience in United States copyright law."

28    *Id*. ¶ 20. Moreover, plaintiff repeatedly accuses Ms. Rapkin of submitting a

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

LEE RAPKIN'S NOTICE OF MOTION AND MOTION TO DISMISS

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

1   "blanket" counter notice under the DMCA (*id.* at ¶¶ 7, 41, 44, 48) and suggests that

2   she submitted the Counter Notice without reviewing the subject videos (*id.* at ¶ 5).

3   In sum, plaintiff contends that Ms. Rapkin is not a copyright expert and did not

4   review the Subject Videos in detail.   Assuming, *arguendo,* that these allegations

5   are true, there is no DMCA violation.   To establish that Ms. Rapkin violated the

6   DMCA, plaintiff would have to establish that Ms. Rapkin knew that the Subject

7   Videos were *not* protected by the fair use doctrine and maliciously chose to

8   represent that they were.   Plaintiff cannot establish that Ms. Rapkin acted with that

9   intent because it claims that she did not have the factual or legal knowledge to

10  know whether the Subject Videos were or were not protected by fair use.

11          The bottom line is that to plausibly allege a DMCA violation under Section

12  512(f), plaintiff must have alleged facts that, if true, would establish that Ms.

13  Rapkin had actual knowledge of the alleged misrepresentations and made them

14  anyway.   Plaintiff has not done so.   Instead, plaintiff has pled facts showing, at

15  most, an innocent mistake.   This is not enough as a matter of law.   *Rossi*, 391 F.3d

16  at 1005.

17          Thus, aside from the fact that plaintiff's claim is non-actionable because

18  YouTube never restored access to the Subject Videos, the Court should dismiss

19  plaintiff's DMCA claim against Ms. Rapkin for the independent reason that there

20  are no alleged facts that, if true, could establish a "knowing" misrepresentation in

21  the Counter Notice, which is a prerequisite to a claim for violating Section 512(f).

22  / /

23  / /

24  / /

25  / /

26  / /

27  / /

28  / /

**CONCLUSION**

For the foregoing reasons, defendant Ms. Rapkin respectfully requests that the Court grant her motion and dismiss plaintiff's claim against her without leave to amend.

Dated: December 9, 2025          CLYDE & CO US LLP

By:_____
KEVIN R. SUTHERLAND
BRANDON K. FRANKLIN
JESSICA R. STONE
Attorneys for Defendant
LEE RAPKIN

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

**PROOF OF SERVICE**

**STATE OF CALIFORNIA**
**COUNTY OF SAN FRANCISCO**

I am employed in the County of San Francisco, State of California, I am over the age of eighteen years, and not a party to the within action.  My business address is 150 California Street, Suite 1500, San Francisco, California  94111.

On December 9, 2025, I served the document(s) described as:

**DEFENDANT LEE RAPKIN'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; AND [PROPOSED] ORDER GRANTING MOTION**

on the parties in this action addressed as follows:

**SEE ATTACHED SERVICE LIST**

in the following manner:

☐ **(BY E-MAIL):** by transmitting on this date via electronic mail the document(s) listed above to all parties with an e-mail address of record as set forth below and who have consented to electronic service in this action. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ **(BY MAIL):** as follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

☐ **(BY OVERNIGHT DELIVERY):** I caused such envelope(s) to be delivered to an overnight delivery carrier with delivery fees provided for, addressed to the person(s) on whom it is to be served.

☒ **(BY CM/ECF/EFSP):** by electronic filing system notification with the clerk of the Court, or other electronic filing service provider pursuant to CCP § 1010.6(a), which will send a Notice of Electronic Filing to all parties with an e-mail address of record, who have consented to or filed a Notice of Consent to Electronic Service in this action.

I declare under penalty of perjury according to the laws of the State of California that the foregoing is true and correct.

Executed December 9, 2025, at San Francisco, California.

_____
Patricia Inabnet

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

# SERVICE LIST

Randall S. Newman, Esq.
99 Wall Street, Suite 3727
New York, New York 10005
Telephone: (212) 797-3735
Email: rsn@randallnewman.net

Attorneys for Plaintiff
EXECUTIVE LENS LLC