December 19, 2025

**<u>VIA ELECTRONIC FILING</u>**

The Honorable Judge Nathanael Cousins
Federal Court of the Northern District of California

**Re:**   Executive Lens v. Rapkin, et al
United States District Court Case No. 5:25-cv-06048-NC
Joint Discovery Letter

Dear Magistrate Cousins:

Plaintiff, Executive Lens LLC ("Plaintiff") and Defendant, Lee Rapkin ("Defendant") (collectively the "Parties") submit this Joint Discovery Letter.

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

I.   **Joint Statement of Disputed Issue**

    A.   **Plaintiff's Statement**

On July 4, 2025, Plaintiff submitted twenty-seven DMCA takedown notifications to Google, LLC d/b/a YouTube ("Google" or "YouTube") asserting infringement of Plaintiff's copyrighted works appearing on the YouTube channel 1a Audits Exposé. In response, Defendant Lee Rapkin submitted a single, blanket DMCA counter-notification purporting to cover seventeen (17) videos at issue. The counter-notification did not identify the subscriber who owns or controls the 1a Audits Exposé channel and instead listed Defendant's own contact information.

On December 10, 2025, the Parties exchanged Initial Disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1). In Defendants' Initial Disclosures, Defendant identified "JOHN DOE dba 'THE Exposer' www.youtube.com/@1aAuditsExposé" as a person likely to have discoverable information, including information regarding the allegedly infringing videos and the DMCA counter-notification at issue. Defendant did not disclose the name, physical address, telephone number, or any other identifying or contact information for John Doe, stating that any further disclosure was subject to attorney-client privilege and related doctrines.

Plaintiff separately sought identifying information for the subscriber associated with the 1a Audits Exposé channel from Google pursuant to 17 U.S.C. 512(h). Google has declined to provide the subscriber's name and physical address.

Plaintiff contends that the failure to identify the subscriber in the DMCA counter-notification and the failure to disclose the subscriber's identity and contact information in Defendant's Initial Disclosures prevent Plaintiff from amending the complaint to name the proper defendant and from effectuating service of process, thereby frustrating the statutory purpose of the DMCA and impairing Plaintiff's ability to prosecute this action. Defendant contends that no further identifying information is required to be disclosed.

    B.   **Defendant's Statement**

This case began when plaintiff's alleged assignor submitted a takedown notice under the DMCA. Defendant Lee Rapkin ("Defendant" or "Ms. Rapkin"), a lawyer based in Quebec, responded on behalf of her former client. Now plaintiff has sued both Ms. Rapkin and her former client, defendant John Doe d/b/a the Exposer ("John Doe"), effectively holding Ms. Rapkin hostage while demanding that she turn over her former client on pain of further litigation. Plaintiff's tactics are procedurally defective and an affront to attorney-client privilege, under both US and Canadian law, because they seek to force an attorney to divulge the confidential motive for which a client consulted a lawyer. The Court should reject plaintiff's demand.

II.   **Plaintiff's Position and Proposed Resolution**

Defendant's refusal to disclose the identity of the subscriber who owns and controls the YouTube channel 1a Audits Exposé is not supported by attorney-client privilege, the DMCA, or governing discovery rules.

    A.   **Rule 26 Requires Disclosure of Identifying Information for Individuals a Party May Use to Support its Defenses**

As a threshold matter, Federal Rule of Civil Procedure 26(a)(1)(A)(i) requires a party to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information, along with the subjects of that information, that the disclosing party may use to support its claims or defenses." This requirement is mandatory and self-executing.

In Defendant's Initial Disclosures, Defendant affirmatively identified "JOHN DOE dba 'THE Exposer' www.youtube.com/@1aAuditsExposé" as an individual likely to have

discoverable information and as the person who posted the allegedly infringing videos at issue. Having chosen to identify this individual as a witness and as the real party in interest whose conduct is central to Defendant's defenses, Defendant was required to disclose that individual's name and contact information. She did not do so.

Courts in this District routinely compel disclosure where a party's failure to provide required identifying information impedes the opposing party's ability to prosecute the case. In *Gillette v. Stater Bros. Markets*, No. 19-cv-1292-JVS (KKx), 2020 WL 1904663, at *2-3 (C.D. Cal. Apr. 16, 2020), the court granted a motion to compel and emphasized that Rule 26 disclosures exist to prevent precisely this kind of delay and gamesmanship, where a party withholds required information and forces unnecessary court intervention.

Defendant cannot simultaneously rely on John Doe as a witness to support her defenses while withholding his identity and contact information. Rule 26 does not permit a party to designate a central actor as a "John Doe" witness while reserving disclosure indefinitely based on a blanket assertion of privilege. The failure to provide this basic identifying information prevents Plaintiff from amending the complaint and effectuating service of process and, standing alone, warrants compulsion and, where appropriate, relief under Rule 37 sanctions. *See id*. Defendant's suggestion that Plaintiff pursue alternative service underscores the problem rather than solving it: alternative service presupposes an identifiable defendant and cannot substitute for disclosure of the very identity Defendant continues to withhold. Without a name and physical address, Plaintiff cannot determine the appropriate jurisdiction, effectuate service, or assess whether alternative service would even be legally available.

### B. The DMCA Independently Requires Disclosure of the Subscriber's Identity

The disclosure obligation is independently reinforced by the DMCA. 17 U.S.C. § 512(g)(3)(D) requires that a counter-notification include "the subscriber's name, address, and telephone number." The purpose of that requirement is to permit the copyright owner to file suit and effectuate service under 17 U.S.C. § 512(g)(2)(C).

A counter-notice that withholds the subscriber's identity defeats that statutory purpose and is facially defective. Defendant's attempt to substitute her own contact information in place of the subscriber's does not satisfy the statute and cannot be used to shield the subscriber from identification in discovery.

### C. Attorney-Client Privilege Does Not Excuse Noncompliance with Rule 26 or the DMCA

As a general rule, the identity of a client is not protected by the attorney-client privilege. *In re Grand Jury Subpoena (Hirsch)*, 803 F.2d 493, 496 (9th Cir. 1986). The Ninth Circuit has long recognized that any departure from this general rule is an exceptional circumstance that depends on whether disclosure of identity would itself reveal the substance of a confidential communication. *See Baird v. Koerner*, 279 F.2d 623, 631-32 (9th Cir. 1960). No such exceptional circumstance exists here.

Defendant relies on *Matter of Grand Jury Proceeding (Cherney)*, 898 F.2d 565 (7th Cir. 1990) and *Tillotson v. Boughner*, 350 F.2d 663 (7th Cir. 1965) to argue that attorney-client privilege permits withholding a client's identity. Those cases are inapposite.

Both *Cherney* and *Tillotson* involved criminal investigations where disclosure of an unknown client's identity would itself have revealed the substance of a confidential legal communication, specifically, the client's motive for seeking legal advice regarding criminal exposure. The courts emphasized that privilege applied only where disclosure would be tantamount to revealing a confidential communication. *Cherney*, 898 F.2d at 568-69; *Tillotson*, 350 F.2d at 666.

In fact, *Tillotson* recognized that "the identity of a client, or the fact that a given individual has become a client are matters which an attorney normally may not refuse to disclose, even though the fact of having retained counsel may be used as evidence against the client." *Id.* at 666.

No such circumstance exists here. Disclosure of the subscriber's identity would not reveal legal advice, litigation strategy, or the substance of any confidential communication. It would merely identify the real party in interest who invoked the protections of § 512(g) to restore allegedly infringing content. Courts have consistently held that a client's identity is not privileged absent extraordinary circumstances, and that privilege cannot be invoked simply because disclosure may have adverse consequences. *See Cherney*, 898 F.2d at 567 (incrimination is not a sufficient basis for invoking attorney-client privilege).

### D.     Relief Requested

Plaintiff respectfully requests that the Court (1) compel Defendant to produce the full legal name, last-known physical address, and telephone number of the subscriber who owns and controls the *1a Audits Exposé* YouTube channel, so that Plaintiff may amend the complaint and effectuate service on the proper defendant; and (2) extend Plaintiff's deadline to file a First Amended Complaint from December 30, 2025 to twenty-one (21) days after Defendant produces the foregoing identifying information. Defendant's alternative request for delayed disclosure under a protective order and extended pseudonymity suffers from the same defect as her primary position. Plaintiff seeks to identify and serve the proper defendant. A protective order or temporary pseudonym does not cure the prejudice caused by Defendant's refusal to identify the real party in interest. Unlike cases permitting anonymity to protect parties from retaliation or physical harm, Defendant identifies no concrete risk justifying concealment here, and anonymity cannot be used to frustrate service of process or delay amendment of the pleadings.

## III.    Defendant's Position and Proposed Resolution

Plaintiff's demand that Ms. Rapkin hand over the identity of her former client is a ploy to breach attorney-client privilege, which the Court should reject.

### A.     Disclosure Rules Do Not Circumvent Attorney-Client Privilege

Plaintiff wants to leverage the initial disclosure rules to pierce attorney-client privilege and obtain John Doe's identity. This is misguided for several reasons. First, the purpose for initial disclosures is to avoid surprise and "get out basic information about the case[,]" but "they are not designed to compel a party to produce the entire spectrum of discoverable material." *Smith v. Avalos*, No. 20cv1534-JAH(LR), 2024 WL 536338, at *2 (S.D. Cal. Feb. 9, 2024) (denying plaintiff's demand for disclosure of doe defendants on grounds that the request was premature because plaintiff, rather than defendant, wanted to use these witnesses). As in *Smith*, plaintiff is prematurely trying to use initial disclosures as an offensive discovery device. Ms. Rapkin initially identified John Doe as a person likely to have discoverable information, but has since amended her disclosures to clarify that she does not presently intend to rely on evidence from John Doe.

Second, contrary to plaintiff's assertion, Ms. Rapkin is not preventing plaintiff from serving John Doe. Plaintiff can pursue alternative service, which plaintiff's counsel has used in other cases. *See Cordova v. Huneault,* No. 25-cv-04685-VKD, 2025 WL 2637504, at *4 (N.D. Cal. Sept. 12, 2025) (authorizing alternative service where Randall S. Newman, Esq. represented the plaintiff); *Cong v. Zhao*, No. 2:21-CV-01703-TL, 2023 WL 7000888, at *1 (W.D. Wash. Oct. 24, 2023) (alternative service where DMCA counter notification identified subscriber's former lawyer, who did not accept service).

Moreover, the disclosure rules under Rule 26(a) do not supersede attorney-client privilege. The scope of discovery, including initial disclosures, is limited to "any *nonprivileged* matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ.

P. 26(b)(1) (emphasis added). In *Braudaway v. Ford Motor Co.*, the court held that local disclosure rules, "do not negate the requirements under Rule 26(b)(1)[.]" No. 4:16-CV-383, 2016 WL 9223789, at *1 (E.D. Tex. Oct. 4, 2016) (citing Fed. R. Civ. P. 26(b)(1)).

Lastly, plaintiff's citations to *Gillette v. Stater Bros. Markets*, No. EDCV 19-1292-JVS (KKx), 2020 WL 1904663, at *4 (C.D. Cal. Apr. 16, 2020) and 17 U.S.C. § 512(g)(3)(D), miss the mark. In *Gillette,* the plaintiff failed to properly serve initial disclosures or meet and confer. *Id.* at *2-3. Here, Ms. Rapkin timely served disclosures, and her counsel has participated in good faith meet-and-confer efforts. On the statutory requirements, even assuming, *arguendo*, that the counter-notice did not comply with § 512(g)(3)(D), plaintiff has not cited any authority that could be used to compel an amended counter-notice.

**B.     The Identity of Ms. Rapkin's Former Client Is Privileged**

First, plaintiff's initial suggestion (since removed from this joint letter) that Ms. Rapkin "cannot establish the existence of a privileged relationship" is wrong. Indeed, plaintiff alleged that Ms. Rapkin is "a lawyer admitted to the Quebec bar in 2024 and practicing at BLP Avocats in Montréal" who "submitted a blanket counter-notice on behalf" of John Doe. Compl. ¶ 7 (Dkt. 1). Furthermore, plaintiff contends that John Doe has "openly bragged about hiding behind his lawyer." *Id.* ¶ 12; Mot. to Dismiss at 6 (Dkt. 11) (referring to John Doe d/b/a the Exposer as her client).

Regarding applicable law, courts generally apply a "touch base" analysis and recognize that the country with the "predominant interest" is often "the place where the allegedly privileged relationship was entered into" or "the place in which that relationship was centered" when the communications were sent. *Cadence Pharms., Inc. v. Fresenius Kabi USA, LLC*, 996 F. Supp. 2d 1015, 1019 (S.D. Cal. 2014). On the other hand, courts have held that "communications relating to legal proceedings in the United States, or that reflect the provision of advice regarding American law, 'touch base' with the United States and, therefore, are governed by American law, even though the communication may involve foreign attorneys or a foreign proceeding." *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 65 (S.D.N.Y. 2010). Regardless of whether US or Canadian law applies, the identity of Ms. Rapkin's client is privileged.

Under US law, a client's identity may be privileged. For example, in *In re Grand Jury Subpoena for Att'y Representing Crim. Defendant Reyes-Requena*, the Fifth Circuit refused to enforce a subpoena seeking disclosure of the identity of an anonymous third-party benefactor who funded a defendant's attorney's fees because revealing the third party's identity would necessarily expose the "confidential motive for [the] retention of [defense counsel]." 926 F.2d 1423, 1425, 1432-33 (5th Cir. 1991); *In re Grand Jury Proceedings, Cherney*, 898 F.2d 565, 568 (7th Cir. 1990) (affirming decision to quash subpoena and noting that the client's identity was privileged because disclosure would reveal a confidential communication – the reason or motive the client sought legal advice). In *Tillotson v. Boughner*, the court refused to hold an attorney in civil contempt after the attorney declined to identify the name of a client on whose behalf he delivered a check to the IRS. 350 F.2d at 663-666; *see also Baird v. Koerner*, 279 F.2d 623 (9th Cir.1960) (holding that an attorney was not required to disclose the identity of a client when that client consulted him regarding improperly paid taxes and the attorney forwarded an anonymous check to the IRS on the client's behalf).

Here, the situation is almost precisely the same. If Ms. Rapkin is forced to disclose her former client, it would reveal the client's motive for consulting her in the same way revealing client's identities in *Tillotson* and *Baird* would have revealed their motive for consulting lawyers, *i.e.*, to seek tax advice.

Plaintiff's attempts to distinguish *Tillotson v. Boughner*, 350 F.2d 663, 666 (7th Cir. 1965) and *Matter of Grand Jury Proceeding (Cherney)*, 898 F.2d 565 (7th Cir. 1990) fall flat. Plaintiff suggests that because these cases "involved criminal investigations" their reasoning does not apply

here. Not so. "[T]he attorney-client privilege . . . applies equally to civil and criminal proceedings." *United States v. Graham*, No. CRIM. 03-CR-089-RB, 2003 WL 23198792, at *3 (D. Colo. Dec. 2, 2003).

Moreover, under Canadian law, privilege applies to a client's identity when the client has expressly requested anonymity for legitimate reason (*e.g.*, safety, retaliation, harassment). *Pearl v. Bissegger*, 1985 CanLII 2948 (QC CA). Thus, as under US law, when a client like John Doe consults an attorney for a confidential purpose, their identity is protected.

**C.     Relief Requested**

For these reasons, Defendant respectfully requests that the Court deny plaintiff's demand for an order forcing her to reveal the identity of her former client. In the event the Court orders disclosure, however, Defendant requests that the Court (1) provide the parties with 30 days to negotiate and secure entry of a stipulated Protective Order before any disclosure is due so that John Doe's information can be designated Confidential and (2) allow John Doe to proceed under a pseudonym for at least 90 days after John Doe appears in this action so that John Doe can attempt to maintain their confidentiality through the litigation under applicable law. *Vargas v. City & Cnty. of Honolulu*, No. CV 19-00116 LEK-WRP, 2020 WL 13904129, at *3 (D. Haw. Apr. 16, 2020) ("[a]lthough the Ninth Circuit has not established a test to determine when a non-party witness may proceed anonymously in litigation, the Ninth Circuit has held that a party may proceed anonymously 'when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity'") (quoting *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000)).

**IV**.    **Compliance with Meet and Confer Requirement**

The parties met and conferred on this dispute on December 15, 2025, but were unable to resolve this dispute.

Dated: December 19, 2025

Respectfully submitted,                                                  Respectfully submitted,

By: s/ Randall S. Newman                                             By: */s/Brandon K. Franklin*
Randall S. Newman, Esq. (190547)                                Kevin R. Sutherland (State Bar No. 163746)
99 Wall Street, Suite 3727                                              Brandon K. Franklin (State Bar No. 303373)
New York, NY 10005                                                    Jessica R. Stone (State Bar No. 313426)
(212) 797-3735                                                              Clyde & Co US LLP
rsn@randallnewman.net                                                150 California Street, Suite 1500
                                                                                     San Francisco, California 94111
*Attorney for Plaintiff,*                                                    Telephone: (415) 365-9800
*Executive Lens LLC*                                                    Facsimile: (415) 365-9801
                                                                                     kevin.sutherland@clydeco.us
                                                                                     brandon.franklin@clydeco.us
                                                                                     jessica.stone@clydeco.us

                                                                                     *Attorneys for Defendant*
                                                                                     *Lee Rapkin*