Kevin R. Sutherland (State Bar No. 163746)
Brandon K. Franklin (State Bar No. 303373)
Jessica R. Stone (State Bar No. 313426)
CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800
Facsimile: (415) 365-9801
Email: kevin.sutherland@clydeco.us
       brandon.franklin@clydeco.us
       jessica.stone@clydeco.us

Attorneys for Defendant
LEE RAPKIN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EXECUTIVE LENS LLC, | Case No. 5:25-cv-06048-NC |
| Plaintiff, | DEFENDANT LEE RAPKIN'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| v. | |
| LEE RAPKIN and JOHN DOE dba "the Exposer" www.youtube.com@1aAudits Exposé, | |
| Defendants. | [(Proposed) Order Lodged Concurrently Herewith]<br><br>Date: February 18, 2026<br>Time: 11 a.m. PT<br>Place: Courtroom 5 – 4th Floor<br>Judge: Nathanael M. Cousins<br><br>Complaint Filed: July 17, 2025 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 18, 2026, at 11:00 a.m., in Courtroom 5 of the above captioned Court, located at 280 South First Street, San Jose, California 95113, the Honorable Nathanael M. Cousins presiding, defendant Lee Rapkin ("Defendant Rapkin" or "Ms. Rapkin") will and hereby does move the Court for an order dismissing plaintiff's First Amended Complaint (Dkt. 20) against Defendant Rapkin, in its entirety and without leave to amend, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This motion is made on grounds that plaintiff's sole claim against Ms. Rapkin – plaintiff's First Cause of Action for "Misrepresentation in Counter-Notifications under the Digital Millennium Copyright Act ("DMCA") (17 U.S.C. § 512(f))" – fails to state a claim upon which relief may be granted because (1) YouTube never replaced the videos that are the subject of plaintiff's First Amended Complaint; and (2) there are no alleged facts that, if true, would establish that Ms. Rapkin "knowingly materially misrepresented" any facts for purpose of the subject counter-notice submitted to YouTube under the DMCA.

This motion will be based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof filed concurrently herewith, the pleadings and records on file herein, and any further evidence and argument that the Court may receive at or before the hearing of this motion.

## ISSUES TO BE DECIDED

1.      Whether plaintiff can maintain a claim for violations of the DMCA (17 U.S.C. § 512(f)), despite the undisputed fact that YouTube never replaced the videos that are the subject of plaintiff's First Amended Complaint.

2.      Whether plaintiff alleged facts that, if true, could establish that Ms. Rapkin "knowingly materially misrepresented" that YouTube "removed or disabled by mistake or misidentification" the videos that are the subject of plaintiff's Complaint and establish a violation under the DMCA.


Dated: January 13, 2026          CLYDE & CO US LLP


By: _____
KEVIN R. SUTHERLAND
BRANDON K. FRANKLIN
JESSICA R. STONE
Attorneys for Defendant
LEE RAPKIN

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

# TABLE OF CONTENTS

*Page*

INTRODUCTION ................................................................................................ 6

STATEMENT OF FACTS ................................................................................ 11

    *A.*     *The Parties* ...................................................................................... 11

    *B.*     *The Subject Videos and DMCA Takedown Notice* ........................... 12

    *C.*     *The Counter-Notice Did Not Contain Any Knowing Misrepresentations* ............................................................................ 14

    *D.*     *YouTube Has Not Restored Access to the Subject Videos* ................ 15

LEGAL STANDARDS ..................................................................................... 16

    *A.*     *Standard for Granting a Motion to Dismiss Under Rule 12(b)(6)* ......................................................................................... 16

    *B.*     *Standard for Establishing a Violation of the DMCA* ........................ 17

ARGUMENT ................................................................................................... 19

I     PLAINTIFF HAS NOT ALLEGED FACTS THAT COULD ESTABLISH  A DMCA VIOLATION ........................................................ 19

    *A.*     *Plaintiff's DMCA Claim Fails Because YouTube Did Not Replace or Enable Access to the Subject Videos In Response to the Counter-Notice* ........................................................................ 19

    *B.*     *Plaintiff's DMCA Claim Fails for a Second Independent Reason: Ms. Rapkin Did Not Make a "Knowing" Misrepresentation* ........................................................................... 21

CONCLUSION ................................................................................................. 26

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

# TABLE OF AUTHORITIES

*Page(s)*

### *Federal Cases*

*Alper Auto., Inc. v. Day to Day Imports, Inc.*,
  No. 18-81753-CIV, 2021 WL 5893161, at *16 (S.D. Fla. Nov. 3,
  2021), *aff'd*, No. 21-14236, 2022 WL 3418643 (11th Cir. Aug. 17,
  2022) ............................................................................................................ 8

*Am. Family Ass'n v. City & County of San Francisco*,
  277 F.3d 1114 (9th Cir. 2002) ........................................................... 16

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*,
  790 F. Supp. 2d 1024 (N.D. Cal. 2011) .............................. 19, 20, 21

*Arista Records, Inc. v. Mp3Board, Inc.*,
  No. 00 CIV. 4660 (SHS), 2002 WL 1997918 (S.D.N.Y. Aug. 29,
  2002) ........................................................................................... 9, 22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................ 16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................ 16

*Bus. Casual Holdings, LLC v. TV-Novosti*,
  No. 21-CV-2007 (JGK), 2022 WL 784049, at *5 (S.D.N.Y. Mar.
  14, 2022) ..................................................................... 19, 20, 21

*Bus. Casual Holdings, LLC v. TV-Novosti*,
  No. 21-CV-2007 (JGK) (RWL), 2023 WL 1809707 (S.D.N.Y.
  Feb. 8, 2023) ............................................................................. 17, 19

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir.2003) ...................................................... 17, 26

*Equals Three, LLC v. Jukin Media, Inc.*,
  139 F. Supp. 3d 1094 (C.D. Cal. 2015) ........................... 10, 14, 24, 25

*Glob. Brother SRL v. Shixiaolong*,
  No. 8:24-CV-02903-WFJ-CPT, 2025 WL 3033633 (M.D. Fla. Oct.
  30, 2025) ..................................................................................... 21

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

**Page(s)**

*Hooks v. Kitsap Tenant Support Servs., Inc.*,
   816 F.3d 550 (9th Cir. 2016) ........................................................................ 7

*Hosseinzadeh v. Klein*,
   276 F. Supp. 3d 34 (S.D.N.Y. 2017) ........................................... *passim*

*Lenz v. Universal Music Corp.*,
   815 F.3d 1145 (9th Cir. 2016) ...................................................... *passim*

*Lopez v. Smith*,
   203 F.3d 1122 (9th Cir. 2000) ..................................................................... 17

*Los Angeles News Serv. v. KCAL-TV Channel 9*,
   108 F.3d 1119 (9th Cir. 1997) ........................................................... 10, 25

*Moonbug Ent. Ltd. v. Babybus (Fujian) Network Tech. Co.*,
   No. 21-cv-06536-EMC, 2022 WL 580788 (N.D. Cal. Feb. 25,
   2022) ........................................................................................................ 19

*Navarro v. Block*,
   250 F.3d 729 (9th Cir. 2001) ...................................................................... 16

*Rossi v. Motion Picture Ass'n of Am. Inc.*,
   391 F.3d 1000 (9th Cir. 2004) ...................................................... *passim*

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) .................................................................... 16

**Federal Statutes**

17 U.S. Code
   § 107, *et seq.* ......................................................... 10, 13, 22, 25
   § 512, *et seq.* ("Digital Millenium Copyright Act") .................... *passim*

**Other Authorities**

Federal Rule of Civil Procedure, Rule 12(b)(6) ....................................... 16

United States Constitution, First Amendment ........................................ 11

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The claim against defendant Lee Rapkin ("Defendant Rapkin" or "Ms. Rapkin") is straightforward.  Plaintiff contends that Ms. Rapkin, a Canadian attorney, violated the Digital Millennium Copyright Act ("DMCA") by representing to YouTube that certain videos that her client[1] allegedly posted to YouTube ("Subject Videos") fell within the fair use doctrine.  Although plaintiff's First Amended Complaint includes some new allegations, the relevant alleged facts have not changed and Plaintiff's claim against Ms. Rapkin still fails for two reasons.

**First,** liability for a misrepresentation in a counter-notice under Section 512(f) of the DMCA exists *only* where damages occurred because the online service provider (here, YouTube) relied on the misrepresentation "in *replacing* the removed material or *ceasing* to disable access to it." 17 U.S.C. 512(f)(2) (emphasis added).  Thus, to establish a violation under Section 512(f), the plaintiff must prove that the online service provider actually replaced or enabled access to the allegedly infringing content.  Plaintiff has not alleged that YouTube replaced or reenabled access to the Subject Videos.  Indeed, plaintiff concedes that YouTube *has not* reinstated access to the Subject Videos.  Dkt. 20, First Am. Compl. ("First Am. Compl.") ¶ 52.  For this reason alone, the Court should dismiss plaintiff's First Amended Complaint against Ms. Rapkin as a matter of law without leave to amend.

Plaintiff's fallback argument that YouTube "may" have reinstated the Subject Videos (*id.* ¶ 49), is a nonstarter because it is contrary to the statutory language, which requires actual replacement and says nothing about *the threat* of "replacing the removed material or ceasing to disable access to it."  17 U.S.C. §

---

[1]  Ms. Rapkin's client is also named as a defendant in this action.  In addition to Ms. Rapkin, plaintiff has sued JOHN DOE dba "the Exposer" www.youtube. com@1aAudits Exposé (the "Exposer").

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

512(f)(2); *Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 562 (9th Cir. 2016) ("It is our judicial function to apply statutes on the basis of what Congress has written, not what Congress might have written.") (quoting *United States v. Great N. Ry. Co.*, 343 U.S. 562, 575 (1952)) (citation modified).

**Second,** there is liability under Section 512(f) for a counter-notice only where the defendant "*knowingly* materially misrepresents" that it held a "good faith" belief that material was "removed or disabled by mistake or misidentification." 17 U.S.C. § 512(f) (emphasis added). This is a heavy burden as even an unreasonable mistake is not enough. *Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1005 (9th Cir. 2004) (holding that even an "unreasonabl[e]" mistake is not enough to establish liability). The Ninth Circuit has held to establish a "knowing" misrepresentation under the DMCA, the plaintiff must show that the defendant acted with actual knowledge that it was making a material misrepresentation. *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1154–56 (9th Cir. 2016); *see also Rossi*, 391 F.3d at 1005. Alternatively, under a "willful blindness" theory, the plaintiff must show that the defendant (1) subjectively believed there was a high probability that a fact existed, and (2) took deliberate actions to avoid learning the fact. *See Lenz*, 815 F.3d at 1155. Plaintiff's allegations, even if accepted as true, fail to clear this high bar because they at most establish that Ms. Rapkin made a mistake.

Plaintiff theorizes that Ms. Rapkin "falsely represented": (1) "that each of the 17-Videos [Subject Videos] 'was significantly transformed by detailed editing and elaborate commentary throughout'"; and (2) "that each video was protected by fair use and removed 'due to a mistake or misidentification.'" First Am. Compl. ¶¶ 55, 85. Plaintiff's theory does not establish liability under the DMCA. There are no factual allegations plausibly suggesting that Ms. Rapkin either knew (1) that these representations were false and made them anyway or (2) that there was a high probability that these representations were false and took deliberate steps to

avoid learning that fact.

To start, plaintiff alleges that Ms. Rapkin "did not view or review each of the 17-Videos before submitting the Counter-Notice" and that she acted with "reckless disregard" for the truth. *Id.*, ¶ 56; *see also id.* ¶ 45 (alleging that Ms. Rapkin failed "to conduct a video-by-video review"). Without reviewing all of the Subject Videos, Ms. Rapkin could not have *known* that the representations in the subject DMCA counter-notice ("Counter-Notice") were allegedly false. And even if plaintiff had alleged facts establishing "reckless disregard," which it has not, that is not enough. *Alper Auto., Inc. v. Day to Day Imports, Inc.*, No. 18-81753-CIV, 2021 WL 5893161, at *16 (S.D. Fla. Nov. 3, 2021), *aff'd,* No. 21-14236, 2022 WL 3418643 (11th Cir. Aug. 17, 2022) ("The Court finds that it was reckless of Defendant to submit the November 1, 2018, DMCA Takedown Notice, but that this takedown notice does not meet the high standard of willful blindness.").

Furthermore, there are no facts plausibly establishing "willful blindness" (First Am. Compl. ¶ 75) because there are no facts plausibly establishing that Ms. Rapkin knew that there was a high probability that the subject representations were false and took deliberate steps to avoid learning the fact by allegedly failing to review the Subject Videos. Plaintiff appears to contend Ms. Rapkin's failure to reveal the true identity of her former client and alleged infringer, *i.e.*, the Exposer, establishes willful blindness. *Id.* ¶ 75. Not so. There are many reasons why a person might want to remain anonymous with respect to commentary on YouTube that have nothing to do with whether the material is infringing or not. For instance, a person may fear personal or professional consequences for the popularity or quality of the commentary even if it is not infringing. Plaintiff has not alleged any purported facts tying Ms. Rapkin's omission of her former client's identity to the truth of the representations about infringement in the Counter-Notice. Indeed, this issue concerns Ms. Rapkin's obligations as an attorney and says nothing about Ms. Rapkin's knowledge of the Subject Videos. *See* Dkt. 18, Disc. Ltr. Brief.

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

Plaintiff next contends that Ms. Rapkin's non-disclosure or the Exposer's identity is itself actionable. First Am. Compl. ¶ 67. Wrong again. Such a claim is not legally cognizable under Section 512(f) because Section 512 only penalizes copyright holders for knowingly materially misrepresenting that "material or activity was removed or disabled by mistake or misidentification" or "that material or activity is infringing." 17 U.S.C. § 512(f); *see Arista Records, Inc. v. Mp3Board, Inc.*, No. 00 CIV. 4660 (SHS), 2002 WL 1997918, at *15 (S.D.N.Y. Aug. 29, 2002) (quoting 17 U.S.C. § 512(f)) (emphasis added) (holding that Section 512 "does not provide a cause of action for knowingly materially misrepresenting that a service provider may be liable for hosting certain material").

Lastly, based on plaintiff's description of the Subject Videos, there is no plausible basis to conclude that Ms. Rapkin violated the DMCA by making a "knowing" misrepresentation. Plaintiff admits that the Subject Videos consist of mashups between plaintiff's purported copyrighted material with other material and include "government footage." First Am. Compl. ¶¶ 58-61. Plaintiff goes on to contend that some of the Subject Videos have no "commentary[,]" but goes out of its way to narrowly define "commentary" in a way that excludes "unrelated audiovisual clips, images, sound effects, or pop-culture references." *Id.* ¶¶ 10-11, 58-61. Plaintiff is too clever by half. Because of the narrow way plaintiff defines "commentary," even accepting plaintiff's allegation that the Subject Videos do not contain "commentary" as true, would mean that the Subject Videos may still consist of plaintiff's purported copyrighted material interspersed with "unrelated audiovisual clips, images, sound effects, or pop-culture references." *Id.* ¶ 11. Based on plaintiff's own description of the Subject Videos, they consist of mashups of plaintiff's material, other material, and "government footage." Thus, there is no basis to conclude that Ms. Rapkin "knew" or "knew that there was a high probability" that the Subject Videos did not contain "commentary." *See* First Am. Compl. ¶ 55.

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

Similarly, there is no basis to conclude that Ms. Rapkin "knew" or "knew that there was a high probability" that the Subject Videos were not protected under the fair use doctrine because it is not at all clear – even accepting plaintiff's allegations as true – that the Subject Videos do not fall within the fair use doctrine, much less that Ms. Rapkin knew or had any reason to know that there was a high probability that the Subject Videos were not subject to fair use.  To determine whether the use of a work is a fair use, courts must consider several factors: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work."  17 U.S.C. § 107.  Applying these rules is not an easy task.  (*Equals Three, LLC v. Jukin Media, Inc.*, 139 F. Supp. 3d 1094, 1104 (C.D. Cal. 2015) (determining whether a work is a parody "is a difficult and nuanced task").)  In light of this background, there are no factual allegations plausibly establishing that Ms. Rapkin "knew" or " knew that there was a high probability" that the Subject Videos were not protected under the fair use doctrine.[2]  In fact, the opposite is true.  The allegations demonstrate that there are good grounds to believe that the Subject Videos are non-infringing under the fair use doctrine.

For instance, the reference to "government footage" implicates news gathering, which would support a fair use defense.  *See Los Angeles News Serv. v. KCAL-TV Channel 9*, 108 F.3d 1119, 1121 (9th Cir. 1997) (holding that the fact that alleged infringer "was reporting news weighs heavily in" favor of fair use); 17 U.S.C. § 107 (describing "news reporting" as an example of fair use).

---

[2]  Indeed, plaintiff admits that YouTube apparently independently concluded that other of plaintiff's videos were protected under the fair use doctrine.  First Am. Compl. ¶ 42.  This undermines the plausibility of plaintiff's claim that Ms. Rapkin knew that the Subject Videos *were not* subject to protection under fair use since they were part of the same takedown notice directed to the same person.

Additionally, courts have held that "reaction videos," which consist of segments of a copyrighted work interspersed with commentary may constitute transformative fair use. *Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 40, 46-47 (S.D.N.Y. 2017). Based on these rules and plaintiff's own description of the Subject Videos, the Subject Videos implicate key elements of the fair use defense. Accordingly, there is no plausible basis to conclude that Ms. Rapkin knew that there was a high probability that the Subject Videos were not protected by the fair use doctrine.

In sum, there are no alleged facts plausibly establishing that Ms. Rapkin made any knowing misrepresentation. Instead, the allegations suggest that the description of the Subject Videos in the DMCA Counter-Notice was accurate and that, at most, Ms. Rapkin may have arguably made an innocent mistake in describing the extent of the commentary in the Subject Videos or application of the fair use doctrine. Even if true, the Ninth Circuit has held that mistakes of this sort are not actionable as a matter of law. *Rossi*, 391 F.3d at 1005; *Lenz*, 815 F.3d at 1154.

For these reasons, which are further established below, the Court should grant Ms. Rapkin's motion and dismiss plaintiff's claim against her without leave to amend.

## STATEMENT OF FACTS

### A.    *The Parties*

Plaintiff alleges that it is "the sole owner of copyright in the videos published on the YouTube channels 'Denver Metro Audits' and 'Denver Metro Audits 2.0'" (collectively, "Denver Metro Audits*")*. First Am. Compl. ¶¶ 20, 34. Denver Metro Audits is purportedly a member of the "auditor community," which view themselves as "citizen journalists," and films and posts videos of "interactions with government officials in public spaces to promote transparency and assert constitutional rights," primarily related to the First Amendment. *Id*. ¶¶ 32-33.

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

Plaintiff asserts that the Doe defendant, the Exposer, on the other hand, is a member of the online community of "auditor trolls," who create and post reaction-style videos, allegedly utilizing content posted by "auditors" in order to mock and ridicule the "auditor community." *Id*. ¶¶ 35-37.

Ms. Rapkin allegedly acted as the Exposer's attorney in representing the Exposer's interests in the DCMA takedown procedures at issue here. *Id*. ¶¶ 8-10, 12. Regarding Ms. Rapkin's legal background and expertise, plaintiff emphasizes that Ms. Rapkin "is an attorney admitted to practice in Quebec" and is employed by a law firm located in Montreal. *Id*. ¶¶ 8, 21 . In plaintiff's initial complaint (Dkt. 1), plaintiff specifically alleged that Ms. Rapkin had "no known experience in United States copyright law." Compl. ¶ 20. Although plaintiff has omitted that allegation, plaintiff continues to suggest that Ms. Rapkin is "inexperienced" with United States copyright law. First Am. Compl. ¶ 91.

## B.   *The Subject Videos and DMCA Takedown Notice*

Plaintiff alleges that the defendant, the Exposer, created reaction-style videos mocking the plaintiff's Denver Metro Audits YouTube channel, using content from videos that were originally posted to the Denver Metro Audits channels. *Id*. ¶¶ 22-24, 35-37.

On July 4, 2025, plaintiff's assignor allegedly sent DMCA takedown notices to YouTube ("Takedown Notices") requesting that YouTube remove 27 videos the Exposer posted on the basis that they infringed plaintiff's copyright in videos plaintiff originally posted to the plaintiff's Denver Metro Audits channels. *Id*. at ¶ 40. Only 17 of these videos are the subject of plaintiff's DMCA claim (*i.e.,* the Subject Videos).[3] *Id*. at ¶¶ 39-43. Following receipt of the Takedown Notices, YouTube removed the 17 Subject Videos. *Id*. at ¶ 41. Plaintiff alleges that the

---

[3] Plaintiff alleges that Takedown Notices were issued as to only 27 videos (*Id*. at ¶ 40), but that the counter-notice allegedly issued by the Exposer and Ms. Rapkin addresses only 17 videos, which were removed by YouTube following plaintiff's takedown notice (*Id*. at ¶¶ 41, 43).

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

Exposer voluntarily made the remaining videos "private," meaning they could not be viewed by the public. *Id.* at ¶ 41. Notably, YouTube allegedly independently determined that these videos "*were protected under fair use.*" *Id.* at ¶ 42 (emphasis added). YouTube's independent determination that some of the Exposer's videos were protected under the fair use doctrine of course cast substantial doubt on plaintiff's contention that Ms. Rapkin's invocation of fair use was "knowingly" wrong.

According to plaintiff, the Subject Videos (which plaintiff organizes into three "categories" in its complaint) were edited to include various film and television clips purportedly selected by the Exposer, and that such film and television content was paired with Plaintiffs' Videos "for mockery":

> **Category 1: Short Videos with No Commentary Whatsoever (8 videos):** These Shorts consist entirely of Plaintiff's copyrighted footage, **often paired with other copyrighted material (e.g., movie or television clips) for mockery**. There is not a single word of narration, commentary, or critique in these videos, directly contradicting Rapkin's blanket claim under penalties of perjury of "elaborate commentary throughout."

> **Category 2: Short Videos Featuring Publicly Available Government: Footage (3 videos):** These clips depict public meetings or hearings **that were already published by government entities** on their official YouTube channels such as the City of Englewood, Colorado. Rather than using those public sources, the Exposer copied Plaintiff's original curated footage for convenience, better audio/video quality, or camera angles, none of which justify appropriation under fair use.

> **Category 3: Videos with Trivial or Token Commentary (6 videos):** These include brief and meaningless phrases or sarcastic clips from copyrighted movies and TV shows. None of these qualify as "elaborate commentary throughout," the phrase Rapkin certified under penalty of perjury in the Blanket Counter-Notice.

*Id.* at ¶¶ 58-60 (footnote 2 omitted).

In sum, plaintiff's own description of the Subject Videos makes it clear that the videos contain "government footage" and commentary in the form of clips and mashups and thus implicate the fair use doctrine. 17 U.S.C. § 107 (describing "news reporting" as an example of fair use); *Hosseinzadeh v. Klein*, 276 F. Supp.

3d at 40, 46-47 (holding that "reaction" style videos may constitute fair use); *Equals Three, LLC v. Jukin Media, Inc.*, 139 F. Supp. 3d 1094 (C.D. Cal. 2015) (same).

### C.    The Counter-Notice Did Not Contain Any Knowing Misrepresentations

Plaintiff alleges that, on July 14, 2025, Ms. Rapkin sent the Counter Notice ("Counter-Notice") to YouTube requesting reinstatement of the Subject Videos on grounds that the Subject Videos do not infringe plaintiff's alleged copyright in the Denver Metro Audits Videos ("Plaintiff's Videos") because they are subject to the fair use exception to copyright infringement.[4]  *Id.* at ¶¶ 43, 55.  Plaintiff alleges that Ms. Rapkin did not include the name, address and telephone number of the Exposer in the Counter-Notice, as required under the DMCA, and that, to date, Ms. Rapkin has continued to withhold the identity and address of the Exposer.  *Id.* at ¶¶ 66-68.  Plaintiff alleges that Ms. Rapkin's "continuing concealment" of the identity of the Exposer "confirms knowing and material misrepresentation." *Id.* at ¶¶ 66-75. But, as addressed infra, plaintiff does not allege facts showing misrepresentation, or that such misrepresentation was "knowingly" made.

Plaintiff alleges that, in the Counter-Notice, Ms. Rapkin "knowingly" and "falsely represented": "(1) that each of the 17-Videos 'was significantly transformed by detailed editing and elaborate commentary throughout'; and (2) that each video was protected by fair use and removed 'due to a mistake or misidentification.'" *Id.* at ¶ 85.

Plaintiff's first theory purportedly supporting the contention that she made a "knowing" misrepresentation is that Ms. Rapkin allegedly said that the Subject Videos were "significantly transformed" and contained "elaborate commentary throughout" when they do not in fact contain "elaborate commentary.*" Id.* at ¶¶ 10, 55-61.  That claim cannot be true based on plaintiff's own description of the

---

[4] Plaintiff alleges that a copy of the Counter-Notice is annexed as Exhibit B to the complaint. *Id.* at ¶ 43.

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

Subject Videos.  Far from establishing a "knowing" misrepresentation, plaintiff's allegations leave no doubt that the Subject Videos do, in fact, contain commentary in the form of clips and mashups.  *Id*. at ¶¶ 58-61.  Therefore, there is no plausible basis to conclude that Ms. Rapkin misrepresented – much less "knowingly" misrepresented – the nature of the Subject Videos in the Counter-Notice.

Plaintiff's second misrepresentation theory is that Ms. Rapkin "knowingly" misrepresented that the Subject Videos were protected by the fair use doctrine.  *Id.* at ¶ 85.  This theory too falls flat.  Plaintiff does not allege anything suggesting that Ms. Rapkin *knew* that the Subject Videos were not protected by the fair use doctrine when she submitted the Counter-Notice.  Indeed, plaintiffs' allegations demonstrate the opposite.  Plaintiff's allegations support a finding that Ms. Rapkin, at most, made a mistake about fair use and did not deliberately misrepresent the applicability of the fair use doctrine in the Counter-Notice.  *Id.* at ¶¶ 58-61, 85.

To bolster plaintiff's claim that Ms. Rapkin alleged "misrepresentation in the Count-Notice were "knowingly" made — or made with "willful blindness" — plaintiff asserts that Ms. Rapkin failed to review each of the Subject Videos and failed to undertake a fair use analysis as to each video.  *Id*. at ¶¶ 45, 56.  These allegations miss the mark because plaintiff does not allege anything suggesting that Ms. Rapkin (1) knew that there was a high probability that the Subject Videos did not contain commentary or were not subject to fair use and (2) took deliberate actions to avoid learning of those facts, which is what is required to establish liability on a "willful blindness" theory.  *Lenz,* 815 F.3d at 1155 (citations omitted).

In sum, Ms. Rapkin did not violate the DMCA because she did not "knowingly materially misrepresent[]" anything about the Subject Videos in the Counter-Notice.

### D.    *YouTube Has Not Restored Access to the Subject Videos*

Plaintiff alleges that YouTube removed the Subject Videos and there is no

allegation that it ever restored access to the Subject Videos. *Id.* at ¶¶ 41, 48. Moreover, plaintiff seeks an injunction *restraining* YouTube and the Exposer from restoring the Subject Videos. *Id.* at ¶¶ 93, 102. Accordingly, there is no dispute that YouTube removed the Subject Videos and has not since replaced or reinstated access to the Subject Videos.

## LEGAL STANDARDS

### A.    Standard for Granting a Motion to Dismiss Under Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of the claims asserted in a complaint." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In ruling on a Rule 12(b)(6) motion, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Am. Family Ass'n v. City & County of San Francisco*, 277 F.3d 1114, 1120 (9th Cir. 2002). Although a complaint attacked by a Rule 12(b)(6) motion "does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact). . . ." *Twombly*, 550 U.S. at 555 (citations and footnote omitted). A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that a plaintiff must plead sufficient factual content to "allow[ ] the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also id.* at 679 (a complaint must contain "well-pleaded facts" from which the Court can "infer more than the mere possibility of misconduct").

Furthermore, if the court finds that dismissal of a claim is appropriate, it

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

1  must also decide whether to grant leave to amend.  In ruling on a motion to

2  dismiss, the court has discretion to deny leave to amend if it determines "that the

3  pleading could not possibly be cured by the allegation of other facts[.]"  *Lopez v.*

4  *Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 8 F.3d

5  494, 497 (9th Cir. 1995)); *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048,

6  1052 (9th Cir.2003) (dismissal is appropriate without leave to amend if it is clear

7  that "the complaint could not be saved by amendment[]").

8  **B.    Standard for Establishing a Violation of the DMCA**

9       The DMCA allows copyright holders to seek the removal of allegedly

10  infringing material from the internet by notifying online service providers, such as

11  YouTube, that they are hosting or providing access to allegedly infringing material.

12  17 U.S.C. § 512(c); *Bus. Casual Holdings, LLC v. TV-Novosti*, No. 21-CV-2007

13  (JGK) (RWL), 2023 WL 1809707, at *7 (S.D.N.Y. Feb. 8, 2023).  These processes

14  are available under Section 512(c) and are known "as the DMCA's 'takedown

15  procedures.'"  *Lenz*, 815 F.3d at 1151.  Under the takedown procedures, online

16  service providers may avoid liability for copyright infringement "if — among other

17  requirements — the service provider 'expeditiously' removes or disables access to

18  the content after receiving notification from a copyright holder that the content is

19  infringing."  *Id.* (citing 17 U.S.C. § 512(c)).

20       The takedown procedure begins when the copyright holder sends a

21  "takedown" notice to the service provider.  *See* 17 U.S.C. § 512(c)(3)(A); *Lenz,* at

22  815 F.3d at 1151; *Bus. Casual*, No. 21-CV-2007 (JGK) (RWL), 2023 WL

23  1809707, at *7.  To avoid liability for disabling or removing content following a

24  takedown notice, the service provider must then notify the creator of the alleged

25  infringing work of the takedown.  *Lenz*, 815 F.3d at 1151 (citing 17 U.S.C.

26  § 512(g)(1)–(2).)  The creator of the allegedly infringing work, in turn, has the

27  option of sending a "counter-notification," or "counter-notice," effectively

28  appealing the service provider's decision to remove or otherwise disable access to

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

the work.  17 U.S.C. § 512(g)(3)(C); *Lenz*, 815 F.3d at 1151.

If an individual or entity abuses the DMCA by knowingly submitting a false takedown notice or counter-notice, it may be subject to liability under Section 512(f) of the DMCA.   17 U.S.C. § 512(f).   Section 512(f)(1) concerns false takedown notices alleging infringement, while Section 512(f)(2) concerns false counter-notices contesting the alleged infringement.  Specifically, Section 512(f) provides:

> *Any person who knowingly materially misrepresents under this section –*
>
> *(1) that material or activity is infringing, or*
> *(2) **that material or activity was removed or disabled by mistake or misidentification,***
>
> *shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer, by any copyright owner or copyright owner's authorized licensee, or by a service provider, who is injured by such misrepresentation, as the result of the service provider **relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it.***

17 U.S.C. § 512(f)(1)-(2) (emphasis added).  Plaintiff alleges that Ms. Rapkin is liable under Section (f)(2).

To state a claim for violating Section 512(f)(2) of the DMCA, the plaintiff must allege facts establishing that (1) the defendant "knowingly" and "materially" misrepresented to the service provider (*i.e.*, YouTube) that the material identified in the plaintiff's takedown notices was removed or disabled by mistake or misidentification; (2) the service provider replaced or ceased disabling the allegedly infringing material in reliance on the defendant's knowing misrepresentation; and (3) the plaintiff incurred damages as result of the service provider's reliance on the defendant's misrepresentations in replacing or ceasing to

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

disable the removed materials. 17 U.S.C. § 512(f)(2); *see also Bus. Casual Holdings, LLC v. TV-Novosti*, 2023 WL 1809707, at *8 (citing *White v. UMG Recordings, Inc.*, 20-CV-9971, 2021 WL 6052106, at *2 (S.D.N.Y. Dec. 21, 2021) (stating necessary elements to survive motion to dismiss claim for violation of § 512(f)(2))); *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.,* 790 F. Supp. 2d 1024, 1029 (N.D. Cal. 2011).

In short, Section 512(f)(2) *only* applies when the defendant "knowingly materially misrepresents" in the counter notification *and* the service provider relies on that misrepresentation t*o replace or cease disabling access to the allegedly infringing material*.  17 U.S.C. § 512(f)(2) (emphasis added), *Bus. Casual,* No. 21-CV-2007 (JGK), 2022 WL 784049, at *5 (S.D.N.Y. Mar. 14, 2022); *Amaretto,* 790 F. Supp. 2d at 1029; *Moonbug Ent. Ltd. v. Babybus (Fujian) Network Tech. Co.*, No. 21-cv-06536-EMC, 2022 WL 580788, at *10 (N.D. Cal. Feb. 25, 2022).

## ARGUMENT

## I

## PLAINTIFF HAS NOT ALLEGED FACTS THAT COULD ESTABLISH A DMCA VIOLATION

### A.  *Plaintiff's DMCA Claim Fails Because YouTube Did Not Replace or Enable Access to the Subject Videos In Response to the Counter-Notice*

As noted above, there is no liability under the DMCA for allegedly making knowing misrepresentations in a counter-notice unless the service provider replaces or ceases disabling access to the infringing material by relying on the defendant's alleged misrepresentation.  17 U.S.C. § 512(f)(2)*; Bus. Casual*, 2023 WL 1809707, at *8; *Lenz,* 2010 WL 702466, at *10 ("[a] fair reading of the statute, the legislative history, and similar statutory language indicates that a § 512(f) plaintiff's damages must be proximately caused by the *misrepresentation to the service provider and the service provider's reliance on the misrepresentation*") (emphasis added)*; Amaretto,* 790 F. Supp. 2d at (dismissing DMCA claim under

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

Section 512(f)(1) because damages are limited to those caused by a service provider in "removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it").

For example, in *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, the defendant, Ozimals, Inc. ("Ozimals"), alleged that a competitor, Amaretto Ranch Breedables, LLC ("Amaretto"), infringed on its copyrights in certain virtual animals that exist in the virtual world, known as Second Life. 790 F. Supp. 2d at 1027. Ozimals also sent a takedown notice under the DMCA to the company that operates Second Life, Linden. *Id.* In response, Amaretto sought and obtained an injunction preventing Linden from removing its virtual animals from Second Life and sued Ozimals for violating Section 512(f) by making misrepresentations under the DMCA. *Id.* at 1027-1028. The court granted Ozimals' motion to dismiss the Section 512(f) claim because Linden never removed Amaretto's virtual horses in response to the takedown notice and held that "the statute is unambiguous in entitling an alleged infringer to damages caused 'as the result of the service provider . . . removing or disabling access to the material[.]'" *Id.* at 1029.

Furthermore, in *Bus. Casual Holdings, LLC v. TV-Novosti,* the plaintiff, Business Casual Holdings, LLC ("Business Casual") sued TV-Novosti for copyright infringement and alleged violations of the DMCA. 2022 WL 784049, at *1. The plaintiff, Business Casual, made YouTube documentaries and claimed that TV-Novosti, a Russian non-profit that operates its own YouTube channel, violated Business Casual's copyright by copying portions of documentaries it produced. *Id.* at *2. Business Casual filed DMCA takedown notices with YouTube and YouTube removed certain of the allegedly infringing videos. *Id.* In response, TV-Novosti filed counter notifications contending that the videos were not infringing and YouTube advised Business Casual that it would reinstate the subject videos unless it obtained a court order preventing the reinstatement. *Id.* at *2-3. Business Casual sued, alleging copyright infringement and violations of the

1    DMCA.  *Id.* at *1.

2        While the court held that Business Casual's copyright infringement claim

3    could proceed, it dismissed the claim that TV-Novosti violated the DMCA by

4    allegedly making misrepresentations in its counter notification.  *Id.* at *5.  The

5    court went on to hold that, "[b]y its terms, § 512(f) (2) only applies when there has

6    been a misrepresentation in the counter notification and the service provider relies

7    on that misrepresentation and ceases to disable access to the allegedly infringing

8    material."  *Id; Glob. Brother SRL v. Shixiaolong*, No. 8:24-CV-02903-WFJ-CPT,

9    2025 WL 3033633, at *3 (M.D. Fla. Oct. 30, 2025) (denying default judgment and

10   holding that "because Plaintiff fail[ed] to allege that [the service provider] relied

11   on Defendants' misrepresentation to remove Plaintiff's product(s), all elements

12   necessary for Count III [violations of the DMCA] are not sufficiently alleged").

13       Here, plaintiff's DMCA claim against Ms. Rapkin fails for the same reason

14   the DMCA claims in *Amaretto Ranch Breedables* and *Bus. Casual Holdings, LLC*

15   failed: the service provider (*i.e.*, YouTube) never replaced or ceased to disable

16   access to the Subject Videos.  First Am. Compl. ¶¶ 49-52.  Because YouTube

17   never reinstated access to the Subject Videos, there can be no violation of Section

18   512(f)(2).

19       For these reasons, plaintiff has not and cannot state a claim under Section

20   512(f) as a matter of law and, on this basis alone, the Court should dismiss

21   plaintiff's complaint against Ms. Rapkin with prejudice.

22   **B.    Plaintiff's DMCA Claim Fails for a Second Independent Reason: Ms.**

23   **        Rapkin Did Not Make a "Knowing" Misrepresentation**

24       Section 512(f) provides an "expressly limited" cause of action for improper

25   counter notifications, imposing liability *only* if the counter-notice contains a

26   "knowing" material misrepresentation.  17 U.S.C. § 512(f), *see Rossi,* 391 F.3d at

27   1004–05 ("[i]n § 512(f), Congress included an expressly limited cause of action for

28   improper infringement notifications, imposing liability only if the copyright

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

owner's notification is a knowing misrepresentation") (internal citation omitted).

The Ninth Circuit has held that to establish a "knowing" misrepresentation under the DMCA, the plaintiff must show that the defendant acted with actual knowledge that it was making a material misrepresentation. *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1154–56 (9th Cir. 2016); *see also Rossi*, 391 F.3d at 1005. Alternatively, under a "willful blindness" theory, the plaintiff must show that the defendant (1) subjectively believed there was a high probability that a fact existed, and (2) took deliberate actions to avoid learning the fact. *See Lenz*, 815 F.3d at 1155. "A copyright owner *cannot be liable simply because an unknowing mistake is made*, even if the copyright owner acted unreasonably in making the mistake." *Rossi*, 391 F.3d at 1005 (emphasis added). In other words, a mistake — even an unreasonable mistake — is not enough. Instead, "there must be a demonstration of some actual knowledge of misrepresentation on the part of the copyright owner." *Id.* Furthermore, "reckless disregard" is not enough. *Alper Auto., Inc.*, 2021 WL 5893161, at *16 ("[t]he Court finds that it was reckless of Defendant to submit the November 1, 2018, DMCA Takedown Notice, but that this takedown notice does not meet the high standard of willful blindness").

And of course, the same rules apply to the "knowingly material" misrepresentation standard as applied to both DMCA takedown notices under Section 512(f)(1) and counter notices under Section 512(f)(2). *See Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 44 (S.D.N.Y. 2017) ("[i]t is clear to this Court that the same subjective standard should apply to the "good faith belief" requirement for counter notifications") (citing *Rossi*, 391 F.3d at 1005).

Moreover, not all misrepresentations are actionable under the DMCA. 17 U.S.C. § 512(f) (establishing liability for misrepresentations "that material or activity is infringing" or "that material or activity was removed or disabled by mistake or misidentification"); *Arista Records, Inc.*, 2002 WL 1997918, at *15 ("Section 512 only penalizes copyright holders for knowingly materially

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

misrepresenting '*that material or activity is infringing*.'") (quoting 17 U.S.C.
§ 512(f)) (emphasis added).

Plaintiff's allegations do not come close to meeting the standard for a
"knowing" material misrepresentation under the DMCA.  Plaintiff contends that
Ms. Rapkin made a "knowingly false" statement when she allegedly stated that
plaintiff's original videos were "significantly transformed by detailed editing and
elaborate commentary throughout[]" in the Subject Videos.  First Am. Compl.
¶¶ 55, 62-63.  But plaintiff's own allegations show that Ms. Rapkin's purported
statement could not have been "knowingly false."

For starters, plaintiff alleges that Ms. Rapkin "did not view or review each of
the 17-Videos before submitting the Counter-Notice." *Id.* ¶ 56.  Without reviewing
all of the Subject Videos, Ms. Rapkin could not have *known* that the
representations in the Counter-Notice about the commentary in the Subject Videos
were allegedly false.

Next, there are no alleged facts suggesting that Ms. Rapkin knew or knew
that there was a high probability that the Subject Videos did not contain
commentary.  Indeed, plaintiff's allegations establish that some, if not all, of the
Subject Videos included some form of commentary.  Plaintiff admits that the
Subject Videos in fact had edits suggesting mocking commentary and mashups.
*Id*. at ¶¶ 58-61.  While plaintiff contends that some of the Subject Videos have no
"commentary[,]" plaintiff goes out of its way to narrowly define "commentary" in
a way that excludes "unrelated audiovisual clips, images, sound effects, or pop-
culture references." *Id.* ¶¶ 10-11, 58-61.

Because of the narrow way plaintiff defines "commentary," even accepting
plaintiff's allegation that the Subject Videos do not contain "commentary" as true
would not establish DMCA liability, because it would not establish that Ms.
Rapkin knowingly misrepresented the presence of commentary, as that term is
usually defined, in the Subject Videos.  For instance, a video without

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

1    "commentary" in plaintiff's view may still consist of plaintiff's purported

2    copyrighted material interspersed with "unrelated audiovisual clips, images, sound

3    effects, or pop-culture references[,]" which normally constitutes commentary for

4    purposes of a fair use analysis. *Id.* ¶ 11; *Hosseinzadeh v. Klein*, 276 F. Supp. 3d

5    34, 40, 46-47 (holding that "reaction videos," which consist of segments of a

6    copyrighted work interspersed with commentary, may constitute transformative

7    fair use); *Equals Three, LLC v. Jukin Media, Inc.*, 139 F. Supp. 3d at 1105 (finding

8    that "jokes, narration, graphics, editing, and other elements . . . add something new

9    to" videos for purposes of a fair use analysis).

10       Plaintiff's next contention that Ms. Rapkin "knowingly" misrepresented the

11    applicability of the fair use doctrine to the Subject Videos fares no better. First

12    Am. Compl. ¶ 85. To establish that Ms. Rapkin violated the DMCA on this basis,

13    plaintiff would have to establish that Ms. Rapkin (1) knew that the fair use doctrine

14    *did not* protect the Subject Videos and nonetheless represented that the fair use

15    doctrine did protect them or (2) knew that there was a high probability that the fair

16    use doctrine *did not* protect the Subject Videos and took deliberate steps to avoid

17    learning that fact. There are no allegations that could remotely establish such a

18    knowing misrepresentation.

19       Again, because Plaintiff alleges that Ms. Rapkin "did not view or review

20    each of the 17-Videos before submitting the Counter-Notice" (*id.* ¶ 56), Ms.

21    Rapkin could not have *known* that the representations in Counter-Notice about fair

22    use were allegedly false.

23       Similarly, there are no alleged facts that could establish that Ms. Rapkin

24    knew that there was a high probability that the Subject Videos were not protected

25    under the fair use doctrine because it is not at all clear— even accepting plaintiff's

26    allegations as true — that the Subject Videos do not fall within the fair use

27    doctrine, much less that Ms. Rapkin had any reason to know that there was a high

28    probability that the Subject Videos were not subject to fair use. To determine

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

1  whether the use of a work is a fair use, courts must consider a multifactor test. 17

2  U.S.C. § 107. And applying this test is not an easy task. (*Equals Three, LLC v.*

3  *Jukin Media, Inc.*, 139 F. Supp. 3d at 1104 (determining whether a work is a

4  parody "is a difficult and nuanced task"). In light of this background, there are no

5  factual allegations plausibly establishing that Ms. Rapkin "knew" or " knew that

6  there was a high probability" that the Subject Videos were not protected under the

7  fair use doctrine.[5]  Indeed, the allegations demonstrate that there are good grounds

8  to believe that the Subject Videos are non-infringing under the fair use doctrine.

9      For instance, the reference to "government footage" implicates news

10  gathering, which would support a fair use defense. *See Los Angeles News Serv. v.*

11  *KCAL-TV Channel 9*, 108 F.3d at 1121 (holding that the fact that alleged infringer

12  "was reporting news weighs heavily in" favor of fair use); 17 U.S.C. § 107

13  (describing "news reporting" as an example of fair use). Additionally, courts have

14  held that "reaction videos," which consist of segments of a copyrighted work

15  interspersed with commentary may constitute transformative fair use.

16  *Hosseinzadeh v. Klein*, 276 F. Supp. 3d at 40, 46-47; *Equals Three*, 139 F. Supp.

17  3d 1094. Based on these rules and plaintiff's own description of the Subject

18  Videos, the Subject Videos implicate key elements of the fair use defense.

19  Accordingly, there is no plausible basis to conclude that Ms. Rapkin knew that

20  there was a high probability that the Subject Videos were not protected by the fair

21  use doctrine. At most, the alleged facts support a claim that Ms. Rapkin made a

22  mistake, which is not actionable under the DMCA.

23      The bottom line is that to plausibly allege a DMCA violation under Section

24  512(f), plaintiff must have alleged facts that, if true, would establish that Ms.

25  Rapkin had actual knowledge of the alleged misrepresentations and made them

26

27  _____

28  [5] Indeed, plaintiff admits that YouTube apparently independently concluded that other of plaintiff's videos were protected under the fair use doctrine. First Am. Compl. ¶ 42. This undermines the plausibility of plaintiff's claim that Ms. Rapkin knew.

anyway.  Despite amending the complaint once, Plaintiff has not done so.  Instead, plaintiff has pled facts showing that, at most, plaintiff's DMCA claim against Ms. Rapkin is based on nothing more than an innocent mistake.  This is not enough as a matter of law.  *Rossi*, 391 F.3d at 1005.  Accordingly, it is clear that further amendment would not cure the defect with plaintiff's DMCA claim and that dismissal with prejudice is appropriate.  *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d at 1052 (9th Cir.2003) (dismissal is appropriate without leave to amend if it is clear that "the complaint could not be saved by amendment[]").

## CONCLUSION

For the foregoing reasons, defendant Ms. Rapkin respectfully requests that the Court grant her motion and dismiss plaintiff's claim against her without leave to amend.


Dated: January 13, 2026              CLYDE & CO US LLP


By: _____.

KEVIN R. SUTHERLAND
BRANDON K. FRANKLIN
JESSICA R. STONE
Attorneys for Defendant
LEE RAPKIN

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

# PROOF OF SERVICE

## STATE OF CALIFORNIA
## COUNTY OF SAN FRANCISCO

I am employed in the County of San Francisco, State of California, I am over the age of eighteen years, and not a party to the within action.  My business address is 150 California Street, Suite 1500, San Francisco, California  94111.

On January 13, 2026, I served the document(s) described as:

**DEFENDANT LEE RAPKIN'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; AND [PROPOSED] ORDER GRANTING MOTION**

on the parties in this action addressed as follows:

## SEE ATTACHED SERVICE LIST

in the following manner:

☐ **(BY E-MAIL):** by transmitting on this date via electronic mail the document(s) listed above to all parties with an e-mail address of record as set forth below and who have consented to electronic service in this action. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ **(BY MAIL):** as follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

☒ **(BY CM/ECF/EFSP):** by electronic filing system notification with the clerk of the Court, or other electronic filing service provider pursuant to CCP § 1010.6(a), which will send a Notice of Electronic Filing to all parties with an e-mail address of record, who have consented to or filed a Notice of Consent to Electronic Service in this action.

I declare under penalty of perjury according to the laws of the State of California that the foregoing is true and correct and I am employed by a member of the bar of this Court at whose direction service is made.

Executed January 13, 2026, at San Francisco, California.

_____
Patricia Inabnet

1

**SERVICE LIST**

2

3    Randall S. Newman, Esq.
     99 Wall Street, Suite 3727
4    New York, New York 10005
     Telephone: (212) 797-3735
5    Email: rsn@randallnewman.net

6    Attorneys for Plaintiff
     EXECUTIVE LENS LLC
7

8

9

10

11

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28