1
2
3
4
5
6
7

RANDALL S. NEWMAN (SBN 190547)
Attorney at Law
99 Wall St., Suite 3727
New York, NY 10005
212.797.3735
rsn@randallnewman.net

*Attorney for Plaintiff,*
 *Executive Lens LLC*

8
9
10

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXECUTIVE LENS LLC,

            Plaintiff,

        vs.

LEE RAPKIN and JOHN DOE dba "the Exposer"
www.youtube.com/@1aAuditsExposé,

            Defendants.

Case No. 25-cv-06048-NC

**HON. NATHANAEL M. COUSINS**

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT, LEE RAPKIN'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

**HEARING:**
Date: February 18, 2026
Time: 11:00 a.m.
Place: 280 South 1st St.
Courtroom 5 (4th Floor)
San Jose, CA 95113

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.      STATEMENT OF ISSUES TO BE DECIDED .........................................................1

II.     INTRODUCTION .............................................................................................1

III.    FACTUAL BACKGROUND..............................................................................2

        A.      The Blanket Counter-Notice Submitted by Attorney Rapkin .............3

        B.      The Counter-Notice Triggered the Statutory Reinstatement Process...4

IV.     MOTION TO DISMISS STANDARD..................................................................5

        A.      Defendant's Motion Improperly Disputes Facts.................................5

V.      PLAINTIFF STATES A CLAIM AGAINST DEFENDANT FOR VIOLATION OF
        17 U.S.C. § 512(f)...........................................................................................6

        A.      Plaintiff Alleges That Attorney Rapkin Knowingly And Materially
                Misrepresented That The Material Was Removed By Mistake ...............7

                i.      Rapkin's Blanket Certification Across Seventeen Non-Homogeneous
                        Videos Supports Knowledge or Willful Blindness...............................9

                ii.     Plaintiff has Adequately Alleged Knowing and Material
                        Misrepresentation Under § 512(f)......................................................10

                iii.    Rapkin's Reliance on *Rossi* and *Lenz* Is Misplaced at the Pleading Stage
                        ...................................................................................................11

        B.      Plaintiff Alleges That YouTube Relied On Defendants'
                Misrepresentations And Restored Defendants' Videos ..........................12

                i.      Defendant's Reading Conflicts with the Purpose of § 512(f) ............12

                ii.     Defendants Reliance on *Amaretto Ranch* Is Misplaced Because a Failed
                        Takedown Does Not Inflict the Same Statutory Harm as a Bad-Faith
                        Counter-Notification ...................................................................16

        C.      Plaintiff Alleges It Was Injured as a Result of Attorney Rapkin's
                Misrepresentations..........................................................................17

**Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss First Amended Complaint**

D.      Nondisclosure of the Infringer's Identity Supports Inferences of Bad Faith ...................................................................................18

E.      Dismissal Without Leave to Amend Would Be Improper..................20

VI.  CONCLUSION..........................................................................................22

**Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss First Amended Complaint**

1

2

3

**TABLE OF AUTHORITIES**

**CASES**

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 790 F. Supp. 2d 1024 (N.D. Cal. 2011) .................................................................................................................... 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................... 5

*Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011 (N.D. Cal. 2015) ..................... 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................ 5

*Business Casual Holdings, LLC v. TV-Novosti*, No. 21-CV-2007 (JGK)(RWL), 2023 WL 1809707 (S.D.N.Y. Feb. 8, 2023 .................................................................. 14

*Business Casual Holdings, LLC v. TV-Novosti*, No. 21-CV-2007 (JGK), 2022 WL 784049 (S.D.N.Y. Mar. 14, 2022) ................................................................ 14

*Cordova v. Huneault*, No. 25-cv-04685-VKD, 2026 WL 184598 (N.D. Cal. Jan. 23, 2026) ............................................................................................ 6, 11

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) .............. 21

*ENTTech Media Group LLC v. Okularity, Inc.*, No. 2:20-cv-06298-JWH-Ex, 2021 WL 916307 (C.D. Cal. Mar. 10, 2021) ................................................................ 7

*Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564 (1982) ............................. 12

*Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34 (S.D.N.Y. 2017) ........................... 7

*Lenz v. Universal Music Corp.*, 815 F.3d 1145 (9th Cir. 2016) ............... 7, 9-10

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) ............................................. 5

*Public Citizen v. U.S. Dept. of Justice*, 491 U.S. 440 (1989) ......................... 12

*Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000 (9th Cir. 2004) ........ 6

*Russello v. United States*, 464 U.S. 16 (1983) ............................................. 19

*United States v. American Trucking Assns., Inc.*, 310 U.S. 534 (1940) ............. 12

*Usher v. City of Los Angeles*, 828 F.2d 556 (9th Cir. 1987) ........................... 5

*Viral DRM LLC v. Navez*, No. 23-cv-06598-JSC, 2025 WL 834498 (N.D. Cal. Mar. 17, 2025) ................................................................................ 15

iii

**STATUTES**

17 U.S.C. § 512...........................................................................................................passim

**RULES**

Rule 12(b)(6)...........................................................................................................passim

Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss First Amended Complaint

## I. STATEMENT OF ISSUES TO BE DECIDED

Whether Plaintiff Executive Lens LLC (the "Plaintiff") states a claim for misrepresentation under 17 U.S.C. § 512(f) against Defendant Lee Rapkin ("Defendant" or "Rapkin") in Count One of the First Amended Complaint ("FAC") (ECF No. 20).

## II. INTRODUCTION

This is not a fair-use case. It is a misrepresentation case.

Plaintiff alleges that Rapkin submitted a sworn DMCA counter-notification containing objectively false factual certifications, without reviewing the videos at issue, and while deliberately concealing the identity of the subscriber, in order to trigger YouTube's automatic reinstatement process and prevent termination of an anonymous, monetized YouTube channel. Those allegations state a claim under 17 U.S.C. § 512(f).

The FAC does not allege that Rapkin merely misapplied the fair-use doctrine or reached an incorrect legal conclusion. It alleges that she certified, under penalty of perjury, that seventeen separate videos were "significantly transformed by detailed editing and elaborate commentary throughout," when at least eight of those videos contain no commentary of any kind. A video with zero narration cannot factually contain "elaborate commentary throughout." That is not a legal judgment; it is a verifiable factual assertion, and Plaintiff plausibly alleges it was false.

Plaintiff further alleges that Rapkin submitted a single, blanket counter-notice covering seventeen non-homogeneous videos without conducting a video-by-video review. Certifying uniform, detailed factual characteristics across disparate videos, some with commentary, some without, some consisting almost entirely of Plaintiff's footage, supports a reasonable inference of knowing misrepresentation or, at minimum, willful blindness. Under Ninth Circuit law, deliberate avoidance of review while making categorical factual certifications satisfies § 512(f)'s subjective scienter requirement.

Plaintiff also alleges that Rapkin concealed the identity of the subscriber required to be disclosed under § 512(g)(3)(D), substituting her own information while continuing to withhold the channel operator's identity even after litigation commenced. That conduct is

1

not pleaded as a standalone statutory violation, but as circumstantial evidence of intent. Taken together with the standardized factual misrepresentations and alleged lack of review, it supports the inference that the counter-notification was not submitted as part of a traditional, independent legal assessment, but as a strategic mechanism to shield an anonymous channel from platform enforcement consequences by exploiting YouTube's automated reinstatement machinery.

After receiving the counter-notification, YouTube relied on Rapkin's sworn certifications by initiating the statutory restoration process and notifying Plaintiff that reinstatement would occur unless Plaintiff filed suit within the statutory window. Plaintiff commenced this action solely to prevent reinstatement and incurred attorney's fees and enforcement costs as a direct result. Section 512(f) squarely addresses that injury. The statute does not immunize knowing misuse of the counter-notification process merely because the copyright owner acted quickly enough to stop reinstatement before it occurred.

At the pleading stage, Plaintiff is entitled to reasonable inferences in its favor. The Court may not resolve disputed questions concerning what Rapkin reviewed, what she knew, or why she concealed the subscriber's identity. The FAC plausibly alleges knowing or willfully blind misrepresentation, service-provider reliance, and resulting injury. That is more than sufficient to proceed past Rule 12(b)(6).

## III.    FACTUAL BACKGROUND

Plaintiff is a Colorado limited liability company and the sole owner of the copyrights in original audiovisual works published on the YouTube channels *Denver Metro Audits* and *Denver Metro Audits 2.0*. (FAC ¶¶ 20, 34). These videos document real-world interactions between citizens and government officials and are intended to promote transparency, public accountability, and constitutional awareness. (*Id.* ¶¶ 32–33).

Defendant John Doe, operating anonymously under the alias "The Exposer," runs the YouTube channel @*1aAuditsExposé* (the "Exposé Channel"). (*Id.* ¶¶ 22–23). The Exposé Channel does not produce original journalistic or documentary footage. Instead, it republishes copyrighted footage created by others, particularly First Amendment auditors,

**Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss First Amended Complaint**

while adding little or no substantive commentary, and monetizes the resulting videos through YouTube's Partner Program. (*Id.* ¶¶ 23–24, 36).

The Exposé Channel is representative of a growing class of "reaction" or "auditor troll" channels that rely almost entirely on repackaging copyrighted footage created by independent creators. (*Id.* ¶¶ 2, 35). While such channels purport to offer critique or commentary, their videos typically consist of mockery, ridicule, or superficial narration that does not meaningfully engage with the substance, message, or journalistic value of the original works. (*Id.* ¶¶ 35–38).

Between 2024 and 2025, the Exposé Channel published at least thirty-one videos incorporating Plaintiff's copyrighted footage, including nineteen YouTube Shorts and twelve long-form videos. (*Id.* ¶ 39). On July 4, 2025, Plaintiff's assignor submitted DMCA takedown notices to YouTube requesting removal of twenty-seven of those videos, sixteen Shorts and eleven long-form videos, based on unauthorized use of Plaintiff's copyrighted works. (*Id.* ¶ 40).

YouTube removed all sixteen Shorts and one long-form video in response to Plaintiff's takedown notices. (*Id.* ¶ 41). After receiving the takedown notices, the Exposer made the remaining ten long-form videos and three Shorts private. (*Id.* ¶ 41). Despite repeated communications, YouTube declined to remove those additional videos after they were made private. (*Id.* ¶ 42).

## A.    The Blanket Counter-Notice Submitted by Attorney Rapkin

On July 14, 2025, Rapkin, an attorney admitted to the Quebec bar and employed by BLP Avocats in Montréal, submitted a DMCA counter-notification to YouTube on behalf of the anonymous operator of the Exposé Channel (the "Counter-Notice"). (*Id.* ¶¶ 8, 21, 43). Rapkin signed the Counter-Notice under penalty of perjury. (*Id.* ¶¶ 43–44, Ex. B (ECF No. 22-2)).

The Counter-Notice purported to cover seventeen videos: sixteen Shorts and one long-form video (the "17 Videos"). (*Id.* ¶¶ 8, 43). In the Counter-Notice, Rapkin certified that each of the 17 Videos had been removed "by mistake or misidentification" and that

**Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss First Amended Complaint**

1   each video was "significantly transformed by detailed editing and elaborate commentary
2   throughout." (*Id.* ¶¶ 9–10, 44, Ex. B (ECF No. 22-2)).

3        Those representations were materially false. At least eight of the counter-noticed
4   videos contain no commentary whatsoever. (*Id.* ¶¶ 10, 56, 58). The remaining videos
5   consist primarily of Plaintiff's original footage combined with token additions, such as
6   unrelated movie or television clips, that do not analyze, critique, or engage with the
7   substance of Plaintiff's works. (*Id.* ¶¶ 10–11, 59–61). None of the 17 Videos contains
8   "elaborate commentary throughout," as Rapkin certified under penalty of perjury. (*Id.* ¶¶
9   10–11, 55–63).

10       Rapkin submitted the same standardized justification across all seventeen videos
11  despite substantial factual differences among them, including videos containing zero
12  commentary. (*Id.* ¶¶ 12, 45–46). Upon information and belief, Rapkin did not conduct a
13  video-by-video review prior to submitting the counter-notice. (*Id.* ¶¶ 45–46, 56). Had she
14  done so, she would have known that her sworn representations were factually impossible
15  as to multiple videos. (*Id.* ¶¶ 46, 56–58).

16  **B.    The Counter-Notice Triggered the Statutory Reinstatement Process**

17       The Counter-Notice also failed to identify the subscriber who posted the videos, as
18  required by 17 U.S.C. § 512(g)(3)(D). (*Id.* ¶¶ 47, 66). Instead, Rapkin substituted her own
19  contact information, concealing the identity of the actual channel operator. (*Id.* ¶¶ 47, 66–
20  67).

21       Upon receipt of the Counter-Notice, YouTube relied on Rapkin's sworn
22  representations and initiated the statutory reinstatement process under 17 U.S.C. § 512(g).
23  (*Id.* ¶¶ 48–49). YouTube notified Plaintiff that unless Plaintiff initiated federal litigation
24  within the statutory waiting period, the 17 Videos would be restored. (*Id.* ¶¶ 49–51, Ex. B
25  (ECF No. 22-2)).

26       As a direct result of the Counter-Notice and YouTube's reliance on it, Plaintiff was
27  forced to commence this action within the ten-business-day statutory window to prevent
28  automatic reinstatement of the 17 Videos. (*Id.* ¶¶ 52–54). Plaintiff incurred attorneys' fees,

4

1   enforcement costs, and related damages solely because of the false and misleading
2   representations made in the Counter-Notice. (*Id.* ¶¶ 53–54, 90).

3       Rapkin's submission of a blanket Counter-Notice asserting "elaborate commentary
4   throughout," combined with her continued refusal to identify the subscriber who posted the
5   17 Videos even after litigation commenced, is strong circumstantial evidence that the
6   misrepresentations were not inadvertent but made knowingly or, at minimum, with willful
7   blindness. (*Id.* ¶¶ 66–75).

8   **IV.    MOTION TO DISMISS STANDARD**

9       A Rule 12(b)(6) motion "tests the legal sufficiency" of a complaint. *Navarro v.*
10  *Block*, 250 F.3d 729, 732 (9th Cir. 2001). The Court must accept all well-pleaded factual
11  allegations as true and draw all reasonable inferences in the plaintiff's favor. *Ashcroft v.*
12  *Iqbal*, 556 U.S. 662, 678 (2009). The question is not whether the plaintiff will ultimately
13  prevail, but whether the complaint alleges "enough facts to state a claim to relief that is
14  plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is
15  plausible where the facts permit a reasonable inference of liability. *Id.*

16      **A.    Defendant's Motion Improperly Disputes Facts**

17      Defendant's Motion repeatedly disputes factual allegations, recharacterizes the FAC,
18  and asserts what "really happened," including claims that Plaintiff purportedly "admits"
19  facts that the FAC expressly alleges otherwise. Such arguments are improper at the Rule
20  12(b)(6) stage. On a motion to dismiss, the Court must accept all well-pleaded factual
21  allegations as true and draw all reasonable inferences in Plaintiff's favor, not Defendant's.
22  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

23      Defendant's arguments instead ask the Court to adopt Defendant's competing factual
24  narrative and to draw inferences in Defendant's favor, an approach the Ninth Circuit has
25  squarely rejected. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987)
26  (When ruling on a motion to dismiss, the district court must accept all factual allegations
27  in the complaint as true and construe them in the light most favorable to the plaintiff).

28

**Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss First Amended Complaint**

1    Disputed questions concerning what Rapkin knew, what she reviewed, and the

2    nature of her relationship to the Exposer and the Exposé Channel are quintessential factual

3    issues that cannot be resolved on the pleadings and must be left for discovery. *Twombly*,

4    550 U.S. at 556 (a complaint need only plausibly suggest entitlement to relief, not prove

5    it).

6    **V.    PLAINTIFF STATES A CLAIM AGAINST DEFENDANT FOR VIOLATION**

7    **OF 17 U.S.C. § 512(f)**

8    17 U.S.C. § 512(f) provides that "[a]ny person who knowingly materially

9    misrepresents…that material…was removed or disabled by mistake or misidentification

10   shall be liable for any damages, including costs and attorneys' fees, incurred by…any

11   copyright owner…who is injured by such misrepresentation, as the result of the service

12   provider relying on such misrepresentation…in replacing the removed material."

13   In order to state a claim for violation of § 512(f), Plaintiff must allege facts plausibly

14   showing (1) that Defendant knowingly and materially misrepresented that the accused

15   material was removed or disabled by mistake or misidentification; (2) that the service

16   provider relied on the misrepresentation in replacing the removed material or ceasing to

17   disable access to it; and (3) the plaintiff was injured as a result. *See Cordova v. Huneault*,

18   No. 25-cv-04685-VKD, 2026 WL 184598, at *4 (N.D. Cal. Jan. 23, 2026)[1] (citing

19   *Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011, 1026 (N.D. Cal. 2015)).

20   "Whether a misrepresentation was made 'knowingly' is assessed against a subjective

21   standard; it requires a showing that the defendant had 'some actual knowledge' of the

22   misrepresentation and did not possess a good faith belief that the material was removed by

23   mistake or misidentification." *Cordova*, 2026 WL 184598, at *4 (citing *Rossi v. Motion

24   Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1004-05 (9th Cir. 2004). The same subjective

25

26   [1] *Cordova v. Huneault* involves the same YouTube channel, *Denver Metro Audits*. Following the events
     at issue there, Mr. Cordova assigned the copyrights he personally owned in those works to Plaintiff
27   Executive Lens LLC, his wholly owned company. *See* FAC ¶ 34. The Court should further note that the
     decision has been selected for publication in the Federal Supplement, as reflected by the citation
28   placeholder, ___ F. Supp. 3d ___.

**Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss First Amended Complaint**

1   standard applies to DMCA takedowns and DMCA counter-notices. *Cordova*, 2026 WL

2   184598, at *4 (citing *Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 44 (S.D.N.Y. 2017).

3       The Ninth Circuit has made clear that a copyright holder's claimed "good faith

4   belief" may also be undermined by willful blindness. In *Lenz v. Universal Music Corp.*,

5   815 F.3d 1145, 1155 (9th Cir. 2016), the court held that willful blindness may establish the

6   "knowing" element of § 512(f) where a copyright holder deliberately avoids learning facts

7   showing that the challenged use was authorized by law. The Ninth Circuit explained that

8   willful blindness requires two elements: (1) the defendant subjectively believed there was

9   a high probability that the material constituted (or did not constitute) fair use, and (2) the

10  defendant took deliberate actions to avoid confirming that fact. *Id.* The squarely rejected

11  the notion that a copyright holder may insulate itself from § 512(f) liability by consciously

12  avoiding fair-use analysis. *Id.* Thus, where a plaintiff plausibly alleges that a defendant

13  affirmatively avoided reviewing the content at issue, willful blindness provides an

14  independent basis for pleading knowing and material misrepresentation.

15      Finally, whether the defendant formed a subjective good-faith belief pursuant to §

16  512(f) is ordinarily a factual question inappropriate for resolution at the pleading stage.

17  *ENTTech Media Group LLC v. Okularity, Inc.*, No. 2:20-cv-06298-JWH-Ex, 2021 WL

18  916307, at *5 (C.D. Cal. Mar. 10, 2021). Indeed, in *Cordova*, the Court acknowledged that

19  "in *Lenz* the Ninth Circuit held that, in that case, 'a jury must determine whether

20  [defendant's] actions were sufficient to form a subjective belief about the video's fair use

21  or lack thereof." *Cordova*, 2026 WL 184598, at *6 (citing *Lenz v. Universal Music Corp.*,

22  at 1151).

23      **A.    Plaintiff Alleges That Attorney Rapkin Knowingly And Materially**
24          **Misrepresented That The Material Was Removed By Mistake**

25      The FAC alleges multiple, independent grounds supporting the inference that the

26  Counter-Notice was not submitted in good faith but instead contained knowing factual

27  misrepresentations or was the result of willful blindness and is actionable under 17 U.S.C.

28  § 512(f). Rapkin submitted a single Counter-Notice covering all 17 Videos, while

Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss First
Amended Complaint

certifying under penalty of perjury that each video had been removed "by mistake or misidentification" and was "significantly transformed by detailed editing and elaborate commentary throughout." (FAC ¶¶ 9–10, 43–44). Plaintiff alleges that this sweeping factual certification was objectively false, regardless of any legal debate over fair use.

As alleged, at least eight of the 17 Videos contain no commentary whatsoever, no narration, no critique, no discussion of Plaintiff's conduct, and no engagement with the underlying works. (*Id.* ¶¶ 45–46, 56–58). The remaining Shorts consist primarily of Plaintiff's copyrighted footage accompanied only by trivial or unrelated inserts, such as brief pop-culture clips or reaction imagery, that do not comment on, criticize, or transform the underlying videos. (*Id.* ¶¶ 56–59). Thus, even accepting Defendant's legal framing, Plaintiff alleges that Rapkin certified the existence of "elaborate commentary throughout" where none existed as a factual matter, rendering the counter-notification materially false on its face. (*Id.* ¶¶ 43–46).

Plaintiff further alleges that Rapkin applied identical boilerplate factual assertions to all 17 Videos despite their materially different content profiles, including videos with zero commentary and others with limited, inserts. (*Id.* ¶¶ 44–47). That uniformity supports the inference that the Counter-Notice did not reflect a careful, individualized assessment of the videos, but rather a blanket factual certification untethered to the actual contents of the works. (*Id.* ¶¶ 44–47, 52–54). It also suggests that Rapkin did not review the 17 Videos at all. Whether characterized as knowing falsity or willful blindness, such conduct satisfies the scienter requirement of § 512(f). (*Id.* ¶¶ 52–54).

Plaintiff does not allege a mere disagreement over fair use. Plaintiff alleges that Rapkin misrepresented objective, verifiable facts, including the existence of "elaborate commentary throughout," in order to invoke YouTube's automated reinstatement machinery and avert channel termination. (*Id.* ¶¶ 43–46, 52–54). At a minimum, Plaintiff plausibly alleges willful blindness of the contents of the 17 Videos, which is sufficient to plead a violation of § 512(f) and precludes dismissal at the Rule 12(b)(6) stage.

**Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss First Amended Complaint**

i.      **Rapkin's Blanket Certification Across Seventeen Non-Homogeneous Videos Supports Knowledge or Willful Blindness**

Plaintiff alleges that Rapkin applied the same standardized factual certification to seventeen materially different videos, including videos that contain no commentary whatsoever, videos consisting almost entirely of Plaintiff's footage, and videos with only trivial or unrelated audiovisual inserts. (*Id.* ¶¶ 10–12, 45–46, 56–61). Despite these substantial differences, Rapkin certified under penalty of perjury that each video was "significantly transformed by detailed editing and elaborate commentary throughout." (*Id.* ¶¶ 9–10, 44). Plaintiff alleges that Rapkin did so without conducting a video-by-video review. (*Id.* ¶¶ 45–46, 56).

Those allegations support a powerful inference of scienter. A licensed attorney submitting a counter-notification covering seventeen non-homogeneous videos must either (1) have reviewed each video and knowingly certified a false factual statement as to those containing no commentary, or (2) have failed to review the videos while certifying uniform factual assertions about their contents. (*Id.* ¶¶ 44–47, 52–54). Either scenario constitutes knowing misrepresentation or, at minimum, willful blindness and satisfies § 512(f)'s scienter requirement. *See Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1155 (9th Cir. 2016) (scienter may be established by willful blindness).

Plaintiff further alleges that the videos at issue are not merely variations on a single theme, but include a mix of Shorts and long-form content with materially different structures and content profiles, making a single, boilerplate factual certification implausible on its face. (FAC ¶¶ 10–12, 56–61). Plaintiff alleges that several videos contain zero narration, zero critique, and zero explanatory content, while others include only brief, unrelated inserts that do not comment on or engage with Plaintiff's works. (*Id.* ¶¶ 10–11, 56–59). Certifying that such disparate videos all contain "elaborate commentary throughout" is not a matter of legal judgment; it is a representation about observable facts that cannot be true for all seventeen videos simultaneously. (*Id.* ¶¶ 44–46).

Plaintiff does not allege that Rapkin merely misapplied the fair use factors. Plaintiff

9

alleges that Rapkin misrepresented a threshold factual predicate to any fair use analysis, the existence of commentary itself. (*Id.* ¶¶ 10–11, 55–63). No amount of legal interpretation or advocacy can transform the absence of commentary into "elaborate commentary throughout," and Defendant's attempt to characterize this dispute as a disagreement over fair use improperly rewrites the FAC and ignores the pleaded facts. (*Id.* ¶¶ 44–47, 56–61).

### ii.    Plaintiff has Adequately Alleged Knowing and Material Misrepresentation Under § 512(f)

Taken together, Plaintiff plausibly alleges that Rapkin knowingly, or at minimum with willful blindness, misrepresented both that the counter-noticed videos were removed "by mistake or misidentification" and that each video contained "elaborate commentary throughout." (*Id.* ¶¶ 44–46, 55–63, 72–75). These are not conclusory allegations or abstract disagreements over fair use; they are concrete, fact-based allegations concerning what the videos contained, why they were removed, and what Rapkin certified under penalty of perjury in order to trigger YouTube's reinstatement process.

At the pleading stage, Plaintiff is not required to prove which theory of scienter ultimately applies. It is enough that the FAC plausibly alleges that Rapkin either (1) failed to review the videos and nevertheless certified uniform factual assertions about their contents, or (2) reviewed them and knowingly certified facts that were demonstrably false. Either theory independently satisfies § 512(f)'s knowledge requirement. *See Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1153–55 (9th Cir. 2016) (scienter may be shown by actual knowledge or willful blindness).

Dismissal at the Rule 12(b)(6) stage would require the Court to credit Rapkin's competing factual narrative, resolve disputes concerning Rapkin's knowledge and intent, and draw inferences in Defendant's favor, all of which are impermissible at this stage. Accepting Plaintiff's allegations in the FAC as true, Plaintiff has plausibly alleged knowing and material misrepresentations under § 512(f), and is entitled to proceed to discovery.

**Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss First Amended Complaint**

1

2

       **iii.**       **Rapkin's Reliance on *Rossi* and *Lenz* Is Misplaced at the Pleading Stage**

3

4

5

6

7

8

9

      Rapkin relies heavily on *Rossi* and *Lenz* to argue that Plaintiff has failed to allege a lack of subjective good faith. That reliance is misplaced at the Rule 12(b)(6) stage. As Judge DeMarchi recently explained in *Cordova v. Huneault*, the authorities Defendants invoke, including *Rossi*, *Lenz*, and *Hosseinzadeh*, were decided at the summary judgment stage and therefore do not support dismissal where a plaintiff has plausibly alleged facts giving rise to an inference of knowing or reckless misrepresentation. *Cordova v. Huneault*, No. 25-cv-04685-VKD, 2026 WL 184598, at *6–7 (N.D. Cal. Jan. 23, 2026).

10

11

12

13

14

15

16

      In *Cordova*, the court expressly rejected defendants' attempt to obtain dismissal by invoking their asserted subjective belief in fair use, explaining that such arguments would require the court to resolve disputed questions of fact and improperly draw inferences in defendants' favor. *Id.* at 6. The court emphasized that fair use is a mixed question of law and fact that is "typically considered at the summary judgment stage," and that whether a defendant actually formed a subjective good-faith belief is ordinarily a question for the jury. *Id.* (citing *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1154 (9th Cir. 2016)).

17

18

19

20

21

22

23

24

25

      That reasoning applies with equal force here. Plaintiff does not ask the Court to determine whether the videos ultimately qualify as fair use. Plaintiff alleges facts plausibly supporting the inference that Rapkin knowingly, or with willful blindness, misrepresented that the videos were removed by mistake and falsely certified that they contained "elaborate commentary throughout," which constitutes circumstantial evidence of the absence of any genuine subjective good-faith belief. At the pleading stage, the Court may not credit Defendant's asserted good faith or resolve competing factual narratives. As *Cordova* makes clear, such arguments are premature and provide no basis for dismissal under Rule 12(b)(6). *Cordova*, 2026 WL 184598, at *6–7.

26

27

28

**Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss First Amended Complaint**

**B.    Plaintiff Alleges That YouTube Relied On Defendants' Misrepresentations And Restored Defendants' Videos**

After Rapkin submitted the Counter-Notice on July 14, 2025, YouTube treated it as a valid legal request under the DMCA and initiated the reinstatement process mandated by 17 U.S.C. § 512(g). (FAC ¶¶ 43–44, 48, Ex. B (ECF No. 22-2)). YouTube expressly informed Plaintiff that the counter-notice triggered a statutory restoration track and that the removed videos would be reinstated unless Plaintiff initiated federal litigation within the statutory waiting period. (*Id.* ¶¶ 49–51, Ex. B (ECF No. 22-2))

YouTube's initiation of the § 512(g) process constitutes reliance as a matter of law. Plaintiff alleges that YouTube relied on Rapkin's sworn representations that the videos were removed by mistake, including the false certification that each video was "significantly transformed by detailed editing and elaborate commentary throughout," when it placed the 17 Videos on a restoration track and scheduled them for reinstatement absent judicial intervention. (*Id.* ¶¶ 48–51, Ex. A (ECF No. 22-2)).

Nothing in § 512(f) requires Plaintiff to allege that YouTube independently evaluated the truth of the Counter-Notice. To the contrary, the statute presumes reliance: once a Counter-Notice is accepted, the service provider must restore the content unless the copyright owner files suit. (*Id.* ¶¶ 27–28, 48–50).

**i.    Defendant's Reading Conflicts with the Purpose of § 512(f)**

The Supreme Court has long instructed that "interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) (citing *United States v. American Trucking Assns., Inc.*, 310 U.S. 534, 542-543 (1940); *Haggar Co. v. Helvering*, 308 U.S. 389, 394 (1940). Likewise, where a literal reading of a statutory text would "compel an odd result," courts must look beyond hyper-literalism to discern congressional intent. *Public Citizen v. U.S. Dept. of Justice*, 491 U.S. 440, 454 (1989).

**Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss First Amended Complaint**

1    Defendant's motion advances precisely the kind of reading these cases forbid.
2    According to Rapkin, liability under § 512(f) turns entirely on whether the service provider
3    ultimately restores the challenged material. Under that theory, a party who knowingly
4    submits a false counter-notification escapes liability so long as the copyright owner files
5    suit within the ten-business-day window prescribed by § 512(g)(2)(B) to prevent
6    reinstatement but becomes liable if the copyright owner waits until the eleventh day and
7    reinstatement occurs. That interpretation would render § 512(f) arbitrary, illogical, and
8    internally inconsistent.

9    Such a rule would eviscerate § 512(f) in its most common, and most abusive,
10   application. It ensures that the more diligently a copyright owner acts to protect its rights,
11   the less protection the statute affords. A knowing misrepresentation would be immunized
12   whenever it succeeds in forcing emergency litigation, yet actionable only when the
13   copyright owner fails to act quickly enough. Congress could not have intended a regime in
14   which liability hinges on whether a victim successfully mitigates harm rather than on
15   whether a defendant knowingly abused the statutory process.

16   That reading is irreconcilable with the text, structure, and purpose of § 512. Section
17   512(f) does not condition liability on reinstatement. It imposes liability where a service
18   provider relies on a misrepresentation and the copyright owner is injured "as the result" of
19   that reliance. 17 U.S.C. § 512(f). The statute expressly recognizes "costs and attorneys'
20   fees" as recoverable damages, reflecting Congress's understanding that the principal injury
21   often consists of the forced expenditures required to respond to a bad-faith counter-
22   notification, not merely the moment of reinstatement.

23   The injury occurs when the counter-notification is accepted and acted upon, not
24   when reinstatement ultimately happens. Once a service provider accepts a counter-notice,
25   the statute imposes a coercive ultimatum: file suit within ten business days or lose control
26   of the copyrighted work. That compelled, time-sensitive litigation, triggered by reliance on
27   a false certification, is precisely the harm § 512(f) was enacted to deter.

28

---

13

**Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss First Amended Complaint**

Defendants' reliance on *Business Casual Holdings, LLC v. TV-Novosti* to support their "reinstatement-only" theory only underscores the defect in their argument. *Business Casual* is the principal case Defendants cite for the proposition that § 512(f) liability requires actual reinstatement, and it holds the opposite.

In *Business Casual I*, the defendant argued, exactly as Rapkin argues here, that no § 512(f) claim could lie because the plaintiff filed suit within the § 512(g)(2)(C) window and reinstatement never occurred. Judge Koeltl squarely rejected that argument, explaining:

> However, [§ 512(f)] read in the context of the section as a whole, it is clear that this phrase does not limit § 512(f) claims only to cases where the service provider actually ceases to disable access to the allegedly infringing material, but also applies where the service provider only threatens to do so.

*Business Casual Holdings, LLC v. TV-Novosti*, No. 21-CV-2007 (JGK), 2022 WL 784049, at *5 (S.D.N.Y. Mar. 14, 2022).

Thereafter, following amendment of the complaint and the defendant's default, the court addressed liability under § 512(f) in the context of a motion for default judgment. In doing so, Judge Cronan explained:

> Holding a defendant liable…would seem to further the goal of the DMCA and would prevent what happened here: forcing a plaintiff to file legal action in response to defendant's filing of a bad faith counter-notification merely because the defendant wishes to avoid the consequences of the provider's "three-strike" policy.

*Business Casual Holdings, LLC v. TV-Novosti*, No. 21-CV-2007 (JGK)(RWL), 2023 WL 1809707, at *9 (S.D.N.Y. Feb. 8, 2023).

Thus, neither decision in *Business Casual* conditioned liability on actual reinstatement. To the contrary, the court treated the coercive effect of a bad-faith counter-notification, forcing emergency litigation to prevent reinstatement, as the very harm the statute was designed to prevent.

**Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss First Amended Complaint**

*Business Casual* involved the same abuse alleged here: the defendant filed DMCA counter-notifications not because the takedowns were mistaken, but to avoid YouTube's escalating strike penalties and potential channel termination, while shifting the burden to the copyright owner to sue or lose control of its works. *See id.* at *9–10; *Business Casual*, 2022 WL 784049, at *3–4.

That is exactly what Plaintiff alleges here. Plaintiff alleges that YouTube accepted Rapkin's Counter-Notice and placed the 17 Videos on the statutory restoration track, notifying Plaintiff that reinstatement would occur unless suit was filed within the statutory period. (FAC ¶¶ 48–51, Ex. B (ECF No. 22-2)). Plaintiff further alleges that it incurred attorneys' fees and enforcement costs solely because YouTube relied on Rapkin's sworn misrepresentations and triggered that statutory ultimatum. (*Id.* ¶¶ 52–54, 90).

Defendant's proposed rule would immunize the very conduct that caused those injuries, knowing misuse of the counter-notification process to impose immediate litigation costs, while nullifying § 512(f)'s express damages provision whenever a copyright owner complies with the statute. Nothing in § 512(f) supports such a loophole, and this Court should not adopt a construction that rewards abuse and punishes diligence. Defendant's reading would erase that remedy whenever the copyright owner does exactly what the statute forces him to do, file suit promptly. That cannot be correct.

As *Business Casual* makes clear, twice, and by two different judges, § 512(f) applies where a counter-notice is used as a coercive tool to force litigation, regardless of whether reinstatement ultimately occurs. Defendant's "reinstatement-only" theory is incompatible with the statutory text, the structure of § 512, and the case law rejecting exactly that argument.

Default judgment decisions further confirm that § 512(f) liability does not hinge on actual reinstatement. In *Viral DRM LLC v. Navez*, No. 23-cv-06598-JSC, 2025 WL 834498, at *4 (N.D. Cal. Mar. 17, 2025), Judge Corley entered default judgment on a § 512(f) claim even though there was no evidence that YouTube ultimately restored the challenged video after defendant filed a counter-notification. The court treated the service

15

1  provider's acceptance of the counter-notification and initiation of the statutory process as

2  sufficient reliance and awarded damages notwithstanding the absence of reinstatement. *Id.*

3  As in *Business Casual II*, the harm arose from the misuse of the counter-notification

4  mechanism itself, forcing the copyright owner to engage the statutory process and incur

5  enforcement costs, not from whether the platform ultimately completed restoration. This

6  default judgment cases underscore that § 512(f) targets abusive invocation of the counter-

7  notice procedure, not merely its final outcome

8          ii.    **Defendants Reliance on *Amaretto Ranch* Is Misplaced Because a Failed**

9                 **Takedown Does Not Inflict the Same Statutory Harm as a Bad-Faith**

10                **Counter-Notification**

11         Defendant also relies on *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 790 F.

12 Supp. 2d 1024 (N.D. Cal. 2011), to argue that § 512(f) liability requires a completed

13 enforcement action by the service provider. That reliance is misplaced. *Amaretto Ranch*

14 involved a fundamentally different statutory mechanism, a different type of

15 misrepresentation, and, critically, no cognizable injury under § 512(f).

16         In *Amaretto Ranch*, the alleged misrepresentation was a DMCA takedown notice

17 under § 512(c). The service provider never removed or disabled the plaintiff's content.

18 Because the takedown attempt failed, the court held that the plaintiff had not been "injured

19 … as the result of the service provider … removing or disabling access to the material," as

20 required by the statutory text. *Id.* at 1029. In other words, nothing happened: the content

21 stayed up, the plaintiff retained control of its works, and no statutory consequence was

22 triggered.

23         That scenario bears no resemblance to the harm alleged here.

24         A bad-faith counter-notification under § 512(g) is categorically different from a

25 failed takedown notice. Once a counter-notice is accepted, the statute itself imposes

26 immediate and concrete consequences. The service provider must notify the copyright

27 owner and place the material on a mandatory restoration track unless the copyright owner

28 files suit within ten business days. 17 U.S.C. § 512(g)(2)(B)–(C). At that point, the

16

1   copyright owner faces a statutory ultimatum: file emergency litigation or lose control of

2   the copyrighted work.

3          That coercive effect exists regardless of whether reinstatement ultimately occurs.

4   The injury flows from the service provider's reliance on the counter-notification and the

5   forced expenditures, litigation costs, attorneys' fees, and enforcement efforts, required to

6   prevent reinstatement. Section 512(f) expressly recognizes those injuries by authorizing

7   recovery of "any damages, including costs and attorneys' fees," incurred as a result of the

8   service provider's reliance on a misrepresentation. 17 U.S.C. § 512(f).

9          Nothing comparable occurred in *Amaretto Ranch*. There, the service provider never

10  acted on the takedown notice, no statutory clock was triggered, and the plaintiff was never

11  forced into time-sensitive litigation to preserve its rights. The court itself acknowledged

12  that limiting § 512(f) liability to cases involving an actual takedown was less effective as

13  a deterrent but concluded that the unambiguous text of § 512(c) controlled in the takedown

14  context. *Amaretto Ranch*, 790 F. Supp. 2d at 1029–30.

15         That reasoning does not apply here. This case concerns § 512(g), not § 512(c); a

16  counter-notice, not a takedown notice; and a statutory mechanism that affirmatively

17  compels litigation upon acceptance. Accordingly, *Amaretto Ranch* does not support

18  Defendant's position. It addresses a failed takedown that caused no statutory consequence

19  and no injury. It says nothing about, and does not undermine, § 512(f) liability for bad-

20  faith counter-notifications that succeed in coercing emergency litigation through the threat

21  of reinstatement.

22     **C.    Plaintiff Alleges It Was Injured as a Result of Attorney Rapkin's**

23            **Misrepresentations**

24         Plaintiff adequately alleges that it suffered concrete injury "as the result of" Rapkin's

25  knowing misrepresentations, as required by 17 U.S.C. § 512(f). Section 512(f) expressly

26  authorizes recovery of "any damages, including costs and attorneys' fees, incurred by the

27  copyright owner … as the result of the service provider relying upon" a knowing

28  misrepresentation. 17 U.S.C. § 512(f). The statute thus recognizes that injury may arise

17

from the consequences of the service provider's reliance on a false counter-notification, including the initiation of the statutory reinstatement process and the coercive pressure it places on the copyright owner to file an emergency suit to prevent reinstatement.

Plaintiff alleges precisely that sequence here. Plaintiff alleged that YouTube accepted Rapkin's Counter-Notice and, in reliance on her sworn factual certifications, placed the videos on the statutory restoration track. (FAC ¶¶ 48–51, Ex. B (ECF No. 22-2)). As a direct result, Plaintiff was forced to commence emergency federal litigation to prevent reinstatement of the 17 Videos. (*Id.* ¶¶ 52–54). Plaintiff alleges it incurred attorneys' fees, litigation costs, and enforcement expenses solely because YouTube relied on Defendant's misrepresentations and triggered the statutory ultimatum imposed by § 512(g). (*Id.* ¶¶ 54, 88–90).

Those allegations are sufficient. Defendant's contrary position would read the damages clause out of the statute. If a knowing misrepresentation caused no injury unless the copyright owner passively allowed reinstatement to occur, § 512(f)'s express authorization of recovery for "costs and attorneys' fees" would be rendered meaningless. Congress plainly contemplated that the DMCA's counter-notice mechanism could be abused to impose litigation costs and strategic pressure on copyright owners, and it enacted § 512(f) to deter that precise conduct.

At this stage, Plaintiff need not prove the full extent of its damages. It is enough that Plaintiff plausibly alleges a causal chain in which Rapkin's false factual certifications were accepted by YouTube, relied upon to initiate the statutory restoration process, and directly resulted in Plaintiff incurring litigation-related costs. Plaintiff has done so.

## D. Nondisclosure of the Infringer's Identity Supports Inferences of Bad Faith

Plaintiff also pleads circumstantial facts supporting bad faith based on Rapkin's deliberate nondisclosure of the Exposer's identity in the Counter-Notice and her continued concealment of that identity to this day. (*Id.* ¶¶ 47, 66–75). That concealment is not pleaded as a standalone statutory cause of action. It is pleaded, as it should be, because it bears

18

1  directly on scienter: it supports a plausible inference that Rapkin's blanket Counter-Notice

2  was submitted strategically to trigger YouTube's reinstatement machinery in order to save

3  the Exposé Channel from being terminated by YouTube while insulating the Exposer from

4  accountability for his blatant copyright infringement.

5  The statute's text underscores why this conduct is probative. Section 512(c)(3)

6  expressly permits a takedown notice to be submitted by "the owner of an exclusive right

7  … or a person authorized to act on behalf of that owner." 17 U.S.C. § 512(c)(3)(A). By

8  contrast, § 512(g)(3), which governs counter-notifications, does not include parallel

9  "authorized agent" language. Instead, it specifies information that must be provided in the

10 counter-notification, including "the subscriber's name, address, and telephone number,"

11 and the subscriber's consent to jurisdiction. 17 U.S.C. § 512(g)(3)(A)–(D). The omission

12 is meaningful: Congress knew how to authorize agents when it wanted to, and it did so in

13 § 512(c), but it did not do so in § 512(g).[2] Defendant's effort to replace the statutorily

14 required subscriber identification with attorney contact information is therefore not a

15 neutral technicality, it is conduct inconsistent with the statutory design.

16 More importantly for present purposes, concealment of the subscriber's identity is

17 highly probative of bad faith in context. Plaintiff alleges that Rapkin submitted a single,

18 blanket Counter-Notice covering seventeen separate videos and certified under penalty of

19 perjury that each had been removed "by mistake or misidentification" and was

20 "significantly transformed by detailed editing and elaborate commentary throughout." (*Id.*

21 ¶¶ 9–10, 43–46). Plaintiff further alleges that at least eight of those videos contain no

22 commentary whatsoever and that Defendant did not conduct a video-by-video review

23 before making those sworn factual certifications. (*Id.* ¶¶ 45–46, 56–58). Layered onto those

24 allegations, Rapkin's continued concealment of the Exposer's identity supports a

25

26 [2] Congress's decision to include express "authorized agent" language in § 512(c)(3)(A) while omitting
   any comparable language from § 512(g)(3) is presumed intentional. *See Russello v. United States*, 464
27 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it
   in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely
28 in the disparate inclusion or exclusion.").

**Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss First
Amended Complaint**

reasonable inference that the Counter-Notice was not the product of individualized review and a genuine, subscriber-level assertion of rights, but a tactical device designed to keep an anonymous, monetized channel alive while avoiding the consequences of copyright strikes. (*Id.* ¶¶ 66–70).

The inference is straightforward. An attorney acting in good faith to correct a genuine mistake has no rational reason to hide the identity of the very party who must stand behind the Counter-Notice's statutory declarations, including consent to jurisdiction. But an actor seeking to exploit the DMCA process for channel-preservation reasons does have such a reason: anonymity reduces accountability, frustrates follow-up enforcement, and increases the costs and friction imposed on the copyright owner, who is forced into emergency litigation against a moving target. (*Id.* ¶¶ 52–54, 66–75).

At this stage, Plaintiff need not prove the ultimate reason for Rapkin's concealment of the Exposer's identity. The question is whether the pleaded facts, taken together, plausibly support scienter. They do. The FAC alleges (i) objectively false, verifiable factual certifications applied across non-homogeneous videos, (ii) non-review or willful blindness, and (iii) purposeful nondisclosure of the subscriber's identity despite statutory text that requires disclosure. Those allegations jointly support a plausible inference that Defendant's Counter-Notice was not a good-faith correction of a mistake, but a knowing misuse of the counter-notice mechanism. Dismissal would improperly resolve intent and credibility in Defendant's favor, issues that are quintessentially factual and inappropriate on a Rule 12(b)(6) motion.

### E.    Dismissal Without Leave to Amend Would Be Improper

Even if the Court were to conclude that any aspect of the FAC is insufficiently pleaded, dismissal without leave to amend would be improper. Fed. R. Civ. P. 15 embodies a strong presumption in favor of amendment, and leave should be denied only where amendment would be futile, unduly prejudicial, or sought in bad faith. None of those circumstances is present here.

**Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss First Amended Complaint**

1     First, Plaintiff has not previously amended in response to a substantive ruling on the

2  issues presented, and no discovery has occurred. This case remains at the pleading stage,

3  and Rapkin identifies no prejudice that would result from amendment. Where, as here, a

4  plaintiff seeks to cure perceived deficiencies early in the case and before discovery, the

5  Ninth Circuit instructs that leave to amend should be granted with "extreme liberality."

6  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003).

7     Second, dismissal at this stage would be particularly inequitable because critical

8  facts bearing on Defendant Rapkin's role, intent, and relationship to the Exposé Channel

9  are uniquely within Rapkin's possession. Plaintiff does not yet know, and cannot know

10  absent discovery, the nature of Rapkin's relationship to the Exposé Channel or its operator,

11  including whether Rapkin acted pursuant to a bona fide attorney-client relationship or

12  instead as a close personal associate seeking to preserve a monetized channel from

13  termination.

14     Third, amendment would not be futile. Plaintiff could, if necessary, plead additional

15  facts concerning the circumstances surrounding the Counter-Notice, Denying leave to

16  amend before Plaintiff has had any opportunity to obtain discovery into those matters

17  would prematurely foreclose claims that Congress expressly authorized and that turn on

18  intent and credibility.

19     Finally, Defendant's request for dismissal with prejudice improperly asks the Court

20  to resolve factual ambiguities and credibility questions in Defendant's favor. Whether

21  Defendant acted as a disinterested attorney exercising professional judgment, or instead as

22  a channel-preserving intermediary operating in close coordination with the Exposer, is not

23  a question that can be answered on the pleadings. Granting dismissal without leave to

24  amend would effectively reward Rapkin's bad faith concealment on the Exposer's identity

25  and frustrate § 512(f)'s remedial purpose by insulating from scrutiny the very conduct

26  Plaintiff alleges was undertaken in bad faith.

---

21

**Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss First Amended Complaint**

1    For all of these reasons, if the Court concludes that any portion of the FAC is
2 deficient, Plaintiff respectfully requests leave to amend rather than dismissal with
3 prejudice.

4 **VI.    CONCLUSION**

5    For the foregoing reasons, Rapkin's Motion to Dismiss should be denied in its
6 entirety. Plaintiff has plausibly alleged that Rapkin submitted a sworn Counter-Notice
7 containing either knowing factual misrepresentations or based on willful blindness, that
8 YouTube relied on those misrepresentations to initiate the statutory reinstatement process,
9 and that Plaintiff was injured as a direct result through forced litigation costs and
10 enforcement expenses. Defendant's arguments ask the Court to resolve disputed questions
11 of intent, credibility, and relationship on a Rule 12(b)(6) motion, issues that cannot be
12 decided on the pleadings.

13    At a minimum, and in the alternative, Plaintiff respectfully requests leave to amend
14 pursuant to Rule 15(a) should the Court conclude that any allegation requires further
15 particularity. Because no discovery has occurred and amendment would not be futile or
16 prejudicial, dismissal with prejudice would be improper.

17    Accordingly, Defendant's Motion to Dismiss should be denied, or, in the alternative,
18 Plaintiff should be granted leave to amend.

Dated:  January 27, 2026

/s/ Randall S. Newman
Randall S. Newman, Esq. (SBN 190547)
99 Wall Street, Suite 3727
New York, NY 10005
(212) 797-3735
rsn@randallnewman.net

*Attorney for Plaintiff,*
*Executive Lens LLC*

22

**Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss First Amended Complaint**