Kevin R. Sutherland (State Bar No. 163746)
Brandon K. Franklin (State Bar No. 303373)
Jessica R. Stone (State Bar No. 313426)
CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800
Facsimile: (415) 365-9801
Email: kevin.sutherland@clydeco.us
       brandon.franklin@clydeco.us
       jessica.stone@clydeco.us

Attorneys for Defendant
LEE RAPKIN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EXECUTIVE LENS LLC,<br><br>             Plaintiff,<br><br>      v.<br><br>LEE RAPKIN and JOHN DOE dba "the Exposer" www.youtube.com@1aAudits Exposé,<br><br>             Defendants. | Case No. 5:25-cv-06048-NC<br><br>REPLY IN SUPPORT OF DEFENDANT LEE RAPKIN'S MOTION TO DISMISS FIRST AMENDED COMPLAINT<br><br>Date:  February 18, 2026<br>Time: 11 a.m. PT<br>Place: Courtroom 5 – 4th Floor<br>Judge: Hon. Nathanael M. Cousins<br><br>Complaint Filed: July 17, 2025 |

Defendant Lee Rapkin ("Defendant Rapkin" or "Ms. Rapkin"), by and through her attorneys, Clyde & Co US LLP, hereby submits her reply brief in support of her motion for an order dismissing plaintiff's First Amended Complaint (Dkt. 20) against Defendant Rapkin, in its entirety and without leave to amend, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Motion").

/ /

/ /

/ /

/ /

/ /

# REPLY MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff's Opposition (Dkt. 28) does nothing to cure the defects in plaintiffs' First Amended Complaint (Dkt. 20) ("Complaint"), which fails to state a claim against Ms. Rapkin. Instead, plaintiff makes a series of erroneous arguments.

***First,*** plaintiff asks the Court to ignore the text of the Digital Millennium Copyright Act ("DMCA") and impose liability where there is none under the statutory text. Under the DMCA, liability exists for a knowing misrepresentation when a person is injured "as the result of the service provider relying upon such misrepresentation in *removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it*." 17 U.S.C. § 512(f)(2) (emphasis added). According to plaintiff, the statute is "absurd" (Opp'n – Dkt. 28 at 17[1]) as written. Plaintiff thus argues that, to avoid absurd results, the Court must add language to DMCA creating liability when a copyright owner is injured "as the result of the service provider . . . removing or disabling access to the material"(§ 512(f)(2)) or *merely threatening to replace the removed material.* Opp'n – Dkt. 28 at 17-20.

Plaintiff is wrong in two ways. To start, the "absurdity doctrine" is "exceptionally narrow" and rarely used. *Harrison v. Sonesta Int'l Hotels Corp.*, No. 2:23-cv-04867-SB-RAO, 2023 WL 5351873, at *3 (C.D. Cal. Aug. 18, 2023). Plaintiff has not cited any case where a court revised the statute in the way plaintiff urges. Plaintiff is also wrong because the statute does not lead to absurd results.

As legal scholars have observed, service providers have little incentive to restore access to material that was subject to a DMCA takedown notice in response to a counternotice despite the DMCA's safe harbor provision, which shield service providers from liability for restoring access to the material. This is because service

---

[1] Citations refer to material in the Electronic Case File (ECF). Pinpoint citations are to the ECF-generated page numbers at the top of documents and sometimes to pages numbers at the bottom of the documents and any line numbers.

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

1 providers' terms of service permit them to remove material without liability.[2] In
2 other words, even though the DMCA protects service providers if they restore the
3 subject material after receiving a counternotice from the alleged infringer and
4 giving the copyright owner a chance to respond, in practice, there is little chance
5 that a service provider would actually restore the material. Therefore, it makes
6 sense that the DMCA premises liability on actual restoration. 17 U.S.C § 512(f)(2).

7       ***Furthermore,*** because an individual suing for an allegedly wrongful
8 takedown notice can establish liability only if it results in take down (*Amaretto*
9 *Ranch Breedables, LLC v. Ozimals, Inc.*, 790 F. Supp. 2d 1024, 1027-29 (N.D.
10 Cal. 2011)), it makes sense that an individual suing for an allegedly wrongful
11 counternotice must wait for the material to be restored before there is liability
12 under the DMCA. In sum, the statute as written is not "absurd" and there is no
13 basis for plaintiff's request that the Court re-write the statute.[3]

14       ***Second,*** plaintiff contends that it need only have alleged "that [Ms. Rapkin]
15 failed to review the videos and nevertheless certified uniform factual assertions
16 about their contents" to plausibly allege a "knowing" misrepresentation under the
17 DMCA. Opp'n – Dkt. 28 at 28. Wrong. Under well-established law, plaintiff may
18 rely on one of two theories. Option one is to prove that Ms. Rapkin had "actual
19 knowledge" that she was making a misrepresentation. *Rossi v. Motion Picture*
20 *Ass'n of Am. Inc.*, 391 F.3d 1000, 1005 (9th Cir. 2004). In this respect, even an
21 "unreasonabl[]" mistake is not enough. *Id.* Option two is to establish liability
22 through willful blindness, which would require allegations plausibly establishing
23 that Ms. Rapkin (1) "subjectively believed there was a high probability that the"
24 subject videos did not constitute fair use or were not as described *and* (2) "took
25 deliberate actions to avoid learning of" these facts. *Lenz v. Universal Music Corp.*,

---

[2] Jennifer M. Urban & Laura Quilter, <u>Efficient Process or "Chilling Effects"? Takedown Notices Under Section 512 of the Digital Millennium Copyright Act</u>, 22 Santa Clara Computer & High Tech. L.J. 621, 629 (2006).
[3] And of course, the lack of DMCA liability does not prevent copyright holders from pursuing other remedies.

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

815 F.3d 1145, 1155 (9th Cir. 2016). Plaintiff's contention that Ms. Rapkin is liable under the DMCA for allegedly failing to review the subject videos is wrong and contrary to Ninth Circuit decisions in *Rossi* and *Lenz*.[4]

***Third,*** contrary to plaintiff's argument (Opp'n – Dkt. 28 at 16) courts routinely dismiss DMCA claims for the failure to plausibly allege a "knowing" misrepresentation. *Stebbins v. Polano*, No. 21-CV-04184-JSC, 2021 WL 2682339, at *3 (N.D. Cal. June 30, 2021) (dismissing DMCA claim for lack of allegations establishing a knowing misrepresentation).

For these reasons, which are further discussed below, the Court should dismiss plaintiff's claim against Ms. Rapkin with prejudice.

## ARGUMENT

### A. Plaintiff's DMCA Claim Fails Because YouTube Did Not Replace or Enable Access to the Subject Videos in Response to the Counter Notice

The DMCA provides for liability based on a misrepresentation when a copyright owner is injured "as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in *replacing the removed material or ceasing to disable access to it*." 17 U.S.C. § 512(f)(2) (emphasis added). In other words, unless a service provider "replaces" or "ceases to disable access to" the subject material, there is no liability for a DMCA counternotice.

YouTube has not replaced or ceased disabling access to the subject videos.

---

[4] Plaintiff also wrongly suggests that Ms. Rapkin is asking the Court to make factual determinations. For instance, plaintiff states that "Defendant's Motion repeatedly disputes factual allegations, recharacterizes the FAC, and asserts what 'really happened[.]'" Opp'n – Dkt. 28 at 10. Nothing could be further from the truth. Ms. Rapkin's Motion to Dismiss (Dkt. 27) never uses the phrase "really happened" and argues for dismissal under the usual standard, under which the Court accepts plaintiff's allegations as true. *Am. Family Ass'n v. City & County of San Francisco,* 277 F.3d 1114, 1120 (9th Cir. 2002). To the extent, Ms. Rapkin points to "admissions" in the Motion to Dismiss (Dkt. 27), Ms. Rapkin cites to plaintiff's complaint and reliance on such admissions is proper. *Hakopian v. Mukasey,* 551 F.3d 843, 846 (9th Cir. 2008) ("Allegations in a complaint are considered judicial admissions.").

Compl. – Dkt. 20 ¶¶ 49-52; Opp'n – Dkt. 28 at 7. Recognizing that the statutory text precludes liability against Ms. Rapkin because YouTube has not restored access to the subject videos, plaintiff argues that the Court must revise the statute. Plaintiff asks the Court to add language that would create liability under the DMCA when a service provider *merely threatens to replace the removed material* to avoid an "absurd" result. Plaintiff's argument lacks any legal or logical support.

***First, the "absurdity doctrine" does not support plaintiff's argument.*** "[L]ong-standing Supreme Court and Ninth Circuit case law . . . strictly limits" the "absurdity doctrine." *United States v. Paulson*, 68 F.4th 528, 542 (9th Cir. 2023), *cert. deni*ed, 144 S. Ct. 1029 (2024). "Congress may enact legislation that 'turns out to be mischievous, absurd, or otherwise objectionable. But in such case the remedy lies with the lawmaking authority, and not with the courts.'" *Id.* (quoting *Crooks v. Harrelson*, 282 U.S. 55, 60 (1930)). "[T]he absurdity doctrine is applied 'only under rare and exceptional circumstances,' and . . . 'the absurdity must be so gross as to shock the general moral or common sense.'" *Id.* In other words, "[t]he absurdity doctrine is an exceptionally narrow one because" it risks blurring the line between "two structurally distinct functions [legislative and judicial]." *Harrison*, 2023 WL 5351873, at *3. The text of the DMCA, which premises liability for a counternotice on the restoration of the content, does not shock "common sense."

***Second, there is nothing "absurd" about the DMCA as written.*** Plaintiff argues that it is absurd to premise liability for an alleged knowing misrepresentation in a DMCA counternotification on actual reinstatement, as the statute requires. Not so. For starters, there is only liability for a knowing misrepresentation in a *takedown notice* if the service provider *removes* the allegedly infringing content. 17 U.S.C. § 512(f)(2); *Amaretto*, 790 F. Supp. 2d at 1027-29. It is logical that liability for a knowing misrepresentation in a *counternotice* would also be premised on *restoration* of the content.

Plaintiff points to the statutory provision for recovery of "costs and

attorneys' fees" as evidence of "Congress's understanding that the principal injury often consists of the forced expenditures required to respond to a bad-faith counter-notification, not merely the moment of reinstatement." Opp'n – Dkt. 28 at 18. This also misses the mark. The provision allowing recovery of "costs and attorneys' fees" makes sense regardless of whether those costs and fees are incurred before or after the service provider restores access to the content.

Moreover, the statutory text makes sense because service providers are much more likely to respond to DMCA takedown notices by removing material, and much less likely to restore access to allegedly infringing material in response to a DMCA counternotice. This is because "OSPs [online service providers] limit their liability with their terms of service[]" and "although the statute [17 U.S.C. § 512] seeks to encourage putback by providing a safe harbor against liability for wrongful takedown, in actuality, OSP service contracts limit most legal or financial incentives for OSPs to do so." Jennifer M. Urban & Laura Quilter, *Efficient Process or "Chilling Effects"? Takedown Notices Under Section 512 of the Digital Millennium Copyright Act*, 22 Santa Clara Computer & High Tech. L.J. 621, 629 (2006). Therefore, even though the DMCA gives service providers safe harbor from liability if the service provider informs the copyright owner that "it will replace the removed material . . . and . . .replaces the removed material and ceases disabling access to it not less than 10, nor more than 14, business days following receipt of the counter notice[,]" in practice few service providers will actually restore access. 17 U.S.C. § 512(g)(1). It is thus logical that Congress would premise liability for a knowing misrepresentation in a counternotice on the service provider actually restoring access to the subject material.

***Third, decisions that have addressed the issue have held that there is no DMCA liability where the service provider does not actually remove or restore access to the subject content*** In *Amaretto*, the defendant, alleged that a competitor infringed on its copyrights in certain virtual animals that exist in the virtual world,

1  known as Second Life and submitted a takedown notice under 17 U.S.C.
2  § 512(c)(1) to the company that operated Second Life. 790 F. Supp. 2d at 1027.
3  The alleged infringer obtained an injunction preventing the takedown and alleged
4  that the defendant violated § 512(f) by making misrepresentations under the
5  DMCA. *Id.* at 1027-1028.

6      Plaintiff argues that *Amaretto* is inapplicable because "the service provider
7  never acted on the takedown notice, no statutory clock was triggered, and the
8  plaintiff was never forced into time-sensitive litigation to preserve its rights."
9  Opp'n – Dkt. 28 at 22. None of these points hold water: (1) just as the service
10 provider in *Amaretto* never removed material based on the takedown notice, here
11 YouTube never restored access based on the counternotice (790 F. Supp. 2d at
12 1028); (2) a "statutory clock" was ticking in *Amaretto* because § 512(c)(1)(A)
13 provides that a service provider must act "expeditiously to remove, or disable
14 access to, the material" to rely on the safe harbor provisions just as a service
15 provider must act within certain time limits in response to a counternotice under
16 § 512(g)(2); and (3) the alleged infringer in *Amaretto* sought an injunction and thus
17 was forced into time-sensitive litigation to prevent a take down. The *Amaretto*
18 decision is thus on point, without any meaningful fact differences.

19     While plaintiff implies that a different statutory scheme under § 512(c) was
20 at issue in *Amaretto*, this too is incorrect. As in *Amaretto*, plaintiff's takedown
21 notice was issued under § 512(c). Compl. – Dkt. 20 ¶ 4. And § 512(f), which deals
22 with liability for misrepresentations, was the key provision at issue in both cases.
23 Moreover, the citation to § 512(c) for language on liability for "removing or
24 disabling access to the material" in *Amaretto* (790 F. Supp. 2d at 1029) is a typo as
25 that language comes from § 512(f). Lastly, the plaintiff in *Amaretto*, just like the
26 plaintiff here, argued that it would undermine the DMCA's deterrent effect if an
27 actual takedown as required to establish liability. 790 F. Supp. 2d at 1029. The
28 *Amaretto* court rejected that argument and this Court should do the same.

Next, plaintiff argues that the decisions in *Business Casual Holdings, LLC v. TV-Novosti*, No. 21-CV-2007 (JGK), 2022 WL 784049 (S.D.N.Y. Mar. 14, 2022) (*Business Casual I*) and *Business Casual Holdings, LLC v. TV-Novosti*, No. 21-CV-2007 (JGK)(RWL), 2023 WL 1809707 (S.D.N.Y. Feb. 8, 2023) (*Business Casual II*) show that DMCA liability exists even when content is not replaced in response to a takedown notice. Not so. In *Business Casual I*, the court stated—without any citation or analysis —that § 512(f) applies where the service provider only threatens to cease disabling access. 2022 WL 784049 *5. But the court then noted the lack of authority, stated that "[b]y its terms, § 512(f) (2) *only applies* when there has been a misrepresentation in the counter notification and the service provider relies on that misrepresentation *and ceases to disable access to the allegedly infringing material*," and granted defendants motion to dismiss. *Id.* *5 (emphasis added). Far from "squarely reject[ing]" (Opp'n – Dkt. 28 at 19) this argument, the *Business Casual I* court embraced it. And *Business Casual II* merely recounted the *Business Casual I* decision and expressly declined to resolve the issue. 2023 WL 1809707 ("The Court, however, need not resolve the issue.").

Although plaintiff points out that the court in *Viral DRM LLC v. Navez*, granted default judgment for a DMCA claim despite the lack of evidence suggesting that the service provider restored access to the content. No. 3:23-CV-06598-JSC, 2025 WL 834498, at *4 (N.D. Cal. Mar. 17, 2025). The court, however, did not analyze this issue. *Id.* Thus, the decision has limited persuasive value and the decisions in *Amaretto* and *Business Casual II* easily outweigh it.

**B.    The Court Should Reject Plaintiff's Invitation to Apply an Impermissibly Lenient "Knowing" Standard**

Section 512(f) provides an "expressly limited" cause of action for improper counter notifications, imposing liability *only* if the counter notice contains a "knowing" material misrepresentation. 17 U.S.C. § 512(f), *see Rossi,* 391 F.3d at 1004–05. To establish a "knowing" misrepresentation, a plaintiff has two options:

establish (1) "actual knowledge" or (2) "willful blindness." Plaintiff's Complaint does not allege facts plausibly establishing either theory.

***First, plaintiff's allegations do not establish "actual knowledge."*** Plaintiff could have alleged a valid DMCA claim by alleging facts showing that Ms. Rapkin had "actual knowledge" that she was making a misrepresentation. *Rossi*, 391 F.3d at 1005. Under this standard, one "cannot be liable simply because an unknowing mistake is made, even if the copyright owner [or alleged infringer] acted unreasonably in making the mistake." *Id.* Plaintiff's allegation fail this standard.

Plaintiff contends that Ms. Rapkin was wrong about the contents of the subject videos. Opp'n – Dkt. 28 at 13-14; Compl. – Dkt. 20 ¶¶ 9–10, 43–46, 56–58. But there are no allegations plausibly establishing that Ms. Rapkin *knew* that the subject videos did or did not contain certain content and made the representation anyway. The opposite is true. Plaintiff alleges that Ms. Rapkin *did not* review all of the subject videos. Opp'n – Dkt. 28 at 6 ("Plaintiff alleges that Rapkin submitted a sworn DMCA counter-notification containing objectively false factual certifications, without reviewing the videos at issue[.]"); Compl. – Dkt. 20 ¶¶ 45–46, 56. This is not Ms. Rapkin's "competing factual narrative" (Opp'n – Dkt. 28 at 10, 15). This is what *plaintiff alleges in its own complaint.*

Despite plaintiff's inability to allege facts showing "actual knowledge,[,]" plaintiff asks the Court to presume that the "submission of a blanket Counter-Notice" is circumstantial evidence of a "knowing violation." Opp'n – Dkt. 28 at 10, 13. The first problem with this argument is that plaintiff cites no case law whatsoever supporting that point. Second, the blanket counter notice merely suggests that Ms. Rapkin may not have adequately reviewed the videos. On this point, plaintiff agrees. Opp'n – Dkt 28 at 13 ("[a blanket factual certification] also suggests that Rapkin did not review the 17 Videos at all."). Even if insufficient review is "unreasonable," it is not enough to establish a "knowing" misrepresentation for purposes of the DMCA. *Rossi*, 391 F.3d at 1005.

***Second, plaintiff's allegations are insufficient to establish "willful blindness."*** Given the lack of alleged facts establishing "actual knowledge," plaintiff unsurprisingly falls back on a "willful blindness" theory. Opp'n – Dkt 28 at 10, 12-15. To establish "willful blindness," plaintiff was required to allege facts demonstrating that Ms. Rapkin (1) "subjectively believed there was a high probability" the subject videos were not as described in a material way *and* (2) "took deliberate actions to avoid learning of" that fact. *Lenz*, 815 F.3d 1155.

Attempting to satisfy this standard, plaintiff points to allegations that Ms. Rapkin "failed to review the videos while certifying uniform factual assertions about their contents." Opp'n – Dkt. 28 at 14. Those allegations may support the second prong of the "willful blindness" test, but they do nothing to support the first prong of the test. There are no factual allegations at all suggesting that Ms. Rapkin "believed there was a high probability" that the subject videos either did not constitute fair use or did not contain elaborate commentary.

Plaintiff points to allegations that Ms. Rapkin (1) did not review the subject videos and (2) that her description of the subject videos was incorrect. Neither point plausibly establishes that Ms. Rapkin "believed there was a high probability" that the subject videos either did not constitute fair use or did not contain elaborate commentary. To hold otherwise would eviscerate the "willful blindness" standard and force defendant to litigate DMCA claims based on nothing more than an allegation that the defendant failed to review the subject material or was unreasonably mistaken about the subject content. The Ninth Circuit has already held that such conduct is not enough. *See Lenz*, 815 F.3d 1155; *Rossi*, 391 F.3d at 1005.

Plaintiff goes on to argue that Ms. Rapkin's alleged concealment of the subscriber's identity establishes a "knowing" misrepresentation under the DMCA. Opp'n – Dkt. 28 at 23-25. The argument is both confusing and unsupported by legal authority. For starters, plaintiff cites no legal authority supporting this theory.

Furthermore, the alleged facts suggest that Ms. Rapkin was not acting in bad faith or making a knowing misrepresentation, *the opposite of what plaintiff contends*. Ms. Rapkin identified herself in the subject counternotice and her willingness to submit a DMCA notice with her own name and contact information suggests that she *was not acting in bad faith.*

***Third, plaintiff's reliance on Cordova v. Huneault is misplaced.*** Plaintiff cites *Cordova v. Huneault*, No. 25-cv-04685-VKD, 2026 WL 184598, at *4 (N.D. Cal. Jan. 23, 2026) to support its claim that Ms. Rapkin made a knowing misrepresentation. Opp'n – Dkt. 28 at 12-13. That case involved wildly different facts. In *Cordova*, the plaintiff alleged that the defendant had made public representations about what constitutes fair use that conflicted with his counternotices, had demanded payment from plaintiff, and discussed using counternotices to "beat . . . copyright strikes." 2026 WL 184598, at *5-6. There is nothing akin to those allegations here.

## C. Court's Routinely Dismiss DMCA Claims at the Pleading Stage Based on the Failure to Plausibly Allege a "Knowing" Misrepresentation

Plaintiff argues that dismissal at the pleading stage is improper. Opp'n – Dkt. 28 at 16. Not so. In *Stebbins v. Polano*, and many other cases, courts have dismissed DMCA claims after concluding that the facts do not plausibly allege a "knowing" misrepresentation in takedown or counternotice. 2021 WL 2682339 *3; *Greenspan, v. Oazi*, No. 20-CV-03426-JD, 2021 WL 2577526, at *12 (N.D. Cal. June 23, 2021) (same).[5]

## CONCLUSION

For the foregoing reasons, defendant Ms. Rapkin respectfully requests that the Court grant her motion and dismiss plaintiff's claim against her with prejudice.

---

[5] *Greenspan, v. Oazi*, No. 20-CV-03426-JD, 2021 WL 2577526, at *12 (N.D. Cal. June 23, 2021) (same) *Digital Mktg. Advisors v. McCandless Grp.*, LLC, No. 2:21-CV-06888-AB-GJS, 2022 WL 18216003, at *3 (C.D. Cal. Mar. 28, 2022) (same); *Ouellette v. Viacom Int'l, Inc.*, No. CV 10-133-M-DWM-JCL, 2012 WL 1435703, at *3 (D. Mont. Apr. 25, 2012), *aff'd,* 671 F. App'x 972 (9th Cir. 2016).

| | | |
|---|---|---|
| Dated: February 3, 2026 | | CLYDE & CO US LLP |

By: _____
KEVIN R. SUTHERLAND
BRANDON K. FRANKLIN
JESSICA R. STONE
Attorneys for Defendant
LEE RAPKIN

CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800

43393350v1                -12-           Case No. 5:25-cv-06048-NC
REPLY IN SUPPORT OF DEFENDANT LEE RAPKIN'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT

## CERTIFICATE OF SERVICE

## STATE OF CALIFORNIA COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California, I am over the age of eighteen years, and not a party to the within action. My business address is 355 S. Grand Avenue, Suite 1400, Los Angeles, California 90071.

On February 3, 2026, I served the document(s) described as:

**REPLY IN SUPPORT OF DEFENDANT LEE RAPKIN'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

on the parties in this action addressed as follows:

**SEE ATTACHED SERVICE LIST**

in the following manner:

☐ **(BY E-MAIL):** by transmitting on this date via electronic mail the document(s) listed above to all parties with an e-mail address of record as set forth below and who have consented to electronic service in this action. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ **(BY MAIL):** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

☐ **(BY OVERNIGHT DELIVERY):** I caused such envelope(s) to be delivered to an overnight delivery carrier with delivery fees provided for, addressed to the person(s) on whom it is to be served.

☒ **(BY CM/ECF/EFSP):** by electronic filing system notification with the clerk of the Court, or other electronic filing service provider pursuant to CCP § 1010.6(a), which will send a Notice of Electronic Filing to all parties with an e-mail address of record, who have consented to or filed a Notice of Consent to Electronic Service in this action.

I declare under penalty of perjury according to the laws of the State of California that the foregoing is true and correct.

Executed on February 3, 2026, at Los Angeles, California.

*/s/ Lisa Vera*
Lisa Vera

# SERVICE LIST

Randall S. Newman, Esq.
99 Wall Street, Suite 3727
New York, New York 10005
Telephone: (212) 797-3735
Email: rsn@randallnewman.net

Attorneys for Plaintiff
EXECUTIVE LENS LLC