UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EXECUTIVE LENS LLC,<br><br>Plaintiff,<br><br>v.<br><br>LEE RAPKIN,<br><br>Defendant. | Case No. 25-cv-06048-NC<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Re: ECF 27 |

This case arises from 17 videos that Defendant Lee Rapkin's client, Defendant John Doe ("The Exposer"), posted on YouTube. YouTube had previously taken down these videos in response to Plaintiff's takedown notices to YouTube for alleged copyright infringement under the Digital Millennium Copyright Act (DMCA). Rapkin then filed a counter notification under the DMCA to reinstate the videos. Plaintiff's First Amended Complaint (FAC) alleges that Rapkin knowingly made misrepresentations in her counter notification in violation of § 512(f) of the DMCA.

Rapkin now moves to dismiss Plaintiff's FAC under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff did not sufficiently allege: (1) damages under the DMCA, and/or (2) that Rapkin knowingly materially represented facts. As further explained below, the Court does not find these arguments persuasive and DENIES Rapkin's motion to dismiss Plaintiff's FAC.

## I.    BACKGROUND

### A.    Digital Millennium Copyright Act (DMCA)

Section 512(c) of the DMCA provides a detailed procedure through which a copyright owner may request removal of infringing content from a web-publishing platform. *Automattic Inc. v. Steiner,* 82 F. Supp. 3d 1011, 1016 (N.D. Cal. 2015) (citations omitted).  If a copyright owner believes in good faith that content is infringing, the owner may send a "takedown notice" to the service provider pursuant to § 512(c)(3), and the service provider then must remove or disable access to the material "expeditiously" or face infringement liability itself.  17 U.S.C. §§ 512(c)(1)(C), (c)(3).  A service provider must also give the user an opportunity to respond to a takedown by sending a "counter notification." *Id.* § 512(g).  When a valid counter notification is received, the service provider must then advise the copyright holder of the response and must restore the content "not less than 10, nor more than 14 business days" thereafter, unless the service provider is given notice that the copyright holder has filed an infringement lawsuit in court against the user. *Id.* § 512(g)(2)(B)–(C).

The DMCA also creates liability for individuals who abuse the takedown notice and counter notification system. *Id.* § 512(f).  Section 512(f) provides that any person who makes knowing, material misrepresentations in filing a DMCA takedown notice or counter notification "shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer . . . or by a service provider[.]" *Id.*

### B.    Factual Allegations

Plaintiff's FAC alleges the following facts.

Plaintiff is the sole owner of the copyrights in the videos published on the YouTube channels "Denver Metro Audits" and "Denver Metro Audits 2.0."  FAC ¶ 20.  Plaintiff owns the copyrights to the videos uploaded to these video channels. *Id.* ¶ 34.

The Exposer created at least 31 videos using Plaintiff's copyrighted footage: 19 YouTube Shorts and 12 long-form videos. *Id.* ¶ 39.

On July 4, 2025, Plaintiff's assignor filed DMCA takedown notices with YouTube requesting removal of 27 of the 31 videos (16 Shorts and 11 long-form videos). *Id.* ¶ 40. YouTube removed 16 Shorts and one long-form video. *Id.* ¶ 41. The Exposer subsequently made the remaining 3 Shorts and 10 long-form videos private after receiving the notices. *Id.*

On July 14, 2025, Rapkin submitted a DMCA counter notification (Counter-Notice) on behalf of the Exposer for the 17 removed videos. *Id.* ¶ 43. In the Counter-Notice, Rapkin swore under penalty of perjury that these videos were removed "by mistake or misidentification" and that each video was "significantly transformed by detailed editing and elaborate commentary throughout." *Id.* ¶ 44. Rapkin did not view or review any of the videos in making these representations. *Id.* ¶ 56. At least eight of the 17 videos contained no commentary of any kind. *Id.* Further, the Counter-Notice did not identify the Exposer and instead included Rapkin's contact information. *Id.* ¶¶ 47, 66.

Upon receipt of the Counter-Notice, YouTube relied on Rapkin's representations and initiated the statutory reinstatement process. *Id.* ¶ 48. It placed the 17 videos on a restoration track and notified Plaintiff that the removed videos may be reinstated to YouTube unless Plaintiff provided evidence that it had commenced legal action against the Exposer within ten business days. *Id.* ¶¶ 48–49.

Plaintiff commenced the present action and provided notice of the action to YouTube to prevent reinstatement of the 17 videos and to mitigate the harm caused by the allegedly false and misleading representations made in the Counter-Notice. *Id.* ¶ 52. Plaintiff incurred legal fees, enforcement costs, and other damages when it initiated this action. *Id.* ¶¶ 48, 54.

### C.    Procedural History

Plaintiff filed its original complaint at ECF 1 and Rapkin subsequently moved to dismiss it at ECF 11. Before the Court ruled on ECF 11, Plaintiff filed a First Amended Complaint (FAC) under Federal Rule of Civil Procedure 15(a)(1)(B). ECF 20. The Court then terminated Rapkin's motion to dismiss Plaintiff's original complaint as moot. ECF

United States District Court
Northern District of California

3

21. Rapkin then moved to dismiss Plaintiff's FAC. ECF 27 (Mot.). Plaintiff opposed. ECF 28 (Opp'n). Rapkin replied. ECF 31 (Reply).

## II.    LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Retail Prop. Trust v. United Bd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). A court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## III.    DISCUSSION

Rapkin moves to dismiss Plaintiff's FAC under Rule 12(b)(6) for two reasons: (1) Plaintiff did not sufficiently allege damages because YouTube did not reinstate the 17 videos, and (2) Plaintiff failed to sufficiently allege that Rapkin knowingly materially represented facts in her Counter-Notice. Mot. at 6–7. The Court is not persuaded.

### A.    Plaintiff sufficiently alleged damages.

Rapkin first argues that Plaintiff's FAC should be dismissed because Plaintiff did not allege any damages under § 512(f) of the DMCA. Mot. at 6.

Section 512(f) states that:

"Any person who knowingly misrepresents under this section—

4

(1)   that material or activity is infringing, or

(2)   that material or activity was removed or disabled by mistake or misidentification

shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer, by any copyright owner or copyright owner's authorized licensee, or by a service provider, who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it." 17 U.S.C. § 512(f).

Rapkin contends that this means damages exist only if the service provider actually replaced or enabled access to the allegedly infringing content after relying on a person's misrepresentation that a material or activity was removed or disabled by mistake or misidentification. Mot. at 6. Plaintiff, on the other hand, argues that damages can exist when the "counter-notification is accepted and acted upon, not when reinstatement ultimately happens." Opp'n at 13.

The Court follows several other district courts and finds that "a claim may be viable where . . . a plaintiff alleged that the service provider threatened to reinstate the infringing material and likely would have done so but for the plaintiff's filing legal action within ten days." *Bus. Casual Holdings, LLC v. TV-Novosti*, No. 21-cv-2007-JGK-RWL, 2023 WL 1809707, at *9 (S.D.N.Y. Feb. 8, 2023); *see, e.g., Glob. Brother SRL v. Shixiaolong*, No. 24-cv-02903-WFJ-CPT, 2025 WL 3033633, at *3 (M.D. Fla. Oct. 30, 2025) (finding that the service provider "must have acted upon" the counter notice)*; see, e.g., Viral DRM LLC v. Navez,* No. 23-cv-06598-JSC, 2025 WL 834498, at *5 (N.D. Cal. Mar. 17, 2025) (awarding nominal damages to the plaintiff when the service provider did not reinstate the video and previously informed the plaintiff it would not reinstate the video if the plaintiff took legal action against the uploader). This interpretation of § 512(f) follows statutory language—accepting a claim, acting upon it, and threatening reinstatement but-for timely

legal action is part of the service provider's process of "replacing the removed material or ceasing to disable access to it." Further, it prevents an absurd result. Limiting valid claims to ones where there is actual reinstatement creates a circular issue: Section 512 would require the user to file a federal claim to prevent the reinstatement of their video, but that federal claim would inevitably fail because the video was not reinstated.

While Rapkin argues that *Amaretto Ranch Breedables, LLC v. Ozimals*, 790 F. Supp. 2d 1024 (N.D. Cal. 2011), supports her position that the videos must be reinstated, the Court distinguishes this case in two ways. Mot. at 20. First, there were no allegations in *Amaretto* that the service provider acted upon the takedown notice in any way. *See generally,* 790 F. Supp. 2d 1024. As such, there could be no damages resulting from the service provider's process of taking down the removed material. Second, *Amaretto* limited liability to misrepresentations in a *takedown notice* that led to an actual takedown of a video, not to misrepresentations in a *counter notification* that led to reinstatement. 790 F. Supp. 2d at 1029. This distinction is important because takedown notices prompt the service provider to "expeditiously . . . remove" the material, while counter notifications force the user into time-sensitive litigation to prevent reinstatement. *Compare* 17 U.S.C. § 512(c)(1)(C), *with* 17 U.S.C. § 512(g)(2)(C).

The Court finds that it was sufficient for Plaintiff to allege that it incurred damages after YouTube accepted Rapkin's Counter-Notice and placed the 17 videos on the statutory restoration track by notifying Plaintiff that reinstatement may occur unless suit was filed within the statutory period.

### B.    Plaintiff sufficiently alleged a knowing misrepresentation.

Rapkin then argues that Plaintiff failed to sufficiently allege a "knowing" material misrepresentation under the DMCA.

"Whether a misrepresentation was made 'knowingly' is assessed against a subjective standard; it requires a showing that the defendant had 'some actual knowledge' of the misrepresentation and did not possess a good faith belief that the material was removed by mistake or misidentification." *Cordova v. Huneault*, No. 25-cv-04685-VKD,

United States District Court
Northern District of California

2026 WL 184598, at \*4 (N.D. Cal. Jan. 23, 2026) (citing *Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1004-05 (9th Cir. 2004)). The Ninth Circuit also found the willful blindness doctrine may be used to determine whether a defendant has knowingly misrepresented that it held a good faith belief the offending activity was not fair use. *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1155 (9th Cir. 2016). Willful blindness under § 512(f) requires two elements: (1) the defendant subjectively believed there was a high probability that the material constituted (or did not constitute) fair use, and (2) the defendant took deliberate actions to avoid confirming that fact. *Id.*

Rapkin argues that Plaintiff has failed to sufficiently allege both that Rapkin had "some actual knowledge" or was willfully blind that the 17 videos did not contain commentary or were not subject to fair use. Mot. at 7. The Court finds Plaintiff sufficiently alleged willful blindness.

Rapkin argues that Plaintiff did not allege facts that sufficiently demonstrated willful blindness because there are no facts plausibly establishing that Rapkin knew that there was a high probability that the subject representations were false. Mot. at 8. It is insufficient for Plaintiff to merely show that the Counter-Notice was "objectively false." Opp'n at 8. Plaintiff also must allege that Rapkin *knew* that there was a high probability that the subject videos did not contain commentary. *Lenz*, 815 F.3d at 1155. Plaintiff did so. Plaintiff alleges that Rapkin withheld the Exposer's identity and that the Exposer "publicly boasted about hiding behind Attorney Rapkin and a purported corporate entity to evade accountability, taunting Plaintiff that his identity would never be discovered and he therefore could not be held liable." FAC ¶¶ 13, 70. Drawing all reasonable inferences in favor of Plaintiff, these allegations support a reasonable inference that Rapkin knew that the Exposer's subject videos did not contain commentary and was therefore not subject to fair use. Further, Plaintiff sufficiently alleged that Rapkin took deliberate actions to avoid confirming that the subject videos did not contain commentary by not reviewing the videos. FAC ¶ 40.

As such, the Court finds that Plaintiff sufficiently showed that Rapkin knowingly

made misrepresentations in the Counter-Notice because she was willfully blind.

## IV. CONCLUSION

In conclusion, the Court DENIES Rapkin's motion to dismiss Plaintiff's FAC. Pursuant to Federal Rule of Civil Procedure 12(a)(4)(A), Rapkin must serve a responsive pleading within 14 days.

**IT IS SO ORDERED.**

Dated: March 19, 2026

_____
NATHANAEL M. COUSINS
United States Magistrate Judge